# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CLIVEN BUNDY,

              Plaintiff,

v.

THE HONORABLE JEFF B. SESSIONS, in his official
capacity as Attorney General of the United States of America
on behalf of the UNITED STATES DEPARTMENT OF
JUSTICE
Washington, DC and
Las Vegas, NV

       And

THE HONORABLE ROBIN C. ASHTON, in her official
capacity as Director of the Office of Professional
Responsibility on behalf of the OFFICE OF PROFESSIONAL
RESPONSIBILITY of the United States Department of Justice
Washington, DC

       And

THE HONORABLE MICHAEL E. HOROWITZ, in his
official capacity as the Inspector General of the Department of
Justice on behalf of the OFFICE OF THE INSPECTOR
GENERAL of the United States Department of Justice
Washington, DC

       And

THE HONORABLE CHRISTOPHER A. WRAY, in his
official capacity as Director of the Federal Bureau of
Investigation on behalf of the FEDERAL BUREAU OF
INVESTIGATION
Washington, DC and
Las Vegas, NV

             Defendants.

**COMPLAINT FOR
EMERGENCY WRIT OF
MANDAMUS AND
INJUNCTIVE RELIEF**

## I.    INTRODUCTION

Plaintiff Cliven Bundy ("Mr. Bundy") brings this action against Defendants the Honorable Jeff B. Sessions ("Mr. Sessions") in his official capacity as Attorney General of the United States of America on behalf of the United States Department of Justice ("USDOJ"),  the Honorable Robin C. Ashton ("Ms. Ashton") in her official capacity as Director of the Office of Professional Responsibility on behalf of the Office of Professional Responsibility of the United States Department of Justice ("OPR"), the Honorable Michael E. Horowitz ("Mr. Horowitz") in his official capacity as the Inspector General of the Department of Justice on behalf of the Office of the Inspector General of the United States Department of Justice ("IG"), and the Honorable Christopher A. Wray ("Mr. Wray") in his official capacity as Director of the Federal Bureau of Investigation on behalf of the Federal Bureau of Investigation ("FBI") (collectively "Defendants") seeking an emergency writ of mandamus and injunctive relief pursuant to 28 U.S.C. § 1361 compelling Defendants to conduct an expedited investigation into the bad faith and gross prosecutorial misconduct perpetrated by the USDOJ and the U.S. Attorney for the District of Nevada in *United States of America v. Bundy, et al*, 2:16-cr-00046 (D. Nev.) (the "*Bundy* Prosecution"), and the FBI, as a well a temporary restraining order and preliminary and permanent injunctive relief.

## II.    JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 (Federal Question Jurisdiction)

2.     Venue is proper pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b)(2), (3) in that Defendants reside here and are subject to personal jurisdiction in this District.

///

## III.    PARTIES

### Plaintiff

3.    Cliven Bundy is an individual, natural person, who at all material times was and is a citizen and resident of Nevada

### Defendants

4.    Defendant Mr. Sessions is being sued in his official capacity as Attorney General of the United States of America on behalf of the United States Department of Justice.

5.    Defendant Ms. Ashton is being sued in her official capacity as Director of the Office of Professional Responsibility on behalf of the United States Department of Justice.

6.    Defendant Mr. Horowitz is being sued in his official capacity as Inspector General on behalf of the United States Department of Justice.

7.    Defendant Mr. Wray is being sued in his official capacity as Director of the Federal Bureau of Investigation on behalf of the Federal Bureau of Investigation.

## IV.    STANDING

8.    Plaintiff has standing to bring this action because he has been directly affected and victimized by the unlawful conduct complained herein. Their injuries are proximately related to the conduct of Defendants, each and every one of them.

## V.    FACTS

9.     Mr. Bundy has been incarcerated since February of 2016 – approximately one year and nine months - on charges stemming from a standoff with Bureau of Land Management ("BLM") and FBI agents, where Mr. Bundy's family members were brutally assaulted and his cattle killed and buried in secret mass graves by BLM and FBI agents.

10.     Neither Mr. Bundy nor any of his supporters harmed any BLM or FBI agents in any way.

11.     The charges levied against Mr. Bundy are serious enough that he faces the possibility of life imprisonment, if convicted.

12.     Since Mr. Bundy's incarceration, the USDOJ, the U.S. Attorney for the District of Nevada, the FBI and the BLM have engaged in an ongoing, continuing and concerted pattern of bad faith and gross prosecutorial misconduct, carefully calculated to deprive Bundy and his co-defendants of their constitutional, statutory, and other rights and to make it easier for them to obtain a conviction.

13.     The repeated bad faith and gross prosecutorial misconduct left Mr. Bundy with no choice but to file a Request for Investigation to the OPR and the IG on August 21, 2017 along with a supplement on August 23, 2017, which are attached hereto as Exhibit A and Exhibit B and are incorporated herein by reference. These Exhibits detail the prosecuting attorneys' and the FBI's and BLM's repeated and concerted pattern and practice of engaging in bad faith and gross misconduct and are incorporated herein by reference.

14.     Since the Request for Investigation and accompanying supplement were submitted, the OPR and IG have refused to confirm whether there is an ongoing investigation, or even whether they received the documents. It is clear that they have collectively buried any bona fide investigations.

15.     Thus, the OPR and IG have ignored Mr. Bundy's bona-fide Request for Investigation and accompanying supplement and will not conduct an investigation without the judicial intervention that is being requested now.

16.    Furthermore, on November 6, 2017, counsel for Mr. Bundy in the *Bundy* Prosecution filed an Emergency Motion to Dismiss for Discovery Misconduct. Exhibit C.

17.    As set forth in this motion, the totality of which is incorporated herein by reference, "[d]uring the testimony of witness Mary Hinson, it was revealed that a 'live video feed' depicting the Bundy home, and ingress and egress from the home, was being piped into the BLM 'Command Center' during the events in question." Exhibit C at 5. "The existence of this video surveillance has never been disclosed to the defense. No copy of the video has been produced pursuant to the government's affirmative duty to disclosure relevant and material evidence to the defense…. The defense first learned of the actual existence of such facts and evidence on November 3, 2016, *after* trial had already begun." *Id*. (emphasis in original).[1]

18.    In response to the motion, the prosecution was forced to produce additional discovery, which had never before been produced, on November 7, 2017. This additional discovery is detailed in counsel for Mr. Bundy's Supplement to Emergency Motion to Dismiss for Discovery Misconduct, which is being filed under seal and attached hereto as Exhibit D, and which is being incorporated herein in totality by reference.[2]

19.    Any assertions by the USDOJ and the FBI that evidence has not been hidden, buried, and or/destroyed simply cannot be taken at face value, given the fact that the FBI has recently repeatedly been found to have secreted evidence in a number of other high profile matters.

---

[1] David Montero, *Nevada standoff trial postponed as judge orders search for surveillance video*, LA Times, Nov. 7, 2017, available at: http://www.latimes.com/nation/la-na-nevada-bundy-trial-20171107-story.html.
[2] Because this Supplement contains privileged material and was in fact filed under seal in the *Bundy* Prosecution, it will be filed separately in this matter along with an accompanying motion to seal.

20.     By way of just a few examples, the FBI was found to have been hiding documents for years pertaining to a Freedom of Information Act request seeking documents regarding a meeting between former President Bill Clinton and former Attorney General Loretta Lynch on an airport tarmac.[3]

21.     Furthermore, the FBI has refused to produced documents pertaining to former FBI Director James Comey's memos documenting his conversations with President Trump, which has in turn led to the appointment of Special Counsel Robert Mueller.[4] These are just a few of the numerous examples of the USDOJ and the FBI in particular's concerted pattern and practice of hiding, burying, and/or destroying documents and evidence during the time that James Comey was director of the FBI. Comey was director of the FBI during the time period material to this action.

22.     Mr. Bundy is now being tried, and possibly convicted and sentenced to life imprisonment as a direct result of bad faith and gross prosecutorial misconduct perpetrated by the USDOJ, the U.S. Attorney for the District of Nevada, and the FBI, which is now confirmed to include the hiding, burying, and/or destroying of potentially exculpatory evidence.

23.     It is a great miscarriage of justice to allow the bad faith and gross prosecutorial misconduct set forth in the Complaint for Emergency Writ of Mandamus and Injunctive Relief to continue and not conduct a thorough, expedited investigation to ensure that Mr. Bundy and his co-defendants receive a fair trial, pursuant to their rights under the Constitution of the United States.

---

[3] *American Center for Law and Justice v. U.S. Department of Justice*, 1:16-cv-2188 (D.D.C.).
[4] *Cable News Network, Inc. et al v. U.S. Department of Justice et al.*, 1:17-cv-01175 (D.D.C.).

24.     Trial is scheduled to begin with opening statements on Tuesday, November 15, 2017 and Mr. Bundy still does not have the potentially exculpatory evidence that has been hidden, buried, and/or destroyed by the prosecuting attorneys, the FBI and the BLM.

25.     Failing to act immediately would unjustly permit the the USDOJ, the U.S. Attorney for the District of Nevada, and the FBI and the BLM to get away with its bad faith and gross prosecutorial misconduct and its destruction and withholding of exculpatory evidence, causing the loss of due process, equal protection and other constitutional rights to Mr. Bundy.

## FIRST CAUSE OF ACTION
### Writ of Mandamus

26.     Mr. Bundy repeats and re-alleges all of the previous allegations of the entirety of this Complaint for Emergency Writ of Mandamus and Injunctive Relief with the same force and effect, as if fully set forth herein again at length.

27.     Under 28 U.S.C. § 1361, "[t]he district court shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

28.     Mr. Bundy has requested that the IG and the OPR conduct an investigation into instances of bad faith and gross prosecutorial misconduct perpetrated by the USDOJ, the U.S. Attorney for the District of Nevada, and the FBI, where he faces the possibility of life imprisonment.

29.     The IG and OPR have refused to confirm that an investigation is underway, or even that they received Mr. Bundy's bona-fide request for investigation and supplement

30.     This Court must, pursuant to 28 U.S.C. § 1361, in the nature of mandamus, compel Defendants to conduct an immediate, thorough investigation into the bad faith and gross

prosecutorial misconduct set forth in this Complaint for Emergency Writ of Mandamus and Injunctive Relief and the Exhibits hereto.

31.    When Defendants' investigation confirms that bad faith and gross prosecutorial misconduct did occur, Mr. Bundy respectfully requests an order compelling Attorney General Jeff Sessions and the USDOJ to order dismissal or withdraw the charges against Mr. Bundy in the *Bundy* Prosecution.[5]

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment against Defendant as follows:

(a)    A writ of mandamus compelling Defendants to conduct an immediate, thorough investigation into the bad faith and gross prosecutorial misconduct set forth in this Complaint for Emergency Writ of Mandamus and Injunctive Relief and the Exhibits hereto and compelling Attorney General Sessions and the USDOJ to order dismissal or withdraw the charges against Mr. Bundy in the *Bundy* Prosecution when Defendants' investigation confirms the aforementioned bad faith and gross prosecutorial misconduct.

(b)    A temporary restraining order and preliminary and permanent injunctive relief as this Court may deem necessary and proper.

(c)    Mr. Bundy reserves the right to supplement and/or amend this Complaint for Emergency Writ of Mandamus and Injunctive Relief

///

---

[5] *See United States v. Chapman*, 524 F.3d 1073, 1084 (9th Cir. 2008) (holding that a district court should dismiss an indictment on the ground of outrageous government conduct if it amounts to a violation of the defendant's due process rights). "[T]he suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material to either guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87(1963)

Dated: November 9, 2017

Respectfully submitted,

*/s/ Larry Klayman*
Larry Klayman, Esq.
KLAYMAN LAW GROUP, P.A.
D.C. Bar No. 334581
2020 Pennsylvania Ave. NW, Suite 800
Washington, DC 20006
Tel: (561)-558-5536
Email: leklayman@gmail.com

Attorney for Plaintiff

# EXHIBIT A

# KLAYMAN LAW GROUP

2020 Pennsylvania Ave NW, #800, Washington, DC, 20006 – (310) 595-0800 – leklayman@gmail.com

VIA FEDERAL EXPRESS **EXPEDITED PROCESSING AND TREATMENT REQUESTED**

August 21, 2017

Hon. Robin C. Ashton
Chief
Office of Professional Responsibility
950 Pennsylvania Ave NW #3266
Washington, DC, 20530

Hon. Michael E. Horowitz
Inspector General
U.S. Department of Justice
950 Pennsylvania Ave, NW, #4706
Washington, DC, 20530


**RE:   COMPLAINT AGAINST ATTORNEY GENERAL JEFF SESSIONS AND STAFF AND ACTING U.S. ATTORNEY FOR THE DISTRICT OF NEVADA STEVEN MYHRE AND STAFF AND REQUEST FOR EXPEDITED INVESTIGATION INTO GROSS PROSECUTORIAL MISCONDUCT OF PROSECUTING ATTORNEYS FURTHERED BY THE HONORABLE GLORIA NAVARRO IN THE CRIMINAL TRIAL OF CLIVEN BUNDY AND HIS CO-DEFENDANTS**

The undersigned counsel for Mr. Cliven Bundy, Mr. Larry Klayman ("Mr. Klayman") is a former prosecutor in the Department of Justice's ("DOJ") Antitrust Division and the founder and former chairman of Judicial Watch, as well as the founder, chairman, and general counsel of Freedom Watch. Mr. Klayman was also formerly a U.S. Senate candidate in the State of Florida in 2004. Given his background, Mr. Klayman holds a great deal of respect for the Office of the Attorney General and the Hon. Jeff. Sessions ("Mr. Sessions"), but nonetheless believes that this Complaint is necessary because Mr. Sessions has failed to carry out his oath of office and fulfill his duties as Attorney General. Like Mr. Klayman, Mr. Sessions took an oath to administer to and mete out justice within the bounds of the ethics and the law as a member of the DOJ. Despite

the fact that Mr. Sessions is on the defensive by being unfairly branded as a racist and improperly investigated in the Russia probe, he still unequivocally has the duty to fulfill his oath of office. Unfortunately, Mr. Sessions has failed to do so, as he has reflexively buried his head in the proverbial sand. This does not serve the interests of justice, for which this great institution, my alma mater, is known!

This matter centers around the political prosecution of Cliven Bundy ("Bundy"), who was indicted in February of 2016, along with eighteen other co-defendants, on charges stemming from a 2014 armed standoff (the "Standoff") with Bureau of Land Management ("BLM") agents. The charges levied against Bundy are serious enough that he faces the possibility of life imprisonment, if convicted. However, during the Standoff, neither Bundy nor any of his supporters attacked, harmed, or injured BLM agents in any fashion. In contrast, members of Bundy's family were violently assaulted by BLM agents and much of Bundy's cattle were killed and then buried in secret mass graves.[1] Bundy's prosecution was initiated by the Obama Justice Department, and is being conducted still by holdover Obama loyalists, despite its clear lack of merit. For instance, on April 24, 2017, a federal jury found **none** of Bundy's co-Defendants that had been on trial in the first group of Defendants[2] guilty on conspiracy charges.[3] Indeed, only two of Bundy's co-Defendants were found guilty on any charges at all, while the jury deadlocked on the remaining four co-Defendants. *Id*. Importantly, Jess Marchese – the attorney for defendant Eric Parker – revealed that the jury was split in favor of Bundy's co-Defendants. *Id*. The federal

---

[1] *See* https://www.youtube.com/watch?v=u0SZY1DI-Uo (Video depicting Obama's BLM's use of excessive force and brutality against the Bundy family)
[2] The trial of Bundy and his co-defendants have been trifurcated, with Bundy to stand trial amongst the second group of defendants.
[3] Ken Ritter, *Feds Stumble Again with Split Verdict in Bundy Standoff Case*, AP, Apr. 24, 2017, available at: https://www.usnews.com/news/best-states/nevada/articles/2017-04-24/jury-resumes-deliberating-in-vegas-ranching-standoff-trial.

jury's decision shows exactly how weak the prosecution's case is against Bundy, as none of Bundy's co-Defendants were found guilty of participating in the alleged "conspiracy" that the prosecution attempted paint Bundy as the "mastermind" behind. Recognizing that Bundy's prosecution amounted to nothing more than a political prosecution, Mr. Klayman asked Mr. Sessions to impartially review the matter.

In or around March of 2017, Mr. Klayman spoke personally with Mr. Sessions over the telephone, and Mr. Sessions promised Mr. Klayman that he would perform a review of the Bundy prosecution in an unbiased fashion once the nomination of his deputy attorney general, Rod Rosenstein, was confirmed. Mr. Sessions also expressed that he wanted to set up a time to meet personally with Mr. Klayman to discuss the matter further, and Mr. Sessions said he would have someone shortly be in touch with Mr. Klayman. When Mr. Klayman did not hear back as promised, he attempted to schedule a meeting with Mr. Sessions' scheduler, Erical, but was unable to set anything up, despite repeated promises by her that she would do so. At the same time, Mr. Klayman, as communicated by Erical, sent Mr. Session a number of memorandums updating him on the Bundy matter. Exhibit A. After trying repeatedly to set up a meeting with Mr. Sessions and/or obtain an update on the promised investigation into the Bundy prosecution and receiving no response, Mr. Klayman finally went personally to the DOJ's Washington, DC headquarters on July 28, 2017 to set up some dates to finally meet. Shortly thereafter, Mr. Klayman was finally advised that his request to review the Bundy case, along with all of the materials that had been sent to Mr. Sessions, had been forwarded to the Hon. Steven Myhre, the Acting U.S. Attorney for Nevada, and Obama holdover whose office was prosecuting Bundy and engaging in the misconduct in the first place. Exhibit B.  Indeed, this course of action was nonsensical, had Mr. Sessions actually been conducting a review, or even intended to, as he had

previously promised Mr. Klayman. Around that same time, in Las Vegas, Nevada, Mr. Sessions openly praised Mr. Myhre and his courage to pursue justice, while saying that he was "not taking sides or commenting on the case." Exhibit C. Incredibly, the Attorney General of the United States, whose buck stops at his desk, abdicated his responsibility. Unsurprisingly, Mr. Sessions subsequently declined to meet with Mr. Klayman, and has clearly "passed the buck" and simply rubber stamped both Judge Navarro and the prosecuting attorneys' gross misconduct in this matter. He also punted on his commitment and was not honest to Mr. Klayman in his promise to review the Bundy prosecution, and he has chosen to be derelict in his duty as Attorney General to oversee the conduct of his Justice Department and to ensure that its lawyers are performing their duties ethically and honestly. It is therefore now incumbent upon the OPR and the IG to step in and expeditiously process this Complaint and conduct a full and thorough investigation into Mr. Session's refusal to perform his duties and fulfill his oath of office as Attorney General. Indeed, expedited treatment is necessary, as Bundy's trial will likely begin in about a month. Mr. Klayman never asked that Mr. Sessions reach a favorable decision for his client, Bundy, only that he conduct an honest review, for the compelling reasons set forth below.

Perhaps emboldened by Mr. Sessions' apparent support, from the very outset of Bundy's incarceration, the prosecuting DOJ attorneys have engaged in a pattern and practice of gross misconduct in violation of their ethical duties as DOJ lawyers and of the Constitution and laws of the United States. In the same vein, each federal employee, including DOJ attorneys, must take the following oath before taking office:

> I…do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any

mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office on which I am about to enter. So help me God.[4]

Furthermore, as set forth in the DOJ's ethics handbook, and codified by statute, DOJ attorneys must "act impartially and not give preferential treatment to any private organization or individual"[5] and "…shall not engage in criminal, infamous, dishonest, immoral, or disgraceful conduct, or other conduct prejudicial to the government."[6] Unfortunately, given the pattern and practice of gross prosecutorial misconduct detailed below, it would appear that the current lawyers in the DOJ who are prosecuting Bundy have simply ignored these principles.

*First*, the prosecuting attorneys moved to deny Bundy bail, ensuring that he would be locked up for the entire duration of the pre-trial and trial phase, despite the fact that neither Bundy nor any of his supporters hurt a single BLM agent and was not a flight risk. *Second*, the prosecuting attorneys moved to designate the case as complex, thereby denying Bundy his constitutional speedy trial rights while keeping him incarcerated. *Third*, at the last moment, prosecuting attorneys moved to trifurcate the trial of Bundy and his co-defendants, despite Bundy's vehement objection, thereby further delaying Bundy's trial and keeping him incarcerated. *Fourth*, the prosecuting attorneys dishonestly and disingenuously maintained the position that they did not oppose Mr. Klayman's *pro hac vice* application, while at the same time taking active steps to prevent Mr. Klayman's admission into the case. Incredibly, these are only a sampling of the procedural instances of misconduct perpetrated by the prosecuting attorneys during the pretrial phase alone.[7]

---

[4] 5 U.S.C. § 3331
[5] 5 C.F.R 2635.101(b)
[6] 5 CFR735.203

[7] *See United States of America v. Cliven D. Bundy, et. al.*, 2:16-CR-00046-GMN-PAL-1 (D. Nev.).

Furthermore, the prosecuting attorneys also engaged in substantive, sanctionable and unethical misconduct that severely prejudiced Bundy and his co-defendants. *First*, the prosecution intentionally withheld a report titled "Investigative Report of Ethical Violations and Misconduct by Bureau of Land Management Officials," (the "Report") which details how the BLM supervisory agent in charge of the raid on the Bundy ranch, Dan P. Love ("SSA Love"), repeatedly abused his position of authority to illegally extort and gain benefits and criminally obstruct justice by threatening those who might speak out and testify against him. The Report showed SSA Love's pattern and practice of abusing his authority to illegally gain benefits included, but was not limited to (1) misusing his authority to receive benefits at the 2015 Burning Man Festival, (2) threatening to retaliate against BLM agents who had cooperated with the OIG, and (3) abusing his authority to attempt to have his friend hired at BLM. The revelations uncovered in the Report should have been disclosed much earlier, which would have allowed Bundy and his co-defendants to conduct a meaningful investigation, move for discovery, and effectively impeach the credibility of SSA Love and his fellow BLM agents. Fortunately for the prosecuting attorneys, Judge Navarro rewarded their intentional withholding of the Report by allowing the severely delayed disclosure of the Report, at the "eleventh hour" before the first group of Bundy's co-defendants were set to begin trial, thereby preventing defense counsel from conducting any meaningful investigation to impeach SSA Love and BLM.

*Second*, during the trial of the first group of Bundy's co-defendants, the prosecuting attorneys improperly attempted to try Bundy *in absentia* at the ongoing trial of Bundy's co-defendants by falsely painting Bundy as the criminal mastermind behind the Standoff in order to inevitably tar Bundy's reputation and taint the jury that is eventually empaneled in Bundy's trial.

Even more, the prosecuting attorneys took their severely prejudicial misconduct a step further by alleging that Carol Bundy, Cliven Bundy's wife (who has not been charged at all), was a co-conspirator and fellow mastermind along with Cliven Bundy who planned Standoff in order to further tar Bundy's reputation through trial publicity. Since neither Carol Bundy nor Cliven Bundy were on trial, neither of them were given an opportunity to rebut these allegations, in violation of their due process rights. This was an obvious attempt to taint any future jury as a result of the adverse publicity.

*Third*, the prosecution, during the trial of the first group of Bundy's co-defendants, intentionally and glaringly omitted Sgt. Tom Jenkins ("Jenkins") from its original witness list, yet still called Jenkins as a witness. Regrettably, but unsurprisingly, Judge Navarro still allowed the prosecution to call Jenkins as a witness, and only gave defense counsel for Bundy's co-defendants one additional day to prepare for cross-examination.[8] This left defense counsel with no adequate opportunity to investigate Jenkins' testimony.

In addition, Judge Navarro has worked hand-in-hand with the prosecuting attorneys, furthering their gross prosecutorial misconduct, by "rubber-stamping" each and every one of their requests. These prejudicial rulings are of great consequence when Bundy is tried before Judge Navarro, as they are the "law of the case," and forecast where the prosecution and Judge Navarro are headed. Unsurprisingly, Judge Navarro was appointed to the bench by Barak Obama, after being hand-picked by the ethically bereft former Sen. Harry Reid, who has repeatedly slandered the Bundy's as "domestic terrorists." Not coincidentally, the director of the BLM during the Bundy standoff, Neil Kornze, was formerly a top aide to Mr. Reid and was

---

[8] Jenny Wilson, *Tempers Flare, Nerves Fray in Trial Against Bundy Supporters*, Las Vegas Review-Journal, Mar. 6, 2017, available at: http://www.reviewjournal.com/news/bundy-blm/tempers-flare-nerves-fray-trial-against-bundy-supporters

hand-picked to the position by former President Obama. It has been abundantly clear that Judge Navarro has predetermined that she will serve as the prosecuting attorneys' unethical "rubber stamp" throughout the prosecution of Bundy and his-codefendants. This has resulted in a pattern and practice of severely prejudicial rulings that have even caused the Las Vegas Review Journal to publish an editorial piece severely criticizing Judge Navarro's apparent judicial misconduct, advocated by the DOJ prosecutors. Exhibit D. For instance, before the retrial of the first group of Bundy's co-defendants began:

> [Judge Navarro] eviscerated the defense's legal strategy, putting off limits a whole host of issues that might make it more difficult for the government to win convictions. The defendants will be forbidden from arguing that they were exercising their constitutional rights to peaceably assemble and bear arms. They may not highlight the actions of BLM agents in the days leading up to the incident or mention federal gaffes such as the ill-advised "First Amendment" zone created for protesters.

Exhibit D. Then, when jury selection actually began, Judge Navarro interfered with the Defendants' right to use preemptive challenges on the inclusion of certain jurors. Exhibit E. For instance, when counsel for Defendants wanted to strike a juror because they "felt an underlying deception" from the perspective juror, Judge Navarro re-seated that juror, along with other prospective jurors that counsel for Defendants had attempted to strike. Exhibit E. These extremely prejudicial rulings, at the behest of the the prosecuting attorneys in favor of the prosecution, even led to the Las Vegas Review Journal openly stating, "[g]overnment prosecutors have a friend in U.S. District Judge Gloria Navarro." Exhibit D.

Then, during the retrial, Judge Navarro, again at the behest of the prosecuting attorneys, brazenly and openly disregarded the constitutional rights of Bundy's co-Defendants. Judge Navarro cut off Defendant Eric Parker's ("Parker") testimony and ordered him off the witness stand for allegedly violating a court order on allowed testimony. Exhibit F.   Judge Navarro

struck Parker's testimony from the record, completely depriving him of his basic, fundamental constitutional right to due process, despite the fact that it was the <u>prosecution</u> who was engaging in misconduct by improperly launching objections about testimony that Judge Navarro had allowed. <u>Exhibit F</u>. As Parker's counsel wrote in his motion for a mistrial, "At no point did Mr. Parker violate the Court order by eliciting testimony other than what he saw…. Specifically, he never elicited facts relating to his disallowed self-defense argument." <u>Exhibit F</u>. Predictably, Judge Navarro denied Parker's motion for mistrial, despite the blatant and obvious misconduct and deprivation of constitutional rights. The level of gross misconduct perpetrated by Judge Navarro and the prosecution during the retrial even caused counsel for Bundy's co-Defendants to not even to bother presenting futile closing arguments after being "[h]amstrung throughout the trial by a judge's decision to limit the witnesses they could call, the questions they could ask and the testimony their clients could give…." <u>Exhibit G</u>. Thus, it has become painstakingly evident that Judge Navarro and the prosecuting attorneys, working in concert, are willing to unethically, and even illegally, do whatever it takes to convict Bundy and his co-defendants, regardless of the any ethical, constitutional, or legal violations that they may commit along the way.

Even more, DOJ attorneys have stone-walled valid FOIA requests for documents that are either exculpatory to Bundy's case or containing evidence of their illegal means to ensure that Bundy is eventually convicted.[9] Mr. Klayman, who represents Bundy through Freedom Watch in this regard, made valid FOIA requests to the BLM, FBI and the DOJ, but has been unequivocally stonewalled by Mr. Sessions' DOJ attorneys, with the help of the Honorable Colleen Kollar-Kotelly ("Judge Kotelly"). Like Judge Navarro, Judge Kotelly, another liberal appointed to the bench by former President Bill Clinton, has "rubber-stamped" the government's ridiculous and

---

[9] *Freedom Watch v. Bureau of Land Management*, 1:16-cv-2320 (D.D.C.).

obviously false assertion that it would take them "**at least 500 months to complete its entire production of responsive documents**…."[10] Furthermore, Judge Kotelly has even accepted without question the FBI's latest apparent false renewed proposal that it can complete processing of Freedom Watch's <u>significantly narrowed request</u> within "approximately 17 years," which is still – conveniently – long enough for nearly everyone involved in the matter to be dead, retired, and in Cliven Bundy's case, also sentenced to possible life imprisonment. In this regard, Mr. Klayman and Freedom Watch currently have a pending IG investigation request into this matter as well.

As set forth above, under the existing circumstances, it is abundantly clear that Bundy will not be given a fair trial. Thus, the OPR and the IG are the last lines of defense to preserve the constitutional rights of Bundy and his co-defendants and see that the most basic, fundamental tenets of the criminal justice system are upheld. I, therefore, as a former proud Justice Department trial attorney and prosecutor respectfully and regrettably file this Complaint against Mr. Sessions and his Nevada prosecutors in the U.S. Attorney's Office for the District of Nevada. Time to process this Complaint and to conduct a thorough investigation and take remedial action is short, as Bundy, along with two of his sons, will stand trial in about a month. Simply put, Mr. Sessions must be compelled to do the job he committed to Mr. Klayman to do, pursuant to the oath of office he took in being sworn in as the Attorney General.

**Mr. Klayman will fully cooperate with the requested investigation and respectfully requests a meeting expeditiously with both the OPR and the IG to further this Complaint and the ensuing investigation**.

---

[10] *Id*. ECF No. 30 at 2.

Dated: August 21, 2017

Respectfully submitted,

Larry Klayman, Esq.
Klayman Law Group, P.A.
2020 Pennsylvania Avenue,
N.W.  Suite 800
Washington, D.C. 20006
(561) 558-5336
Email: *leklayman@gmail.com*

Cc with enclosures:

Hon. Jeff Sessions
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Ave, NW
Washington, DC, 20530


Hon. Steven W. Myhre
Acting U.S. Attorney for the District of Nevada
Nadia Ahmed
Assistant U.S. Attorney
Erin Creegan
Assistant U.S. Attorney
Nicholas Dickinson
Assistant U.S. Attorney
U.S. Attorney's Office for the District Nevada
501 Las Vegas Blvd. South #1100
Las Vegas, NV, 89101

Channing D. Phillips
Assistant U.S. Attorney for District of Columbia
Melanie D. Hendry
Assistant U.S. Attorney
U.S. Attorney's Office for the District of Columbia
555 Fourth Street, N.W.
Washington D.C. 20530

EXHIBIT A

# KLAYMAN LAW GROUP

7050 W Palmetto Park Rd, Ste 15-287, Boca Raton, FL 33433 • Ph (561) 558 5336 • leklayman@gmail.com

From:  Larry Klayman, Esq,
       Counsel for Cliven Bundy

To:    Honorable Jeff B. Sessions

Re:    Request to Review Prosecution of Cliven Bundy in *United States of America v. Bundy*,
       2:16-cr-000046 (D. Nev.)

Defendant Cliven Bundy ("Bundy") respectfully requests that the U.S. Department of Justice, under the auspices of the Honorable Jeff B. Sessions, review the prosecution of Bundy, whose trial is set for commence in approximately a month and a half. As Bundy was indicted by the former Obama administration, through its Justice Department, it is requested that the Attorney General's staff conduct a de novo review to avoid manifest injustice in order to determine whether to proceed with the prosecution

Attached is a column that Bundy's undersigned counsel, also the founder of Judicial Watch, Inc., and now Freedom Watch, Inc., authored which also provides a brief history of this case.

## I.    INTRODUCTION

Bundy was indicted in February of 2016, along with eighteen other co-defendants, on charges stemming from a 2014 armed standoff (the "Standoff") with Bureau of Land Management ("BLM") agents. The charges levied against Bundy are serious enough that he faces the possibility of life imprisonment, if convicted. However, during the Standoff, neither Bundy nor any of his supporters attacked, harmed, or injured BLM agents in any fashion. In contrast, members of Bundy's family were violently assaulted by BLM agents and much of Bundy's cattle were killed and then buried in secret mass graves.

1

Since Bundy's incarceration, he has been deprived of a litany of his constitutional and statutory rights. Perhaps most importantly, he has been denied his Sixth Amendment right to counsel of choice. Bundy has also been deprived of his right to a speedy trial under both the Sixth Amendment and the Federal Speedy Trial Act[1], and he has been locked in solitary confinement for the entirety of his incarceration in violation of his Eighth Amendment rights.

Furthermore, instances of grave prosecutorial misconduct have severely prejudiced Bundy and his co-defendants, and have raised serious questions about their ability to receive a fair trial. These instances of grave prosecutorial misconduct, in conjunction with consistently prejudicial rulings and orders in favor of the prosecution by the Hon. Gloria Navarro ("Judge Navarro") at least create the appearance that the prosecution and Judge Navarro are acting in parallel to ensure that Bundy is convicted. Since the trial of Bundy and his co-defendants has been trifurcated, and Bundy is set to begin trial in the second group of defendants – likely to begin in approximately a month and a half – Bundy respectfully requests that this matter be reviewed on an emergency, expedited basis.

## II.   LEGAL ANALYSIS

Since Bundy was incarcerated in February of 2016, he has been continuously denied even the most basic of his constitutional and statutory rights. Compounding the severely prejudicial effect of the denial of these rights are instances of grave prosecutorial misconduct and consistently prejudicial orders and rulings by Judge Navarro in favor of the prosecution. Taken together, it is clear that Bundy and his co-defendants' abilities to receive a fair trial has been compromised, and it is incumbent upon the Department of Justice to review this matter before Bundy's trial is set to begin in about a month and a half and take action, as the notions of justice and fairness require.

---

[1] 18 U.S.C. § 3161

1.    **Bundy Has Been Denied His Fundamental Constitutional and Statutory Rights**

Bundy has been deprived of even the most basic constitutional and statutory rights that the criminally accused are undoubtedly entitled to.

*First*, Bundy has been denied his Sixth Amendment right to counsel of choice since he was indicted and incarcerated in February of 2016. When Bundy was indicted, he sought to have the undersigned counsel, Mr. Larry Klayman ("Mr. Klayman") serve as lead counsel for his legal defense team. Mr. Klayman had come highly recommended from people that Bundy and his family trust and Mr. Klayman has extensive federal criminal defense experience, which is clearly required in such a complex and serious matter. However, Judge Navarro twice, improperly, denied Mr. Klayman's application for *pro hac vice* admission. When pressed for a reason why she denied Mr. Klayman's application by the U.S. Court of Appeals for the Ninth Circuit ("Ninth Circuit"), Judge Navarro cited an unrelated pending disciplinary proceeding in the District of Columbia Bar, which has not resulted in any final finding of wrong-doing by Mr. Klayman and will not be resolved until after Bundy has been tried. Thus, Judge Navarro essentially presumed Mr. Klayman's guilt in the pending disciplinary proceeding and improperly denied his *pro hac vice* application on that basis. Unfortunately, the Ninth Circuit upheld Judge Navarro's decision, despite a compelling and forceful dissent by the Hon. Ronald Gould and the U.S. Supreme Court denied review.

*Second*, Bundy has been denied his constitutional and statutory right to a speedy trial. Under the Federal Speedy Trial Act, a criminal defendant's trial must begin within 70 days from the date that the information or indictment is filed.[2] Bundy is likely not set to begin trial until approximately May of 2017, which is well over a year from the date of his indictment. Even the

---

[2] *Id.*

exceptions set forth under the Federal Speedy Trial Act do not account for such an enormous and prejudicial delay. Bundy's right to a speedy trial has also been violated under the Sixth Amendment. In *Barker v. Wingo*, the Supreme Court expressly stated that "courts generally have found that delays approaching one year are presumptively prejudicial."[3]

*Third*, Bundy had been placed in solitary confinement for the duration of his incarceration, the effect of which is compounded by the fact that his right to a speedy trial has been violated and he has been incarcerated for over a year now. This raises significant concerns about Bundy's rights under the Eighth Amendment's cruel and unusual punishment provisions.

### 2. Instances of Grave Prosecutorial Misconduct and Consistently Prejudicial Rulings in Favor of the Prosecution Have Severely Prejudiced Bundy and His Co-Defendants

Numerous instances of serious prosecutorial misconduct, the prejudicial effect of which have often been compounded by prejudicial rulings in favor of the prosecution, have at least created the appearance that the prosecution and Judge Navarro are working in parallel to ensure that Bundy and his co-defendants are convicted.

*First,* the prosecution intentionally withheld a repot titled "Investigative Report of Ethical Violations and Misconduct by Bureau of Land Management Officials," (the "Report") which details how the BLM supervisory agent in charge of the raid on the Bundy ranch, Dan P. Love ("SSA Love"), repeatedly abused his position of authority to illegally extort and gain benefits and criminally obstruct justice by threatening those who might speak out and testify against him. The Report showed SSA Love's pattern and practice of abusing his authority to illegally gain benefits included, but was not limited to (1) misusing his authority to receive benefits at the 2015 Burning Man Festival, (2) threatening to retaliate against BLM agents who had cooperated with the OIG,

---

[3] 407 U.S. 514, 522 (1972).

and (3) abusing his authority to attempt to have his friend hired at BLM. The revelations uncovered in the Report should have been disclosed much earlier, which would have allowed Bundy and his co-defendants to conduct a meaningful investigation, move for discovery, and effectively impeach the credibility of SSA Love and his fellow BLM agents. However, Judge Navarro instead, in essence, rewarded the prosecution's intentional withholding of the Report by allowing the severely delayed disclosure of the Report, at the "eleventh hour" before the first group of Bundy's co-defendants were set to begin trial, thereby preventing defense counsel from conducting any meaningful investigation to impeach SSA Love and BLM. Indeed, without a full legal defense team, and with his own trial set to begin shortly, Bundy too has been deprived of a meaningful opportunity to further investigate the revelations uncovered in the Report and the move for discovery as needed.

*Second*, the prosecution has, during the ongoing trial of Bundy's co-defendants, improperly attempted to try Bundy *in absentia* at the ongoing trial of Bundy's co-defendants by falsely painting Bundy as the criminal mastermind behind the Standoff in order to inevitably tar Bundy's reputation and taint the jury that is eventually empaneled in Bundy's trial. Even more, the prosecution has taken their severely prejudicial misconduct a step further by alleging that Carol Bundy, Cliven Bundy's wife (who has not been charged at all), was a co-conspirator and fellow mastermind along with Cliven Bundy who planned Standoff in order to further tar Bundy's reputation through trial publicity. Since neither Carol Bundy nor Cliven Bundy are on trial right now, neither of them have been able to rebut these allegations, which have been made public and will taint future jury pools. This is likely the prosecution's strategy in order to ensure that Bundy is convicted, given the fact that Bundy's sons were only recently acquitted for their role in a similar stand-off in Oregon. The prosecution likely believes that efforts to smear Bundy's reputation are

necessary so that he does not get acquitted like his sons did.  Judge Navarro has made no effort to discipline or sanction the prosecution for this behavior, and has conspicuously allowed for it to continue.

*Third*, the prosecution, during the ongoing trial of Bundy's co-defendants, intentionally and glaringly omitted Sgt. Tom Jenkins ("Jenkins") from its original witness list, yet still called Jenkins as a witness. Regrettably, but unsurprisingly, Judge Navarro still allowed the prosecution to call Jenkins as a witness, and only gave defense counsel for Bundy's co-defendants one additional day to prepare for cross-examination.[4] This left defense counsel with no adequate opportunity to investigate Jenkins' testimony. In contrast, Judge Navarro threatened to hold Mr. Whipple, Bundy's current counsel of record, in contempt for merely listing Judge Navarro's husband, properly, as a potential witness, as he potentially has relevant information beneficial to Bundy's defense.  Furthermore, Judge Navarro also refused to allow defense counsel to play a video potentially beneficial to the defense without calling the video's creator as a witness.[5]

## III.    CONCLUSION

As set forth above, Bundy has faced significant obstacles at nearly every turn for the duration of his incarceration. Violations of his constitutional and statutory rights, combined with grave instances of severe prosecutorial misconduct and consistent prejudicial rulings in favor of the prosecution undeniably call in the serious question Bundy's ability to receive a fair trial in this extremely serious matter, where he faces the possibility of life imprisonment, if convicted. Thus, it is incumbent upon the Department of Justice to review this matter and take appropriate action,

---

[4] Jenny Wilson, *Tempers Flare, Nerves Fray in Trial Against Bundy Supporters*, Las Vegas Review-Journal, Mar. 6, 2017, available at: http://www.reviewjournal.com/news/bundy-blm/tempers-flare-nerves-fray-trial-against-bundy-supporters
[5] *Id.*

as the notions of justice and fairness require before Bundy's trial is set to begin in about a month

and a half.

Dated: April 3, 2017                                    Respectfully submitted,

                                                      Larry Klayman, Esq.
                                                      Klayman Law Group, P.A.
                                                      2020 Pennsylvania Avenue,
                                                      N.W.  Suite 800
                                                      Washington, D.C. 20006
                                                      (561) 558-5336
                                                      Email: *leklayman@gmail.com*

**– WND – http://www.wnd.com –**

# Bundys need support in fight against Obama, Reid

Posted By *Larry Klayman* On 04/24/2016 @ 4:03 pm In Commentary,Opinion | <u>No Comments</u>

Republish
Reprint

More than two years ago, the nation was spellbound as the family of Nevada rancher Cliven Bundy and other cowboys who supported the patriarch's God-given right to defend his land at Bunkerville, Nevada, stood down a tyrannical Obama administration bent on seizing the Bundy homestead.

The false excuse used by Obama's Bureau of Land Management, or BLM: The federal government, rather than the state of Nevada, owned the land that the Bundy family's cattle grazed on, that the Bundys thus owed grazing fees to the federal government, and, incredibly, that this ranching was killing a so-called endangered species tortoise.

Of course, these excuses were little more than a front for Obama's ally and henchman, the evil, dishonest and corrupt senator from Nevada, the one and only Harry Reid. It turns out that Reid, with the assistance of his equally sleazy Las Vegas lawyer son, was seemingly doing a back-door, under-the-table deal with the communist Chinese or some other nefarious enterprise to acquire the Bundy ranch for profit, and using the goons of Obama's BLM to take it forcefully.

To effect this takeover, the BLM and other Obama and Reid government agents raided the Bundy's ranch at gunpoint, sending sharpshooters and marksmen, brutalizing Bundy family members with assault, beating and injuring them, and threatening even to kill them if they did not forfeit the land upon which their livelihood depended. Reminiscent of the tyranny that King George III foisted upon the American colonies, the Obama-Reid government "gestapo" simply came and pillaged, even killing scores of the Bundys' cattle, including a number of bulls that are necessary to grow the herd, burying them secretly in a mass grave as Hitler had done with Jews.

Not to be "bullied" (pun intended), armed but peaceful cowboy militias on horseback, authorized by the Second Amendment to the Constitution, stood down the Obama-Reid government goons, and the cowards were forced to flee. This citizens' defensive insurrection was so remarkable that Fox News and other cable channels in particular covered what at the time appeared to be the first modern-day use of the Second Amendment to defeat government tyranny. Our Founding Fathers, and particularly George Washington, Thomas Jefferson, Benjamin Franklin and John Adams, would have been proud. This was exactly why they had created in the Constitution the God-given right to bear arms and to commission militias to defend the people against the dastardly likes of King George III – now embodied in our modern-day Muslim-American King Barack Hussein Obama and his slimy "court jester," Harry Reid.

Following this successful stand-down, both Reid and Obama, thoroughly humiliated, lost their cool. Reacting to an unintentionally political incorrect analogy that Cliven Bundy had made to the press

about African-Americans, sympathetically equating them with his own family's plight, he analogized how the federal government had in recent decades also destroyed the lives of "negroes" by keeping them under government domination in a manner that rivals slavery. In response, Obama mocked and cleverly threatened Cliven, reacting to his use of the word "negro" – which even Rev. Martin Luther King had used to describe his people – at a White House Correspondents' Dinner.



Reid, as he repeated again just a few weeks ago, couldn't wait to also chime in, branding the Cliven Bundy family as "domestic terrorists," threatening to use the power of the Obama Justice Department to have them all jailed.

But for nearly two years, the Obama Justice Department, perhaps fearing the political fallout given the growing number of Obama scandals, did not act on the not-too-veiled threats of Obama and Reid – that is, not until some of Cliven Bundy's sons peacefully in protest came to the defense of an equally threatened rancher in Oregon and occupied a game reserve while legally carrying firearms. For this act of courage, one of the protesters was shot and killed by all new government goons, and the rest were arrested and indicted on multiple criminal counts. Not participating in the protest, Cliven Bundy took a plane to visit his arrested and charged sons, and he himself was arrested at the Portland airport and later charged and indicted, along with 18 other defendants on 17 felony counts. Later, Cliven was extradited back to Nevada to face the charges with the many other defendants, while several of his sons remained under arrest in Oregon to face trial there as well.

Upon Cliven's return, his and the other defendants' case was assigned to Chief Judge Gloria Navarro, perhaps not coincidentally a jurist who was recommended to President Obama for nomination to the U.S. District Court for the District of Nevada by Sen. Harry Reid. Obama had approved of Reid's recommendation, and Navarro was confirmed as a district judge.

About two weeks ago, obviously sending a signal to his protégé, Judge Navarro, Reid again telegraphed that he viewed Cliven and his family as "domestic terrorists" and that they should all be kept in prison, inferring that life sentences should be ordered. Specifically, one does not have to be a rocket scientist to realize that Reid broadcast this obvious instruction to Navarro and any later jury, using the power of his position from the Senate floor as his mantle (<u>"Harry Reid attacks Bundys on Senate floor, calls for Gold Butte protection"</u>).

To defend Cliven, and thus the family, I was asked, along with my local Las Vegas legal partner in the defense, Joel Hansen, to step in. Not surprisingly, Judge Navarro, knowing of my reputation for fearlessly taking on the likes of Harry Reid and Obama, and tyrannical government in general, denied my application to enter the case an out of state attorney "pro hac vice." This denial, which is legally unjustified, will be challenged, as Joel cannot because of lack of manpower and financial resources defend Cliven alone without my participation. Navarro has a conflict of interest and has shown extreme unethical bias and prejudice fostered by her patrons, Reid and Obama. We are confident that she will now be removed legally from the case as the presiding judge and that a new judge or the appellate court will grant my application to appear.

The bottom line is this: Joel Hansen and I took on the defense of Cliven and the family because we believe American citizens have a God-given right to bear arms and be protected by peaceful militias under the Second Amendment when a tyrannical government tries to take away their homestead and "terrorizes" them. This is a fine God-fearing family, and Joel and I will not rest until justice is done and Cliven, who is being indefinitely detained in solitary confinement out of vindictiveness and payback, wins his freedom.

This case is not just about the Bundys but also you and your loved ones. What happened to Cliven and his family can happen to you, particularly given the likes of Harry Reid, Barack Obama and judges like Navarro. As of now, Cliven and his sons are in prison, and the women in the family are valiantly having to tend to the ranch under great emotional distress, financial pressure and hardship, much like Abigail Adams when Founding Father John Adams was away during the first Revolutionary War. They are all true patriots!

We need your immediate prayers and strong support, as the family lacks the financial resources to carry on this fight alone against these forces of Obama-Reid government evil. <u>See ClivenBundyDefenseFund.com</u>.

*Media wishing to interview Larry Klayman, please contact <u>media@wnd.com</u>.*

| **Receive Larry Klayman's commentaries in your email** |
| --- |
| BONUS: By signing up for Larry Klayman's alerts, you will also be signed up for news and special offers from WND via email. |

Name*

[                    ] First [                    ] Last

Email*

[                    ]

Where we will email your daily updates

Postal code*

A valid zip code or postal code is required

Click the button below to sign up for Larry Klayman's commentaries by email, and keep up to date with special offers from WND. You may change your email preferences at any time.

Sign me up!

Click here for reuse options!
Copyright 2016 WND

Article printed from WND: **http://www.wnd.com**

URL to article: **http://www.wnd.com/2016/04/bundys-need-support-in-fight-against-obama-reid/**

© Copyright 1997-2013. All Rights Reserved. WND.com.

# KLAYMAN LAW GROUP

2020 Pennsylvania Ave., NW, #800, Washington, DC, 20006 – Tel: (561) 558-5336 – leklayman@gmail.com

Date:   April 17, 2017                    **FOR IMMEDIATE CONSIDERATION**

From:  Larry Klayman, Esq.
        Counsel for Cliven Bundy

To:      Honorable Jeff B. Sessions
        Attorney General
         U.S. Department of Justice ("DOJ")

Re:      Updated Request to Expeditiously Review Prosecution of Cliven Bundy in *United States of America v. Bundy*, 2:16-cr-000046 (D. Nev.)

     Defendant Cliven Bundy, through the undersigned counsel, respectfully submits the following update to his previous request that the U.S. Department of Justice, under the auspices of the Honorable Jeff B. Sessions, review the prosecution of Cliven Bundy in the U.S. District Court for the District of Nevada ("District Court"). The prosecution has now requested that the trial of Cliven Bundy and two of his sons begin on or around June 5, 2017[1], and the District Court will likely grant the request, as it has all other similar requests by the former Obama Justice Department. Thus, with Cliven Bundy's trial likely set to commence in approximately one-and-a-half months, expedited review of this matter is requested. Before reviewing this memorandum and my other recent correspondence, which is attached hereto as <u>Exhibit A</u>, please review this video found at:   **https://www.youtube.com/watch?v=u0SZY1DI-Uo&feature=youtu.be**.  It shows how Bureau of Land Management Agents, then run by the former chief of staff of Sen. Harry Reid,

---

[1] Jenny Wilson, *Prosecutors Request Start Date of June 5 for Second Bunkerville Standoff Trial*, Las Vegas Review Journal, Apr. 8, 2017, available at: https://www.reviewjournal.com/news/bundy-blm/prosecutors-request-start-date-of-june-5-for-second-bunkerville-standoff-trial/.

brutalized the Bundy family with excessive force, prior to the well-publicized successful stand-off.

 As is apparent from some other politically charged legal actions commenced during the Obama administration, the DOJ prosecutors in Las Vegas, Nevada are highly partisan, pro-Obama DOJ attorneys dedicated to making an example of Cliven Bundy and his family. Coupled with the trial judge, the Honorable Gloria Navarro ("Judge Navarro"), the hand picked Obama nominee of former Senator Harry Reid, who has publicly slandered my client and his family as "domestic terrorists" on many occasions, the deck appears stacked against Cliven Bundy and his two sons as they head into trial on June 5, 2017.

All that I am requesting, therefore, is that the Attorney General instruct the prosecutors in the U.S. Attorney's Office to seek a removable three month stay of prosecution, in order that the current DOJ leadership and its staff can review this prosecution to determine whether to proceed. I am asking for this without media or other non-legal involvement in the best interests of my client, as I respect - as a former DOJ prosecutor - the office of the Attorney General and the DOJ as a whole and understand that you would consult with the U.S. Attorney's office in Las Vegas to make a just determination.

This U.S. Attorney's office, however, has played fast and loose with its prosecution, as set forth herein and as has been reported in particular by the Las Vegas Review Journal. While also claiming that it took no position on my joining the Cliven Bundy defense as lead counsel (local counsel is not, on his own, up to the job for a number of reasons), and despite Cliven Bundy expressing his steadfast desire to have me as his lead counsel, the U.S. Attorney, wanting to have it both ways, has trashed my reputation with the U.S. Court of Appeals for the Ninth Circuit and opposed Cliven Bundy's Sixth Amendment constitutional right to counsel, where I am seeking,

though an Emergency Petition for Writ of Mandamus, to have it issue an order requiring Judge Navarro to admit me *pro hac vice*.

As set forth in my previous request, attached hereto as <u>Exhibit A</u>, Cliven Bundy has been deprived of a litany of his constitutional rights since he was indicted in February of 2016, and not just his Sixth Amendment right to counsel of choice. Even more, at the ongoing trial of Cliven Bundy's co-defendants in the District Court, numerous instances of serious prosecutorial misconduct, the prejudicial effect of which have often been compounded by prejudicial rulings repeatedly in favor of the prosecution, have at least created the appearance that the prosecution and Judge Navarro are working in parallel to ensure that Cliven Bundy and his co-defendants are convicted.

Now, in the approximately two weeks that have passed since Cliven Bundy submitted the previous request for a review by new DOJ leadership, new instances of severely prejudicial rulings by Judge Navarro have undeniably turned the trial of Cliven Bundy's co-defendants – and ultimately the trial of Cliven Bundy when it begins in early June – into a political prosecution. For example, while Judge Navarro barred defense counsel from introducing testimony pertaining to incidents before the standoff[2], she conspicuously allowed the prosecution, in closing arguments, to introduce testimony that the Bureau of Land Management ("BLM") agents feared for their lives based on incidents before the standoff. This extremely prejudicial ruling in favor of the prosecution, which has regrettably become the norm in the trial of Cliven Bundy's co-defendants, led to defense counsel for Mr. Drexler to say that the ruling "crippled the defense and ensured the jury won't hear from most of the witnesses that defendants' attorneys intended to call."[3] Indeed,

---

[2] *Judge Makes Key Ruling on Defense Witnesses in Nevada Standoff Trial*, Associated Press, Apr. 3, 2017, available at: http://www.oregonlive.com/oregon-standoff/2017/04/judge_makes_key_ruling_on_defe.html.
[3] *Id.*

defense lawyers for Cliven Bundy's co-defendants were thereby precluded by Judge Navarro from calling SSA Dan P. Love ("SSA Love"), who led the BLM's attempt to seize Cliven Bundy's land, to the stand.[4] As set forth in the previous request, SSA Love was found to have engaged in serious, criminal misconduct which should and would have impeached his credibility, had defense lawyers been allowed to call him to the stand. Exhibit A. This extremely prejudicial ruling by Judge Navarro therefore serves to ensure that counsel for defendants are unable to impeach the agent in charge of the Bundy stand-off.

Judge Navarro, among other overtly prejudicial rulings, has essentially precluded the defendants currently on trial from introducing evidence and testimony of their state of mind before the stand-off, which clearly prejudices those defendants because they are unable to show that they did not join Cliven Bundy in some sort of conspiracy to commit armed assault against federal agents. Indeed, the six defendants currently on trial joined Cliven Bundy because they were, understandably, shocked and appalled by footage of the actions of BLM agents leading up to the standoff. *See* **VIDEO OF BLM AGENTS WHICH I AM HAVING HAND-DELIVERED, AND WHICH IS AVAILABLE AT: https://www.youtube.com/watch?v=u0SZY1DI-Uo&feature=youtu.be**. Leading up to the standoff, BLM agents were caught on film violently assaulting Cliven Bundy's family members, including two of Cliven Bundy's sons and Cliven Bundy's sister. That footage was released to the world on social media, and as a result, numerous supporters – including the six defendants currently on trial – came to Bunkerville to support Cliven Bundy and ensure that Cliven Bundy's rights, and by extension, their own, were protected. However, Judge Navarro's extremely prejudicial ruling barring defendants from introducing such

---

[4] *Id.*

evidence that clearly cuts against the existence of any type of conspiracy essentially hands the prosecution a conviction "on a silver platter."

In addition to Judge Navarro's severely prejudicial rulings in favor of the prosecution, Cliven Bundy and his co-defendants have another significant hurdle to clear in order to have at this point even a remote chance at a fair trial. The BLM and the Federal Bureau of Investigation ("FBI") have intentionally slow-rolled production of documents pursuant to a Freedom of Information Act ("FOIA") request made by the undersigned counsel, Mr. Larry Klayman. *See Freedom Watch v. Bureau of Land Management*, 16-cv-2320-CKK (D.D.C). Not coincidentally, the BLM has indicated that it cannot produce records that do not require further review by the U.S. Attorney's Office in Nevada until June 5, 2017 – the same day that Cliven Bundy's trial is likely to begin, thereby preventing Cliven Bundy from having any meaningful opportunity to review documents and conduct any required investigation. The FBI's response is even worse; it proposes to produce documents in approximately two years. It is abundantly clear that the BLM and FBI are slow-rolling document production to not occur until Cliven Bundy is, as they hope for, convicted and sentenced to life imprisonment. Regrettably, but not surprisingly, the Clinton appointed Hon. Colleen Kollar-Kotelly, a highly partisan judge appointed by President Clinton (who has hotly opposed by Paul Weyrich, the Free Congress Foundation and a myriad of other conservative groups when she was up for confirmation many years ago) has accepted the BLM and FBI's proposed schedule without even giving the undersigned counsel the opportunity to address the issue at a status conference.

As set forth above, Cliven Bundy has continued to face instances of grave, serious prejudice even in the short two-week span since he made his previous request. These instances, in tandem with the litany of constitutional and other rights that he has already been deprived of, as

Cliven Bundy's trial is now set to begin on or around June 5, 2017, Cliven Bundy respectfully requests that the U.S. Department of Justice, under the auspices of the Hon. Jeff. B. Sessions, review this matter on an expedited basis.

Dated: April 17, 2017                                    Respectfully submitted,

Larry Klayman, Esq.
**Klayman Law Group, P.A.**
2020 Pennsylvania Avenue,
N.W.  Suite 800
Washington, D.C. 20006
(561) 558-5336
Email: *leklayman@gmail.com*

# KLAYMAN LAW GROUP

7050 W Palmetto Park Rd, Ste 15-287, Boca Raton, FL 33433 • Ph (561) 558 5336 • leklayman@gmail.com

From: Larry Klayman, Esq,     **FOR IMMEDIATE CONSIDERATION**
        Counsel for Cliven Bundy

To:     Honorable Jeff B. Sessions
        Attorney General

Re:    Second Updated Request to Urgently Review Prosecution of Cliven Bundy in *United States of America v. Bundy*, 2:16-cr-000046 (D. Nev.)

Defendant Cliven Bundy ("Bundy") respectfully submits the following additional update to his preview update and request that the U.S. Department of Justice, under the auspices of the Honorable Jeff B. Sessions, review the prosecution of Bundy in the U.S. District Court for the District of Nevada ("District Court"). Trial is set to begin on or about June 5, 2017.

Importantly, on April 24, 2017, a federal jury found **none** of Bundy's co-Defendants that had been on trial in the first group of Defendants guilty on conspiracy charges. *See* Exhibit A.[1] Indeed, only two of Bundy's co-Defendants were found guilty on any charges at all, while the jury deadlocked on the remaining four co-Defendants. *Id.* Importantly, Jess Marchese – the attorney for defendant Eric Parker – revealed that the jury was split in favor of Bundy's co-Defendants. *Id.*

The federal jury's decision shows exactly how weak the prosecution's case is against Bundy, as none of Bundy's co-Defendants were found guilty of participating in the alleged "conspiracy" that the prosecution attempted paint Bundy as the "mastermind" behind. The prosecution even attempted to "try" Bundy and his wife *in absentia*, as set forth previously, but

---

[1] Ken Ritter, *Feds Stumble Again with Split Verdict in Bundy Standoff Case*, AP, Apr. 24, 2017, available at: https://www.usnews.com/news/best-states/nevada/articles/2017-04-24/jury-resumes-deliberating-in-vegas-ranching-standoff-trial.

the jury – wisely – did not buy it. The federal jury's decision is compelling evidence that the prosecution against Bundy is nothing more than a political prosecution, much like the previous trial of Bundy's sons, Ammon and Ryan, regarding the 41-day standoff at an Oregon federal wildlife refuge. Ammon and Ryan were also acquitted of all charges. Exhibit B.[2]

Bundy never harmed any Bureau of Land Management ("BLM") or other federal agents. On the other hand, Bundy's family members were violently assaulted and his cattle were slaughtered by BLM and other agents. ***See* https://www.youtube.com/watch?v=u0SZY1DI-Uo (Video depicting Obama's BLM's use of excessive force and brutality against the Bundy family)**. The federal jury's decision clearly shows that the prosecution's attempt to paint Bundy as the "mastermind" behind an alleged conspiracy misses the mark, as none of the other Defendants were found to have "conspired." Thus, it is incumbent upon the U.S. Department of Justice to review the prosecution of Bundy's prosecution as soon as possible, particularly given the recent decision of the federal jury in the District Court and the upcoming trial to begin on or around June 5, 2017.

Finally, President Donald Trump has commented on the abuse of the BLM and the Obama administration in nationalizing and in effect, seizing, the land of ranchers and others, particularly in the West, in an unprecedented land grab. Exhibit C.[3] Indeed, prior to leaving office, President Obama nationalized the land that the Bundys have been ranching on for over 110 years.[4] This

---

[2] Steve Almasy, *Ammon Bundy, 6 Others Acquitted in Oregon Standoff Trial*, CNN, Oct. 28, 2016, available at: http://www.cnn.com/2016/10/27/us/oregon-standoff-ammon-bundy-acquittal/
[3] *Trump Orders Review of National Monument Designations*, Fox News, Apr. 26, 2017, available at: http://www.foxnews.com/politics/2017/04/26/trump-orders-review-national-monument-designations.html
[4] Lauren Fox, *Obama Declares Site of the 2014 Bundy Standoff a National Monument*, TPM, Dec. 28, 2016, available at: http://talkingpointsmemo.com/dc/obama-designates-gold-butte-national-monument-bundy-ranch

parting shot by President Obama against Bundy, effectively seizing the land that his family had ranched on for over a century, is additional compelling evidence that the prosecution against Bundy is nothing more than a "political prosecution" intended to ruin Bundy and his family.

Dated: April 26, 2017

Respectfully submitted,

Larry Klayman, Esq.
Klayman Law Group, P.A.
2020 Pennsylvania Avenue,
N.W.  Suite 800
Washington, D.C. 20006
(561) 558-5336
Email: *leklayman@gmail.com*

EXHIBIT A

f (https://w
(/news/best-states)  BEST STATES

f (https://www.facebook.com/sharer/sharer.php?u=https%3A%2F%2Fwww.usnews.com%2Fnews%2Fbest-states%2Fnevada%2Farticles%2F2017-04-24%2F
deliberating-in-vegas-ranching-standoff-trial%3Fsrc=usn_fb)
(https://twitter.com/share?url=https%3A%2F%2Fwww.usnews.com%2Fnews%2Fbest-states%2Fnevada%2Farticles%2F2017-04-24%2Fjury-resumes-del
ranching-standoff-
trial%3Fsrc=usn_tw&text=Feds%20Stumble%20Again%20With%20Split%20Verdict%20in%20Bundy%20Standoff%20Case%20%7C%20Nevada%20News%20%
(https://www.reddit.com/submit?url=https%3A%2F%2Fwww.usnews.com%2Fnews%2Fbest-states%2Fnevada%2Farticles%2F2017-04-24%2Fjury-resum
vegas-ranching-standoff-trial%3Fsrc=usn_rd)

# Feds Stumble Again With Split Verdict in Bundy Standoff Case

A jury has convicted two men in an armed standoff with government agents near Cliven Bundy's Nevada ranch in 2014, but then deadlocked on federal charges against four others.

| April 24, 2017, at 9:06 p.m.

( https://www.facebook.com/sharer/sharer.php?u=https%3A%2F%2Fwww.usnews.com%2Fnews%2Fbest-states%2Fnevada%2Farticles%2F2017-04-24%2Fjury-
resumes-deliberating-in-vegas-ranching-standoff-trial%3Fsrc=usn_fb )
( https://twitter.com/share?url=https%3A%2F%2Fwww.usnews.com%2Fnews%2Fbest-states%2Fnevada%2Farticles%2F2017-04-24%2Fjury-resumes-deliberating-in-vegas-ranching-
standoff-
trial%3Fsrc=usn_tw&amp;text=Feds%20Stumble%20Again%20With%20Split%20Verdict%20in%20Bundy%20Standoff%20Case%20%7C%20Nevada%20News%20%7C%20US%20Ne
)
( http://www.reddit.com/submit?url=https%3A%2F%2Fwww.usnews.com%2Fnews%2Fbest-states%2Fnevada%2Farticles%2F2017-04-24%2Fjury-resumes-
deliberating-in-vegas-ranching-standoff-trial%3Fsrc=usn_rd )

MORE



Supporters raise a flag outside of the federal courthouse Monday, April 24, 2017, in Las Vegas. A jury found two men guilty of federal charges Monday in an armed standoff that stopped federal agents from rounding up cattle near Cliven Bundy's Nevada ranch in 2014. Jurors said they were deadlocked on charges against four other men, and the judge told them to keep deliberating. (AP Photo/John Locher) THE ASSOCIATED PRESS

AP

By KEN RITTER, Associated Press

f (https://www.facebook.com/sharer/sharer.php?u=https%3A%2F%2Fwww.usnews.com%2Fnews%2Fbest-states%2Fnevada%2Farticles%2F2017-04-24%2Fjury-resumes-deliberating-in-vegas-ranching-standoff-trial%3Fsrc=usn_fb)

(https://twitter.com/share?url=https%3A%2F%2Fwww.usnews.com%2Fnews%2Fbest-states%2Fnevada%2Farticles%2F2017-04-24%2Fjury-resumes-deliberating-in-vegas-ranching-standoff-trial%3Fsrc=usn_tw&text=Feds%20Stumble%20Again%20With%20Split%20Verdict%20in%20Bundy%20Standoff%20Case%20%7C%20Nevada%20News%20%2...

(https://plus.google.com/share?url=https%3A%2F%2Fwww.usnews.com%2Fnews%2Fbest-states%2Fnevada%2Farticles%2F2017-04-24%2Fjury-resumes-deliberating-in-vegas-ranching-standoff-trial%3Fsrc=usn_gp)

(https://www.reddit.com/submit?url=https%3A%2F%2Fwww.usnews.com%2Fnews%2Fbest-states%2Fnevada%2Farticles%2F2017-04-24%2Fjury-resumes-deliberating-in-vegas-ranching-standoff-trial%3Fsrc=usn_reddit&title=Feds%20Stumble%20Again%20With%20Split%20Verdict%20in%20Bundy%20Standoff%20Case%20%7C%20Nevada%20News...

LAS VEGAS (AP) — Government prosecutors stumbled again Monday in a bid to gain convictions of armed protesters in a case arising from skirmishes in a decades-old battle over control of public lands in the western United States.

A U.S. jury in Las Vegas found two gunmen guilty of some charges in a 2014 armed standoff that stopped federal agents from enforcing court orders and confiscating cows belonging to Cliven Bundy from public rangeland near his Nevada ranch and melon farm.

But the verdict was not all the prosecutors wanted. The judge declared a mistrial on Monday on most charges against four of the men, including two defendants the government said were key figures in the protest.

A second trial could start as early as June 26 for the 70-year-old Cliven Bundy, sons Ammon and Ryan Bundy, and two other alleged conspiracy leaders are set to be tried.

"They split our way, anywhere from 10-2 to 7-5, not guilty," Jess Marchese, attorney for defendant Eric Parker, said after prosecutors and defense lawyers met behind closed doors with the judge and several jurors to talk about the case.

Acting Nevada U.S. Attorney Steven Myhre and three other prosecutors in the case didn't immediately respond to messages.

"Intent. They said the government did not prove intent," Todd Leventhal, attorney for Scott Drexler, said of the jurors. "They felt there was a lot of evidence that didn't go anywhere."

The jury also failed to agree on guilt or innocence for Richard Lovelien of Oklahoma and Montana, and Steven Stewart of Idaho.

Gregory Burleson of Phoenix was found guilty of eight counts, including assault and threats against federal agents and extortion — crimes of violence carrying the possibility of 57 years of mandatory prison time at sentencing July 26. His attorney, Terrence Jackson, said Burleson will appeal.

Todd Engel of Idaho was convicted of obstruction and traveling across state lines in aid of extortion. He could face up to 30 years in prison at sentencing July 27.

It wasn't immediately clear whether the trial for Cliven Bundy and his sons will be pushed back. Defense attorneys and family members complain that they have already been in federal custody and away from their families for more than a year.

The split verdict was a setback for the government in a case where evidence clearly showed the six men brought assault-style rifles to the standoff near Bunkerville.

When government agents backed down and states' rights advocates declared victory, it reverberated in areas where Bundy is admired for declaring that property belongs to the people, not the government in Washington, D.C.

Myhre had characterized the six as the least culpable of the 17 to be tried in the case, and their trial was seen as a test-run of a key conspiracy charge alleging that Bundy and his two eldest sons headed a conspiracy to wage a "range war" against the government.

The outcome echoed an Oregon case, where a federal jury last year acquitted Ammon and Ryan Bundy and five other defendants of all charges related to a 41-day occupation of a U.S. wildlife refuge — including that they conspired to impede federal officers from doing their work.

In Las Vegas, one conspiracy count alleges a plan was made to commit an offense against the United States, and that defendants then took part in it. A second count alleges that conspirators agreed to impede and injure a federal law enforcement officer.

"The only thing more powerful than the U.S. government is a fair and impartial jury," Cliven Bundy's attorney, Bret Whipple, declared Monday. "This gives us confidence that the primary witnesses against him are of limited value."

Whipple noted that it took two years to bring charges in the Bunkerville case and three years to bring it to trial, which took two months. The government presented 35 witnesses, including police officers and federal agents who sometimes became emotional describing fears that they wouldn't make it home from the standoff alive.

The six defense teams provided four witnesses, including Parker. He was the only defendant to testify. He was famously photographed lying on a freeway overpass during the standoff, looking with his AK-47-style rifle through a seam in a concrete barrier toward heavily armed federal agents guarding a cattle corral below.

The agents had been enforcing court orders to get Bundy cattle off public lands for his refusal to pay grazing fees.

But Parker testified he came to Nevada from Idaho with friends and co-defendants Drexler and Stewart after seeing accounts of Bundy family members met with police dogs, knocked down, stun-gunned and arrested in earlier scuffles with federal agents.

He was asked by prosecutor Nila Haun-Dickinson about the man, Parker, who talked about "matching the show of force" against federal authorities.

"Just like Cliven Bundy told you to do, correct?" Dickinson asked.

"Nobody told us to do anything, sir," Parker answered.

f (https://www.facebook.com/sharer/sharer.php?u=https%3A%2F%2Fwww.usnews.com%2Fnews%2Fbest-states%2Fnevada%2Farticles%2F2017-04-24%2Fjury-resumes-deliberating-in-vegas-ranching-standoff-trial%3Fsrc=usn_fb)

(https://twitter.com/share?url=https%3A%2F%2Fwww.usnews.com%2Fnews%2Fbest-states%2Fnevada%2Farticles%2F2017-04-24%2Fjury-resumes-deliberating-in-vegas-ranching-standoff-trial%3Fsrc=usn_tw)

Copyright 2017 The Associated Press (http://www.ap.org). All rights reserved. This material may not be published, broadcast, rewritten or redistributed.

(https://www.reddit.com/submit?url=https%3A%2F%2Fwww.usnews.com%2Fnews%2Fbest-states%2Fnevada%2Farticles%2F2017-04-24%2Fjury-resumes-deliberating-in-vegas-ranching-standoff-trial%3Fsrc=usn_rd)



Tags: Oklahoma (//www.usnews.com/topics/locations/oklahoma), Oregon (//www.usnews.com/topics/locations/oregon), Arizona (//www.usnews.com/topics/locations/arizona), Utah (//www.usnews.com/topics/locations/utah), Montana (//www.usnews.com/topics/locations/montana), Ohio (//www.usnews.com/topics/locations/ohio), Washington (//www.usnews.com/topics/locations/washington), New Hampshire (//www.usnews.com/topics/locations/new_hampshire), Nevada (//www.usnews.com/topics/locations/nevada), California (//www.usnews.com/topics/locations/california), Idaho (//www.usnews.com/topics/locations/idaho)

USNews BrandFuse



(https://www.usnews.com/sponsored3?prx_t=uqwCAf9MNAPfMPA&ntv_fr)

Ad Content by Children's Hospital of Philadelphia

One Teenager's Success

Story of Treating and Managing Crohn's Disease (https://www.usnews.com/sponsored3?prx_t=uqwCAf9MNAPfMPA&ntv_fr)

Lucy's back to baking and lacrosse-playing thanks to Children's Hospital of Philadelphia.



**Recommended Articles**

f (http://www.facebook.com/sharer.php?u=https%3A%2F%2Fwww.usnews.com%2Fnews%2Fbest-states%2Fnevada%2Farticles%2F2017-04-24%2F deliberating-in-vegas-ranching-standoff-trial%3Fsrc=usn_fb)

(https://twitter.com/share?url=https%3A%2F%2Fwww.usnews.com%2Fnews%2Fbest-states%2Fnevada%2Farticles%2F2017-04-24%2Fjury-resumes-del ranching-standoff-trial%3Fsrc=usn_tw&text=Feds%20Stumble%20Again%20With%20Split%20Verdict%20in%20Bundy%20Standoff%20Case%20%7C%20Nevada%20News%20%

(https://www.reddit.com/submit?url=https%3A%2F%2Fwww.usnews.com%2Fnews%2Fbest-states%2Fnevada%2Farticles%2F2017-04-24%2Fjury-resum vegas-ranching-standoff-trial%3Fsrc=usn_rd)



### Safest States in America (//www.usnews.com/best-states/slideshows/the-10-safest-states-in-america?int=news-rec)

Darian Somers (/topics/author/darian-somers)  |  March 23, 2017

When it comes to safety, these states have low rates of both violent and property crime.

(//www.usnews.com/news/best-states/slideshows/the-10-safest-states-in-america?int=news-rec)



### Trump Schools Proposals Divide Charter Advocates (//www.usnews.com/news/best-states/articles/2017-03-23/trump-school-choice-proposals-drive-wedge-between-charter-school-advocates?int=news-rec)

Lauren Camera (/topics/author/lauren-camera)  |  March 23, 2017

Planned budget cuts to the Education Department and a spending increase for vouchers and charter schools are forcing advocates to pick sides.

(//www.usnews.com/news/best-states/articles/2017-03-23/trump-school-choice-proposals-drive-wedge-between-charter-school-advocates?int=news-rec)

### South Dakota Cattle Ranchers Lose Money in 2016 (//www.usnews.com/news/best-states/south-dakota/articles/2017-04-26/south-dakota-cattle-ranchers-lose-money-in-2016?int=news-rec)

April 26, 2017

South Dakota ranchers who took part in a Mitchell Technical Institute program lost an average of $100 per cow last year, after earning an average profit of $150 per cow the year before.

### Walker: Not My Job to Remove Sheriff Clarke After Jail Death (//www.usnews.com/news/best-states/wisconsin/articles/2017-04-26/walker-not-my-job-to-remove-sheriff-clarke-after-jail-death?int=news-rec)

April 26, 2017



f (https://www.facebook.com/sharer/sharer.php?u=https%3A%2F%2Fwww.usnews.com%2Fnews%2Fbest-states%2Fnevada%2Farticles%2F2017-04-24%2Fdeliberations-begin-in-federal-case-over-nevada-ranching-standoff)

(https://twitter.com/intent/tweet?url=https%3A%2F%2Fwww.usnews.com%2Fnews%2Fbest-states%2Fnevada%2Farticles%2F2017-04-24%2Fjury-resumes-deliberations-in-vegas-ranching-standoff-trial%3Fsrc=usn_tw&text=Feds%20Stumble%20Again%20With%20Split%20Verdict%20in%20Bundy%20Standoff%20Case%20%7C%20Nevada%20News%20%20)

(https://www.reddit.com/submit?url=https%3A%2F%2Fwww.usnews.com%2Fnews%2Fbest-states%2Fnevada%2Farticles%2F2017-04-24%2Fjury-resumes-deliberations-in-vegas-ranching-standoff-trial%3Fsrc=usn_rd)

Gov. Scott Walker said a 47-year-old Milwaukee County man whom Sheriff David Clarke on May 5 after Paige died in his cell died of dehydration after being without water for seven days.

**Chicago Archdiocese to Settle Priest Abuse Suits for $4.45M (//www.usnews.com/news/best-states/illinois/articles/2017-04-26/chicago-archdiocese-to-settle-priest-abuse-suits-for-445m?int=news-rec)**
April 26, 2017

The Archdiocese of Chicago will pay $4.45 million to settle three lawsuits brought by three men who allege they were sexually abused over a decade ago by a former Roman Catholic priest and convicted sex offender.



**Las Vegas Stabbings Suspect Says He 'Kinda' Grasps Charges (//www.usnews.com/news/best-states/nevada/articles/2017-04-26/suspects-mental-health-delays-hearing-in-vegas-knife-attack?int=news-rec)**
April 26, 2017

Questions about the mental health of a suspect accused of the apparently random stabbing deaths of two people last week in Las Vegas have again delayed his arraignment.

(//www.usnews.com/news/best-states/nevada/articles/2017-04-26/suspects-mental-health-delays-hearing-in-vegas-knife-attack?int=news-rec)

---

**Texas School Buses to Require Seatbelts (//www.usnews.com/news/best-states/texas/articles/2017-04-26/texas-school-buses-to-require-seatbelts?int=news-rec)**
April 26, 2017

Thousands more Texas children could soon have seatbelts on the buses they rides to school.

---

**Ban on Corporal Punishment in Louisiana Schools Advances (//www.usnews.com/news/best-states/louisiana/articles/2017-04-26/ban-on-corporal-punishment-in-louisiana-schools-advances?int=news-rec)**
April 26, 2017

A push to ban corporal punishment in Louisiana public schools has edged forward in the state House.

---

**Hungry Valley Recreation Limited by Colony Expansion (//www.usnews.com/news/best-states/nevada/articles/2017-04-26/hungry-valley-recreation-limited-by-colony-expansion?int=news-rec)**
April 26, 2017

Recreation activities in the Hungry Valley have been scaled back after 13,000 acres of land were given to the Reno-Sparks Indian Colony in October.

---

**California Weighs Huge Health**



(https://w...

f (https://www.facebook.com/sharer/sharer.php?u=https%3A%2F%2Fwww.usnews.com%2Fnews%2Fbest-states%2Fnevada%2Farticles%2F2017-04-24%2Fjury-resumes-deliberating-in-vegas-ranching-standoff-trial%3Fsrc=usn_fb)

🐦 (https://twitter.com/share?url=https%3A%2F%2Fwww.usnews.com%2Fnews%2Fbest-states%2Fnevada%2Farticles%2F2017-04-24%2Fjury-resumes-deliberating-in-vegas-ranching-standoff-trial%3Fsrc=usn_tw&text=Feds%20Stumble%20Again%20With%20Split%20Verdict%20in%20Bundy%20Standoff%20Trial)

🔴 (https://www.reddit.com/submit?url=https%3A%2F%2Fwww.usnews.com%2Fnews%2Fbest-states%2Fnevada%2Farticles%2F2017-04-24%2Fjury-resumes-deliberating-in-vegas-ranching-standoff-trial%3Fsrc=usn_rd)

✉

### Care Remake, Dumping Insurers (//www.usnews.com/news/best-states/california/articles/2017-04-26/california-lawmakers-consider-dumping-health-insurers?int=news-rec)

April 26, 2017

California lawmakers are considering a proposal that would overhaul the health care system of the nation's most populous state by eliminating insurers and guaranteeing coverage for everyone.

(//www.usnews.com/news/best-states/california/articles/2017-04-26/california-lawmakers-consider-dumping-health-insurers?int=news-rec)

Load More (/news/best-states/nevada/articles/2017-04-24/jury-resumes-deliberating-in-vegas-ranching-standoff-trial?offset=10)



 **BEST STATES**

Best States is an interactive platform developed by U.S. News for ranking the 50 U.S. states, alongside news analysis and daily reporting. The platform is designed to engage citizens and government leaders in a discussion about what needs improvement across the country. The data was provided by McKinsey & Company's Leading States Index.

Home (/news/best-states)

Rankings (/news/best-states/rankings)

Methodology (/news/best-states/articles/methodology)

FAQ (/news/best-states/articles/frequently-asked-questions)

🐦 Twitter (https://twitter.com/usnews)

f Facebook (https://www.facebook.com/usnewsandworldreport)

Copyright 2017 © U.S. News & World Report L.P.   Terms and Conditions (http://www.usnews.com/info/features/terms)
Privacy Policy (http://www.usnews.com/info/features/terms#privacy)

EXHIBIT B

# Ammon Bundy, 6 others acquitted in Oregon standoff trial

By Steve Almasy, CNN

Updated 1:41 AM ET, Fri October 28, 2016

## Story highlights

A building in federal wildlife refuge was held by armed occupiers for 41 days

Jury acquitted the seven on conspiracy charges; five also faced firearms charge



**(CNN) —** Seven people who were among the armed occupiers of a federal wildlife refuge in Oregon earlier this year were acquitted Thursday of charges related to the 41-day standoff.

Ammon Bundy; his brother, Ryan Bundy; and three other people were found not guilty of firearms charges and conspiracy to impede federal workers. Two others who were acquitted were charged only with conspiracy. The federal jury couldn't reach a verdict on a theft charge against Ryan Bundy.

There was a bit of drama in the courtroom after the decision, CNN affiliate KOIN reported. Ammon Bundy's attorney, Marcus Mumford, was taken down by US Marshals who reportedly used a stun gun on him after the lawyer argued with the judge that his client should be set free. Mumford spent a brief time in custody, KOIN reported.

**NEWS ALERT**                                                                                          ✕

White House outlines "massive tax cuts and tax reforms" aimed at growing US economy.  Watch CNN

U.S.  »  Ammon Bundy, 6 others acquitted in Oregon standoff trial | Live TV          U.S. Edition **+**   🔍

**Article:** Cliven and Ammon Bundy: A family's history of fighting the federal government



By using this site, you agree to the **Privacy Policy** and **Terms of Service**. ✕

**Photos:** Oregon standoff mugshots

Seven people linked to an armed occupation of the Malheur National Wildlife Refuge in Oregon were arrested in that state on Tuesday, police said. Five, including the occupiers' leader, Ammon Bundy (pi were arrested in a traffic stop on U.S. 395, police said.

1 of 8                                                                                          Hide Ca

One of the Malheur National Wildlife Refuge defendants, Neil Wampler, told reporters: "We came to Oregon ... seeking justice, and we found it today."

Another, Shawna Cox, said the jury's decision brought her to tears.

"I was thrilled. We all knew we weren't guilty," she said, according to KOIN.

Harney County Sheriff David M. Ward said he was disappointed.

"This is our system and I stand by it," he added.



**Photos:** Malheur National Wildlife Refuge: After the occupation

For the first time, we're getting a look at what life was like for the Malheur National Wildlife Refuge occ
-- and the damage they allegedly caused. The U.S. Fish and Wildlife service released a series of phot
in and around the federal center near Burns, Oregon.

1 of 10                                                                                              Hide Ca

Gov. Kate Brown said she respected the jury's decision.

"The occupation of the Malheur Refuge by outsiders did not reflect the Oregon way of respectfully working
together to resolve differences," she said.

Dozens of people occupied part of the Malheur National Wildlife Refuge near Burns on January 2 after gathering
outside for a demonstration supporting Dwight and Steven Hammond, father and son ranchers who were
convicted of arson, and in defiant protest of federal land policies.

EXHIBIT C



Print    Close

# Trump orders review of national monument designations

Published April 26, 2017

Fox News

President Trump on Wednesday ordered the Interior Department to review national monument designations dating back 20 years for millions of acres of land, arguing former presidents have "abused" the system and vowing to return such authority to citizens and state lawmakers.

"Today, we are giving power back to the states and people where it belongs," Trump said in signing the executive order at the Interior Department headquarters in Washington, D.C. "This massive federal land grab; it's gotten worse and worse."

The order has already sparked a sharp response from the Sierra Club and other environmentalist groups that are concerned about any possible changes ending the protections and allowing use of the land for oil or gas drilling.

"America's parks and public lands are not in need of corporate restructuring," the Sierra Club said. "We should not be asking which parts of our history and heritage we can eliminate, but instead how we can make our outdoors reflect the full American story."

At issue is the 1906 Antiquities Act, which gives presidents authority to protect land.

Trump said the law also gives the federal government "unlimited power to lock up millions of acres of land and water" and that it has been used on hundreds of millions of acres.

He vowed to "end these abuses."

The executive order targets protections from the past three presidents including two spots in Utah: former President Barack Obama's designation of the 1.35 million-acre Bear Ears National Monument in Utah and former President Bill Clinton's designation in 1996 of the Grand Staircase–Escalante National Monument.

Interior Secretary Ryan Zinke said before the signing: "Let me be clear, this executive order does not reverse any monument designation."

The 111-year-old act grants presidents the authority to create national monuments from federal land to protect its historic, cultural and scientific significance, and the Supreme Court has repeatedly upheld such changes.

However, Congress has twice limited presidential powers under the act, requiring congressional consent on some future proclamations.

The executive order was created at the urging of Sen. Orrin Hatch and other members of Utah's Republican congressional delegation.

"When President Obama designated the Bears Ears monument in December, he did so ignoring the voices of Utah leaders who were united in opposition, and even more importantly, ignoring the voices of the local Utahns most affected by this massive land grab," Hatch said last week while visiting the site.

Among those attending the signing ceremony were Hatch, fellow Utah GOP Sen. Mike Lee and Vice President Pence.

Print    Close

**URL**
http://www.foxnews.com/politics/2017/04/26/trump-orders-review-national-monument-designations.html

Home | Video | Politics | U.S. | Opinion | Entertainment | Tech | Science | Health | Travel | Lifestyle | World | Sports | Weather

Privacy | Terms

This material may not be published, broadcast, rewritten, or redistributed. © FOX News Network, LLC. All rights reserved. All market data delayed 20 minutes. New Privacy - New Terms of Use (What's New) - FAQ

# KLAYMAN LAW GROUP

7050 W Palmetto Park Rd, Ste 15-287, Boca Raton, FL 33433 • Ph (561) 558 5336 • leklayman@gmail.com

From:  Larry Klayman, Esq,              **FOR IMMEDIATE CONSIDERATION**
       Counsel for Cliven Bundy

To:    Honorable Jeff B. Sessions
       Attorney General of the United States

Re:    Third Updated Request to Urgently Review Prosecution of Cliven Bundy in *United States of America v. Bundy*, 2:16-cr-000046 (D. Nev.)

Dear Jeff:

This is the third supplement to our original email (3 other attachments "attached" below) concerning a requested urgent and expedited review of the ongoing prosecution of Cliven Bundy, for which trial is now scheduled to begin as early as June 5, 2017. I am also enclosing a recent pleading that I filed before the U.S. Court of Appeals for the Ninth Circuit. This pleading is very revealing since it shows that Obama loyalists in the Justice Department are unethically opposing, with unprofessional and vicious *ad hominem* personal attacks, my entry *pro hac vice* into the case to defend Cliven Bundy. If convicted, Cliven Bundy faces potential life imprisonment.

As a former Justice Department prosecutor myself, I was instructed on my very first day in the Antitrust Division in 1979 that I not only represented the United States, but also the defendants on the other side of the courtroom. Apparently this standard of fairness no longer applies. The prosecutorial misconduct that has been engaged in by Obama loyalist prosecutors within the Department is severely harming the Sixth Amendment and other rights of my client, Cliven Bundy, and quite frankly, is outrageous.

Notwithstanding the dire situation regarding the Bundy prosecution, I look forward to possibly working with you in the future in order that a better understanding can be gained of the

lawyers within the Department who are opposed to the Trump agenda and conservatives in general. The Federal Programs Branch of the Civil Division is another example. Lawyers there were sanctioned for lying last year by the Honorable Andrew Hanen of the U.S. District Court for the Southern District of Texas in the successful challenge to Obama's "amnesty" executive order on immigration. In fact, Judge Hanen ordered them, as part of his sanction, to take courses on ethics. I am in court frequently with these attorneys, as I have been since the Clinton years. They are continuing to do the bidding, in my opinion, of the Obama administration, and left unchecked, will seek to undermine your authority as Attorney General.

All this points out why an expedited review of the Bundy prosecution is necessary in the interest of justice. I look forward to urgently meeting with you and your staff in the near future. Until then, all my continued best.

Dated: April 28, 2017

Sincerely and Best Regards,

Larry Klayman, Esq.
KLAYMAN LAW GROUP, P.A.
2020 Pennsylvania Avenue,
N.W.  Suite 800
Washington, D.C. 20006
(561) 558-5336
Email: *leklayman@gmail.com*

# KLAYMAN LAW GROUP

7050 W Palmetto Park Rd, Ste 15-287, Boca Raton, FL 33433 • Ph (561) 558 5336 • leklayman@gmail.com

Date:   May 1, 2017

From:   Larry Klayman, Esq,                    **<u>FOR IMMEDIATE CONSIDERATION</u>**
        Counsel for Cliven Bundy

To:     Honorable Jeff B. Sessions
        Attorney General of the United States

Re:     Fourth Update and Summary of Weaknesses of Bundy Prosecution

Dear Jeff:

        I forwarded yesterday to you by text message a recent newspaper publication from the Las

Vegas Review Journal showing how the government's prosecution in the Bundy cases is falling

apart. <u>Exhibit A</u>. This is because juries in general realize that it was a political prosecution in the

first place and it is being administered unfairly by a judge, the Hon. Gloria Navarro ("Judge

Navarro"), who is highly partisan, and who was recommended to the bench by Harry Reid and

appointed by Barack Obama.

        It appears that, there having been a mistrial of several defendants in the first round and a

failure again to prove any conspiracy charges with by client, Cliven Bundy, Judge Navarro is going

to push off Cliven Bundy's and his sons' trial for several months. Having initially been

incarcerated in solitary confinement at the request of Judge Navarro, even though she denies it,

Cliven is now being held in prison for going on two years before he is even tried.

        The case concerns not just the Bundy family, but also indirectly ranchers throughout the

west, as the attached article explains. During the presidential campaign, President Trump had

commented on the unfair treatment of these ranchers by the Bureau of Land Management

("BLM"), which not coincidentally is run by a protégé of Harry Reid. This case thus has significant interest, particularly throughout the west. It also stands for the use of First Amendment and Second Amendment rights. As you know, no one in or around the Bundy family harmed a "hair on the head" of any federal agent, yet Cliven Bundy's sister, Margaret, was attacked, his two sons tased, his dog brutally kicked, and several of his cattle killed and buried in a mass grave. This is why juries are reacting negatively to the government's prosecution. In my view, Cliven Bundy and his family were indicted in large part because he used a politically incorrect term, "negro," in referring to how his family was treated by the federal government, having compared the treatment to similar treatment of the "negro" in the Old South. As I set forth and linked with a video in previous memoranda, Obama, in not to veiled fashion, threatened Bundy at the White House Correspondents Dinner in 2014, in effect saying this is what you get when you start your sentence off using "negro."

We now understand that Rod Rosenstein has been confirmed as your number two. I trust that you and he can lead a thorough review of this prosecution as expeditiously as possible. I'd like to meet with both of you mid-month in order that you can have a full understanding of this political prosecution and how it is resulting in a miscarriage of justice, to say the least.

Jeff, God bless you. I know have a lot on your plate, but the Bundy matter is really front and center, particularly for those who believe in First and Second Amendment constitutional rights, and the rights of ranchers in the west to continue to ranch their land without undue interference and use of excessive force from the federal government. ***See*** **https://www.youtube.com/watch?v=u0SZY1DI-Uo (Video depicting Obama's BLM's use of excessive force and brutality against the Bundy family**). Thank you for your consideration.

///

Dated: May 1, 2017

Sincerely and Best Regards,

Larry Klayman, Esq.
KLAYMAN LAW GROUP, P.A.
2020 Pennsylvania Avenue,
N.W.  Suite 800
Washington, D.C. 20006
(561) 558-5336
Email: *leklayman@gmail.com*

EXHIBIT A

Federal prosecutors throughout the West have struggled recently to win conspiracy convictions against groups of loosely organized individual rights activists who identify with an anti-government movement best known for staging armed protests on federally managed land.

The first blow for the federal government came in the fall, when Ammon and Ryan Bundy, sons of notorious anti-federalist rancher Cliven Bundy, were acquitted along with several others of charges that they conspired to intimidate employees out of doing their jobs at an Oregon national wildlife refuge.

Then, last week, in the first test of how a Nevada jury would view the armed standoff in Bunkerville three years ago, jurors deadlocked on conspiracy charges against six men accused of helping the Bundys use force to get their cows back from authorities.

In order to prove conspiracy, the government must convince jurors that two or more people shared the same criminal objective.

**Conspiring to protest**

Defense attorneys in the first Bunkerville standoff trial argued that their clients were protesters who exercised their constitutional rights to freely assemble and to bear arms. Eric Parker, one of the defendants who testified at trial, told jurors: "I didn't care about the cows."

"You had an overlap of constitutional rights — First and Second Amendment rights — with the government's allegations of assault," said Las Vegas criminal defense attorney Kathleen Bliss, a former federal prosecutor who is not involved in any of the Bundy cases. "From the constitutional standpoint, to stepping over the line into a criminal purpose and agreement … it just sounds like those lines were too blurred for the jury to make a decision that the evidence proved that beyond a reasonable doubt."

Parker testified that he drove to Bunkerville from Idaho after seeing online videos of federal agents using stun guns and police dogs against protesters. Parker's friend, Scott Drexler, said he went to Bunkerville with a "help your neighbor" mindset. Both men were photographed pointing guns at federal agents through a crack in the Jersey barrier on a highway overpass. The jury could not reach a unanimous verdict on any of the 10 counts against either man.

"The problem here is that, unlike drugs, or fraud, or really almost any federal crime you can conceive of, these are not people acting in their self-interest," Oregon defense attorney Matthew Schindler said.

Schindler represented Ken Medenbach, a man acquitted with the Bundy brothers in the fall.

"There's an element that's inherent in protest that makes the nature of proving an agreement more difficult," he said.

During the 41-day takeover of Oregon's Malheur National Wildlife Refuge in 2016, "people had all kinds of different motivations for being there," Schindler said.

He said that in his 20 years as a criminal defense attorney, Medenbach's trial was the first conspiracy case he successfully defended. He attributed that to the fact that it was difficult for the government to prove a unified objective among protesters.

Last week's verdict, in federal court in Las Vegas, revealed that at least some of the jurors in Nevada thought the same could have been true of the April 2014 standoff near Bundy's ranch.

According to evidence highlighted at trial, some defendants were restless members of militia groups who jumped at the chance to take arms against the federal government. Others said they acted under the belief that unarmed protesters needed protection against a heavily armed police force. And Cliven Bundy himself — who is accused of recruiting militia groups when the Bureau of Land Management started rounding up his cattle — said at a morning rally before the standoff that he wanted to see his cows released, and the federal park police disarmed.

Federal prosecutors maintain that the object of the conspiracy was to extort federal agents into abandoning roughly 400 cows they seized from Bundy, who for 20 years let his cattle roam freely on public land without paying for grazing permits. The standoff ended when authorities released the cattle and left Bunkerville.

**The rural-urban rift**

In both Nevada and Oregon, bustling metropolitan areas sit in stark contrast to wide swaths of sparsely populated rural land. Complex economic and social factors have generated deep divisions between rural and urban communities.

The rift was apparent in last fall's presidential election, when a wave of support in rural America propelled Donald Trump to victory over Hillary Clinton, who carried the vote in cities. The lenses through which people from different areas view issues of national importance also could divide juries. In the West, federal juries tend to comprise people from both rural and urban parts of the state or district.

Bliss, who previously served as a federal prosecutor in Oklahoma and Nevada, said traditionally Western values can seep into deliberations in these sorts of politically charged trials.

"This was about individual rights. That's the core. That's the soul of the West — this whole idea of rugged individualism," she said. "And people are ready to protect that. That's why people moved to the West — for the spirit, and the freedom, and the open land and sky and opportunity."

Bliss said rural Western cultures also tend to place a higher value on gun rights as a cornerstone of a free and democratic society. That line of thought often drives the sorts of loosely organized groups that responded to Bundy's call for arms.

"A lot of these paramilitary, militia, sovereign citizen-type groups — I think for them, they seem to be more bound to guns as the linchpin of the Constitution," she said.

Those sentiments align much better with the national political landscape than was the case in 2014 when the standoff occurred — one year after then-President Barack Obama launched an ultimately unsuccessful campaign to enact stricter federal gun laws.

Trump, in a keynote speech on Friday at the National Rifle Association's annual convention, told the nation's largest gun lobbying arm: "No longer will the federal government be trying to undermine your rights and freedoms as Americans."

During jury selection, defense attorneys asked potential jurors extensive questions about their views on guns and protests, anticipating that people's opinions on those issues could swing the case one way or another.

After five days of deliberations, jurors described themselves as "hopelessly deadlocked." Two men were convicted of some of the counts, but not the conspiracy charges.

Federal prosecutors still have not said which, if any, men they plan to retry. The U.S. attorney's office declined to comment for this story.

Contact Jenny Wilson at jenwilson@reviewjournal.com or 702-384-8710. Follow @jennydwilson on Twitter.

**About the Bundys**

Click here to read full coverage of the feud between the Bundy family and the BLM

**Twelve unsure people**

The verdict form in the first Bunkerville standoff trial suggested confusion and indecision among jurors on the two conspiracy charges.

Jurors marked "not guilty" on the first two conspiracy counts, and then subsequently crossed out the check marks before submitting the verdict form to the court. U.S. District Judge Gloria Navarro declared a mistrial in the case on Monday, after jurors deadlocked on 50 of the 60 counts against the six men on trial.

Jurors could not reach a unanimous verdict against any of the men on the first two conspiracy charges, but they convicted Arizona resident Gregory Burleson of eight other

counts and Idaho resident Todd Engel of two. The jury hung on all 10 counts against the four other defendants.

The conspiracy charges represented the central dispute of the trial. During deliberations, jurors asked the judge multiple times to clarify her legal instructions on those two charges.

**Conspiracy calls**

**First Oregon trial:** All defendants acquitted of conspiracy.

**Second Oregon trial:** Split verdict; two of four defendants convicted of conspiracy.

**First Bunkerville trial:** Mistrial; jury hung on conspiracy charges against all defendants.

EXHIBIT B

 **Gmail**

Oliver Peer <oliver.peerfw@gmail.com>

---

## Fwd: Invitation to the Attorney General Jefferson B. Sessions, III

**Larry Klayman** <leklayman@gmail.com>                    Thu, Aug 17, 2017 at 11:38 AM
To: Oliver Peer <oliver.peerfw@gmail.com>

---------- Forwarded message ----------
From: "Schedule, AG84 (OAG)" <AG.SCHEDULE84@usdoj.gov>
Date: Jul 11, 2017 4:04 PM
Subject: Invitation to the Attorney General Jefferson B. Sessions, III
To: "leklayman@gmail.com" <leklayman@gmail.com>
Cc: "Bryant, Errical (OAG)" <Errical.Bryant@usdoj.gov>, "Schedule, AG84 (OAG)" <AG.SCHEDULE84@usdoj.gov>


Dear Mr. Klayman:


Thank you for inviting the Attorney General to meet with you.  Unfortunately, due to the Attorney General's schedule he has to decline your gracious offer.   Thank you for your understanding.



Office of the Attorney General | U.S. Department of Justice

950 Pennsylvania Avenue, NW | Washington, DC 20530



*********************************************************************

**From:** Larry Klayman [mailto:leklayman@gmail.com]
**Sent:** Tuesday, July 11, 2017 3:48 PM
**To:** Schedule, AG84 (OAG) <AG84Schedule@jmd.usdoj.gov>
**Subject:** Re: Please forward to AG SESSIONS


Please ask the AG If I can get 15 mins with him at the USA's office in Las Vegas. I am here meeting with my client Cliven Bundy.

Thanks

Larry Klayman


On Jul 2, 2017 6:14 PM, "Larry Klayman" <leklayman@gmail.com> wrote:

> https://www.justice.gov/usao/district/nv
>
> JEFF:
>
> ADVISING ME TO CONSULT WITH ACTING USA MAHRE IS A POINTLESS EXERCISE. HE IS AN OBAMA
> LOYALIST AND UNETHICAL. LAST WEDNESDAY I WAS TOLD BY YOUR COUNSEL THAY MY REQUEST FOR A

REVIEW OF THE BUNDY CASE WAS FORWARDED TO HIM.

WHY WOULD HE DO THIS? AGAIN WHAT IS THE POINT? I SIMPLY REQUESTED AN UNBIASED REVIEW NOT A RUBBER STAMP ON MAHRE'S HISTORY OF PROSECUTORIAL MISCONDUCT IN THE BUNDY PROSECUTION.

PLEASE ADVISE THE MOTIVATION FOR THIS?

SINCERELY AND THANK YOU,

LARRY KLAYMAN



Oliver Peer <oliver.peerfw@gmail.com>

---

## Fwd: Urge Attorney General Sessions To Review Bundy Prosecution

**Larry Klayman** <leklayman@gmail.com>                          Thu, Aug 17, 2017 at 11:41 AM
To: Oliver Peer <oliver.peerfw@gmail.com>

---------- Forwarded message ----------
From: "Larry Klayman" <leklayman@gmail.com>
Date: Jul 17, 2017 7:18 PM
Subject: Fwd: Urge Attorney General Sessions To Review Bundy Prosecution
To: "Schedule, AG84 (OAG)" <ag.schedule84@usdoj.gov>
Cc:

ERICAL:

PLEASE FORWARD THIS ASAP TO AG SESSIONS, AS TIME IS OF THE ESSENCE. IF HE WILL NOT MEET WITH
ME, THEN PERHAPS AT LEAST HE CAN WATCH THIS VIDEO.

THANK YOU,

LARRY
---------- Forwarded message ----------
From: **Klayman Law Group** <info@list3.freedomwatchusa.org>
Date: Mon, Jul 17, 2017 at 4:02 PM
Subject: Urge Attorney General Sessions To Review Bundy Prosecution
To: leklayman@gmail.com



# Urge Attorney General Sessions To Review Bundy Prosecution

July 17, 2017



**Click to Watch Video**

**Unsubscribe / Manage Email Preferences**

Klayman Law Group, P.A.
2020 Pennsylvania Ave, NW
Suite 800
Washington, DC 20006

 **Gmail**

**Oliver Peer <oliver.peerfw@gmail.com>**

---

## Fwd: Meeting Re Bundy

**Larry Klayman** <leklayman@gmail.com>                    Thu, Aug 17, 2017 at 11:39 AM
To: Oliver Peer <oliver.peerfw@gmail.com>

---------- Forwarded message ----------
From: "Larry Klayman" <leklayman@gmail.com>
Date: Jun 21, 2017 2:45 PM
Subject: Meeting Re Bundy
To: "Schedule, AG84 (OAG)" <ag.schedule84@usdoj.gov>
Cc:

Dear Erical:

Ive been trying to get through but the DOJ operator today is having an issue.

Can you please confirm a meeting with the AG and the staff reviewing the Bundy prosecution for early afternoon next Wednesday, June 28.

Time is running short and we need to meet at this time is possible This is very important as I spoke with the AG about it as you know.

Thanks for scheduling this after many months, as I am aware you have had a lot to deal with and am very sympathetic. But time is now short.

All the Best,

LARRY KLAYMAN, ESQ.
FREEDOM WATCH, INC.

310 595 0800

EXHIBIT C

U.S. Attorney General Jeff Sessions made a brief reference to the ongoing Bunkerville standoff trial Wednesday when he offered praise to the lead prosecutor, but he declined to take a side in the case that his Justice Department is prosecuting.

"I've got to tell you, it's impressive when you have a tough case, a controversial case, and you've got the top guy leading the battle, going to court, standing up and defending the office and the principles of the law," Sessions said of Nevada Acting U.S. Attorney Steven Myhre.

"I'm not taking sides or commenting on the case," Sessions said. "Just want to say that leadership requires, a lot of times, our people to step up and be accountable."

Sessions' comments were significant because supporters of rancher Cliven Bundy previously have signaled that they see a potential ally in the Trump administration.

Bundy is a leader of a small-government movement that espouses individual rights principles. Supporters of the movement tend to represent a small faction of conservative libertarianism, one that is viewed as extremist in mainstream political circles, but their views on the role of government align more closely with current administration policies than was the case when former President Barack Obama was in office.

That was evident in the throngs of Bundy supporters who rallied outside the U.S. attorney's office when Sessions gave his remarks Wednesday. (https://www.reviewjournal.com/local/local-las-vegas/ag-sessions-discusses-immigration-law-enforcement-in-las-vegas/) The supporters held signs supporting both Bundy and President Donald Trump. They called for the release of more than a dozen defendants who were arrested in the case.

Meanwhile, Roger Stone — the longtime on-and-off adviser to Trump — is scheduled to speak at a pro-Bundy rally in Las Vegas this weekend to raise money for the rancher's legal defense fund.

"The Bundy case hasn't gotten the proper coverage it deserves and what's more outrageous is the Govt's conduct towards 17 men arrested at a Rally in support of the Bundy family," Stone said in an emailed statement.

The event is scheduled for Saturday evening at the Rainbow Gardens of Las Vegas, is described in a promotional YouTube video as "a benefit for the Patriots who stood up for the natural rights of all Americans currently serving time as political prisoners under the corruption of federal bureaucracies."

Contact Jenny Wilson at jenwilson@reviewjournal.com or 702-384-8710. Follow @jennydwilson (http://www.twitter.com/jennydwilson) on Twitter.

**TRUMP IS ON A ROLL**

**WILL HE ALSO REPEAL CONGRESS' MORTGAGE BAILOUT FOR HOMEOWNERS WHO HAVEN'T MISSED A PAYMENT IN 6 MONTHS?**

Bundy-BLM Ba

Read complete

# TOP NEWS

BUNDY-BLM (HTTPS://WWW.REVIEWJOURNAL.COM/./NEWS/BUNDY-BLM/) »



**Jury in Bunkerville standoff case to resume deliberations Monday (https://www.reviewjournal.com/news/bundy-blm/jury-in-bunkerville-standoff-case-to-resume-deliberations-monday/)**

By David Ferrara / RJ

BUNDY-BLM (HTTPS://WWW.REVIEWJOURNAL.COM/./NEWS/BUNDY-BLM/) »

# EXHIBIT D

Editorials (https://www.reviewjournal.com/../opinion/editorials/) ›

## EDITORIAL: Judge bans defense arguments in Bundy retrial



Las Vegas Review-Journal
July 13, 2017 - 9:00 pm

f

(https://www.facebook.com/sharer/sharer.php?
post:
et?
31&t
AL:
dy
the
ost:
31)

Government prosecutors have a friend in U.S. District Judge Gloria Navarro.

The judge is presiding over the retrial of four defendants charged with various crimes stemming from their participation in the 2014 Bunkerville standoff near Cliven Bundy's ranch. The first trial ended in April with the jury deadlocked on all counts involving the four men.

On Monday, the judge eviscerated the defense's legal strategy, putting off limits a whole host of issues that might make it more difficult for the government to win convictions. The defendants will be forbidden from arguing that they were exercising their constitutional rights to peaceably assemble and bear arms. They may not highlight the actions of BLM agents in the days leading up to the incident or mention federal gaffes such as the ill-advised "First Amendment" zone created for protesters.

And if imposing these restrictions on the defense wasn't enough, Judge Navarro ruled that prosecutors may introduce testimony about the four accused men and their associations with so-called militia groups.

Judge Navarro made a similar ruling before the first trial. She is going to extraordinary lengths to address prosecution fears of "jury nullification," in which jurors refuse to convict based on a belief that the law or potential punishment is unjust. The practice dates to 1734, when a jury ignored statutes and acquitted publisher John Peter Zenger on charges of criticizing New York's new colonial governor, accepting arguments from Mr. Zenger's attorney, Alexander Hamilton, that the newspaper had simply published the truth.

Federal prosecutors have encountered unexpected difficulty — both here and in Oregon — in securing convictions against those protesting federal control of Western public lands. But the issue here isn't whether one believes the Bundy defendants are courageous freedom fighters or zealous lunatics. Rather it's whether a judge should usurp the rights of the defendants to have a jury of their peers consider their arguments alongside the law, evidence and other testimony.

Judge Navarro's sweeping order reflects a deep mistrust of the American jury system.

# TOP NEWS



EDITORIALS (HTTPS://WWW.REVIEWJOURNAL.COM/../OPINION/EDITORIALS/) »

EDITO
good-

# EXHIBIT E



HELP SUPPORT ALTERNATIVE MEDIA BY VISITING OUR ADVERTISERS



SELKIRK MOUNTAIN REAL ESTATE
Donna Capurso, Owner/Broker, ABR, CMRS, CRS, GRI, RRS
Ofc: (208) 267-7900    Cell: (208) 290-5701
Donna@SelkirkMountainRealEstate.com

HOME    COMMUNITY CALENDAR    OUR STORE    THE FAMILY REDOUBT    LINKS

ADVERTISE    CONTACT US

NEWS TICKER ❯    [ July 12, 2017 ]    Senate GOP Decides to Keep            SEARCH …

DONATE HERE

Home  ❯  BLM  ❯  Did the Judge Select the Jury in Bunkerville Retrial?

UPCOMING EVENTS



# Did the Judge Select the Jury in Bunkerville Retrial?

SHE RE-SEATED THE JURORS DESPITE THE PEREMPTORY CHALLENGES FROM THE DEFENSE.

⊙ July 13, 2017    ⌑ BLM, Constitution, DOJ, Featured, Nevada    💬 11

**Senator Risch Scotchman Peak Meeting**
July 18 @ 4:00 PM - 7:00 PM

**2017 IDGOP Summer Meeting**
July 21 @ 12:00 PM - July 22 @ 8:00 PM

**Timber Days 2017**
July 28 @ 7:00 PM - July 29 @ 7:00 PM

**View All Events**



  

North Idaho Water Rights Draws Large Crowd

Jeanette Finicum at Red Pill Expo



  

Zinke Says No
Changes to
Craters, Hanford
Monuments

Y2Y – Another
UN Land Grab –
Are You Ready?

JUST PART OF
PRESIDENT
TRUMP'S
LASTING LEGACY

Judge Bans
Defense
Arguments in
Bundy Retrial





# Did the Judge Select the Jury in Bunkerville Retrial?

by Shari Dovale

Eric Parker, Ricky Lovelien, Steven Stewart and Scott Drexler are back in a Vegas courtroom for a retrial of charges related to the 2014 Bunkerville Standoff.

Judge Gloria Navarro declared a mistrial in the case in April when the jury could not reach a consensus for the majority of charges against the defendants.

Two of the defendants, Gregory Burlson and Todd Engel, were found guilty on some of the charges and will not be retried on the remaining charges. They are scheduled to be sentenced later this month.







Jury Selection in the new trial began this week with Judge Navarro immediately taking over the process.

From eyewitness accounts in the courtroom, we were told of the seemingly "rigged" system that the Judge used to select the jury she wanted.



Under Rule 24, The government has 6 peremptory challenges and the defendant or defendants jointly have 10 peremptory challenges when the defendant is charged with a crime punishable by imprisonment of more than one year. The court may allow additional peremptory challenges to multiple defendants, and may allow the defendants to exercise those challenges separately or jointly.

WELCOMED DISCUSSION



**PETER W HUNT ON** Judge Navarro Says Defendants Have Only 3 Rights

In this case, with four defendants, the defense began with 10 strikes and the prosecution with 6. *Each party* was given one additional strike. Specifically, each defendant was given an additional strike and the prosecution should have been given an additional strike as well.





**RACHEL ON** Judge Navarro Says Defendants Have Only 3 Rights



**DENNIS ON** Judge Navarro Says Defendants Have Only 3 Rights



**JOSIE ON** Judge Bans Defense Arguments in Bundy Retrial



**TONY PASKITTI ON** Navarro: Jury Cannot Use Constitution

Prior to jury selection beginning, the prosecution filed several motions. One of these motions was to have the prosecution receive an equal number of additional strikes as the defense. This is not considered fair to the defense of multiple defendants, and is not normally allowed.

Keep in mind that the "system" is supposed to be set up with the presumption of innocence for the defendants, and the burden placed upon the prosecution.

Judge Navarro, however, agreed with that motion and granted the prosecution 4 additional strikes. She also ruled in favor of the prosecution on *every single pre-trial motion!*

Her ruling brought the total challenges to 14 for the defense and 10 for the prosecution.

During the course of jury selection, after all strikes for "cause" were completed, the process began to strike members from the jury pool by both sides. This process does not need explanation, as each side has their own criteria to decide who they want removed. The exception to this rule is called a "Batson Challenge".

> *Batson v. Kentucky, 476 U.S. 79 (1986), was a case in which the United States Supreme Court ruled that a prosecutor's use of peremptory challenge in a criminal case—the dismissal of jurors without stating a valid cause for doing so—may not be used to exclude jurors based solely on their race. The Court ruled that this practice violated the Equal Protection Clause of the Fourteenth Amendment. The case gave rise to the term Batson challenge, an objection to a peremptory challenge based on the standard established by the Supreme Court's decision in this case. (Wikipedia)*

This is important for several reasons. The Batson case itself was a civil rights case. The Supreme

July 2017

June 2017

May 2017

April 2017

March 2017

February 2017

January 2017

December 2016

November 2016

October 2016

September 2016

August 2016

July 2016

June 2016

May 2016

April 2016

March 2016

February 2016

January 2016



Court was ruling on a Prosecutor's use of peremptory challenges to exclude people strictly because of their race. This was, again, to keep the trial fair for the defendants.

Therefore, when a Batson challenge is made, the prosecutor needs to explain why his striking a juror was not based on their race. Most prosecutors can easily handle these questions, but it is important for them to put it on the record.

In today's hearing, the challenges were such that the defense struck 7 men and 7 women. The prosecutions strikes were for 8 women and 2 men.

However, it was the prosecution that made an objection based on a Batson challenge and claimed that the defense was biased against men. They claimed that there were men removed from the jury pool wrongly. They accused the defense of gender-bias.

The defense should not have had to explain their criteria to the court. It is the defense, after all, and they do not have the burden of proof. However, Judge Navarro made the defense cite their reasoning for every challenge they made against the jurors, with one juror receiving what seemed to be special attention.

They explained that they felt an underlying deception from the prospective juror. Their 'gut' told them the person was not being honest. They did not want the person on the jury.

"There is a level of deception that has taken place here," was the response from the defense team.

The judge made comments to the effect that the juror's answers were what she would expect the defense to want.

They judge did not find any reason acceptable that the defense should have had 5 particular men removed, and *she put them back on the jury.* She re-



seated these jurors despite the challenges from the defense. She effectively told the defense that they cannot have a say in who is kept or removed from the jury.

Not only did she put them back on the jury, but she t*ook the 5 challenges completely away from the defense*. They were now down to 9 when the prosecution still had 10. So the advantage *again* went straight to the government.

The defense, to their credit, then objected to the prosecution for the same Batson challenge, citing the fact that the prosecution used 80% of their challenges against women. Judge Navarro refused to rule on that objection and did not even open an inquiry on it. She completely brushed it under the rug and moved on.

This judge took complete control of selecting the jury by not allowing the defense their challenges. She had particular people she wanted on the jury (specifically juror number 296?) and she was not about to allow the defense to remove him. *Could this be considered jury tampering?*

Navarro has already shown her disregard for the US Constitution. She has already made it clear that she has an agenda with these defendants. She is clearly not going to allow another mistrial in this case and will do whatever it takes to get the verdict she desires. These citizens, that have been held for 18 months without bail, do not stand a chance.

This is how the communists in the former Soviet Union used to run their courts. Blatant rigging of the system. We have now, almost unbelievably, seen it in our own country. The country that is the supposed to be where Freedom Rings.

This has actually happened in the United States of America, in the Year of Our Lord 2017.

God help us!



EXHIBIT F

# Bundy supporters decry court proceedings; judge denies call for mistrial

Robert Anglen and Lucas M. Thomas, USA TODAY Network    Published 2:58 p.m. MT Aug. 14, 2017 | **Updated 9:42 p.m. MT Aug. 14, 2017**



*(Photo: Lucas M. Thomas/The Spectrum)*

LAS VEGAS —  The Bundy Ranch standoff trial opened Monday morning with a call for a mistrial as supporters of the defendants jammed into a federal courtroom.

It ended hours later when attorneys for the four men charged in the 2014 clash among federal agents, militia members and cattle ranchers rested their case after calling just one defendant to the stand.

Closing arguments are scheduled to begin Tuesday morning.

O. Scott Drexler became the singular voice for the defendants by giving the only defense testimony jurors are allowed to consider since the trial opened last month.

Drexler's words came as an anticlimax to a series of dramatic events that started Thursday when U.S. District Court Judge Gloria Navarro abruptly ended court (/story/news/local/arizona-investigations/2017/08/10/bundy-retrial-drama-judge-scolds-defendant-orders-him-off-stand/558082001/) by ordering defendant Eric Parker off the stand and striking his testimony from the record as jurors watched.



**Supporters of defendants in the Bundy Ranch standoff trial stand outside U.S. District Court in Las Vegas on Aug. 14, 2017.** *(Photo: Lucas M. Thomas/The Spectrum)*

Defense lawyers responded by calling for a mistrial and accusing federal prosecutors of wrongly depriving Parker of his right to testify in a way that irreparably damaged the case.

"It cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense," Parker's lawyer, Jess Marchese, wrote in his request for a mistrial. "The right to testify on one's own behalf in a criminal trial is one of the rights that are essential to due process of law."

Marchese said the prosecution acted in bad faith. He said the government launched objections about testimony the judge had allowed.

"At no point did Mr. Parker violate the Court order by eliciting testimony other than what he saw," Marchese said in his motion. "Specifically, he never elicited facts relating to his disallowed self-defense argument."

## Prosecutors call for sanctions

Federal prosecutors shot back with a motion calling for sanctions against three of the defendants and their lawyers, accusing them of repeatedly violating court orders by introducing prohibited information and attempting to derail the trial through jury nullification.

"From the beginning of trial and throughout, counsel for (the three defendants) have repeatedly violated the Court's Order and attempted to place precluded evidence before the jury," Acting Nevada U.S. Attorney Steven Myhre wrote in his motion. "The possibility of Parker's forced removal from the stand was a specifically considered, orchestrated, and accepted strategy — perhaps even a preferred one."

Supporters for the defendants, who came from hundreds of miles away, rallied at the courthouse to protest what they called a miscarriage of justice and an unfair trial.

"You have to be able to put on a defense, and they're allowing no defense," said San Diego resident Terry Linnell, who said he was at the 2014 Bundy standoff. "So that's why we have more people here and why we filled the courtroom today."

Parker was attempting to tell jurors what he saw during the standoff over a barrage of objections from prosecutors when Navarro put an end to his testimony. Parker returned to the defense table and started crying while Navarro dismissed the jurors.

**RELATED:** Phoenix man gets 68 years in Bundy Ranch standoff (http://preview.azcentral.com/story/news/local/arizona-investigations/2017/07/26/bundy-ranch-standoff-burleson-gets-68-year/513779001/)

Parker, Steven Stewart and Drexler, all of Idaho, and Richard Lovelien of Oklahoma are accused of conspiracy, extortion, assault and obstruction for helping rancher Cliven Bundy fend off a government roundup of his cattle in what became known as the Battle of Bunkerville.

Lovelien and his attorney, Shawn Perez of Las Vegas, were excluded from the proposed sanctions.

## Judge: No mistrial, no sanctions

Navarro blamed defense attorneys for the problems and quickly dismissed the motion for the mistrial.

But she stopped short of imposing sanctions requested by prosecutors, including requiring remaining defense witnesses to testify on the record outside the presence of the jury.

She also rejected the prosecution's request to preview defense lawyers' closing arguments before they are given to the jury.

Prosecutors also are asking the judge to instruct the jury before it deliberates to disregard anything Parker said and "proceed as though Mr. Parker never testified."

Drexler's attorney, Todd Leventhal, said the court orders were confusing and inconsistent.



"It's sort of a moving target at this point for me," he said, adding that questions about what happened are "difficult to answer within the court's parameters."

Navarro said defense attorneys were being disingenuous by claiming confusion.

"It's not vague at all," Navarro said. "It's like when you tell a kid they can't have candy before dinner and they keep trying."

If Navarro had granted the mistrial, it would have been the second one in the case. A jury in April deadlocked on charges against the four men (/story/news/local/arizona-investigations/2017/04/24/cliven-bundy-trial-verdict-ranch-standoff/100605480/). It convicted two other defendants on multiple counts. But the jury could not agree on conspiracy charges — a key component of the government's case — against any of the six.

## High-profile land case

The Bundy Ranch standoff is one of the most high-profile land-use cases in modern Western history, pitting cattle ranchers, anti-government protesters and militia members against the Bureau of Land Management.

For decades, the BLM repeatedly ordered Bundy to remove his cattle from federal lands and in 2014 obtained a court order to seize his cattle as payment for more than $1 million in unpaid grazing fees.

The Bundy family issued a social-media battle cry. Hundreds of supporters from every state in the union, including members of several militia groups, converged on his ranch about 70 miles north of Las Vegas.

## Judge puts tight limits on defense

Navarro's rulings have severely limited defense arguments to avoid what she has described as jury nullification. Four defense witnesses were permitted to testify via Skype last week, but the jury was not allowed to hear what they said.

Navarro ruled the witnesses, who were at the standoff, failed to establish grounds for self-defense claims sought by defendants.

Navarro has barred defendants from discussing why they traveled thousands of miles to join protesters at the Bundy Ranch. She will not allow them to testify about perceived abuses by federal authorities during the cattle roundup that might have motivated them to participate.

Navarro also has restricted defendants from raising constitutional arguments, or mounting any defense based on their First Amendment rights to free speech and their Second Amendment rights to bear arms. In her rulings, Navarro has said those are not applicable arguments in the case.

Federal officials, however, do not face the same restrictions. To show defendants were part of a conspiracy, they have referenced events that happened months, or years, after the standoff.

An image of Parker has come to epitomize the 2014 protest. He is pictured lying prone on an overpass and sighting a long rifle at BLM agents in the wash below. The image galvanized the public and brought international awareness to the feud over public lands and the potential consequences of such a dispute.

But jurors in the first trial couldn't agree on whether Parker brandished a weapon, assaulted officers or even posed a threat to them.

## Drexler testifies about intentions

Drexler told the packed courtroom Monday that even though he brought weapons to the standoff, he had no intention of threatening or assaulting law-enforcement officers.

"My intent was to disappear and not be a threat to any person in the wash," he said.

Drexler admitted bringing an AR-15, a .45 handgun and 250 rounds of ammunition to Bunkerville. On cross-examination, prosecutors sought to show he intended to intimidate authorities and force them to "act more civil."

"With one person having a weapon, they order you around," Drexler said of law enforcement. "When two people are armed, it brings a conversation. It brings civility."

Prosecuters also questioned if Drexler went to the ranch to help Bundy secure the release of his cattle from federal agents, a key element in the government's conspiracy case.

Throughout both trials, defendants denied working in concert with the Bundys or even each other. They said they came to the ranch for different reasons and their presence had nothing to do with preventing the roundup.

Drexler said multiple times on Monday that he feared for his life and believed BLM agents "were going to kill me." Prosecutors objected, prompting the judge to remind jurors the defense was prohibited from raising such arguments.

## 'It was the final straw'

Navarro's restrictions angered Bundy supporters, who say her rulings also could affect the rules that apply in two upcoming trials in the case.

Three trials are scheduled for 17 defendants who are being prosecuted based on their levels of culpability. Although defendants in the first trial are considered the least culpable, all face the same charges and could spend the rest of their lives in prison.

The second trial will include Cliven Bundy and his sons, Ammon and Ryan Bundy, who are considered ringleaders.

Protester Linnell said the case playing out in court doesn't reflect the reality of what happened in the hours before the standoff, when federal land agents cracked down violently on members of the Bundy family.

"The BLM was pointing weapons on the Bundy family, … The militia wasn't even there yet," he said. "I never saw anybody point a weapon. I know there's the famous picture, but you can see his finger wasn't on his trigger."

B.J. Soper of Redmond, Oregon, helped organize Monday's demonstration in front of the courthouse. "We saw what happened Thursday night in the courtroom. It was the final straw. And I said, 'We got to go. We got to go to Las Vegas and we got to find out what's going on and we got to let the American people know what's going on.' "

Soper said the decision to strike Parker's testimony was proof the defendants are not getting a fair trial.

"Even in the darkest of times we're allowed to defend for ourselves," he said. "Even if they don't allow a witness to testify on our behalf, we've always had the right to be able to testify for ourselves. And when that right is restricted what else do we have? We have a one-sided story here. We have a witch hunt."

Bunkerville resident Shem Teerlink said the judge and the prosecution are trying to railroad the defendants by not allowing them to tell the jury about abuses by federal agents, including how snipers were positioned around protesters during the standoff.

"Basically they're just trying to railroad these men and not let them have a true defense," he said. "So they just make all these rules and say, 'You can't say this, you can't say that.' "

## Testimony prohibited by the judge

A federal judge has restricted testimony from four defendants facing retrial on conspiracy and weapons charges for their roles in the 2014 Bundy Ranch standoff. They cannot tell the jury:

- What motivated them to travel thousands of miles to join protesters at the Bundy Ranch in 2014.
- Videos and internet reports about clashes between federal agents and members of the Bundy family in the days prior to the standoff, including  accounts that federal agents killed cattle, threatened Bundy family members with arrest, threw a pregnant woman to the ground and shocked Ammon Bundy with a stun gun.
- Law-enforcement encounters with civilians or third-party accounts about the level of force used by law-enforcement officers during the roundup of cattle.

- References to public statements by Gov. Brian Sandoval and other elected officials who criticized the the Bureau of Land Management in the days leading up to the standoff.
- References to First Amendment zones, or areas established by federal agents to limit movements of protesters during the roundup of Cliven Bundy's cattle.
- References to Bundy's grazing, water, or legacy rights on the public lands or arguments about his decades long fight with federal officials.
- Arguments invoking First and Second Amendment rights.
- References to the length of prison time they face if convicted.

**READ MORE:**

As jury weighs Bundy Ranch standoff, Carol Bundy awaits her husband's fate (/story/news/local/arizona-investigations/2017/04/18/jury-weighs-bundy-ranch-standoff-carol-bundy-awaits-her-husbands-fate/100572564/)

What made Ammon Bundy go from AZ businessman to leader of the Oregon standoff? (/story/news/local/arizona/2016/01/09/what-made-ammon-bundy-go-arizona-lead-oregon-standoff-federal-government/78420744/)

Read or Share this story: http://azc.cc/2wYN02m

# EXHIBIT G

Bundy-BLM (https://www.reviewjournal.com/./news/bundy-blm/) ››

## Defense attorneys withhold closing arguments in Bunkerville retrial



Protesters gather in a prayer circle outside the federal courthouse during the Bunkerville standoff retrial in Las Vegas on Tuesday, Aug. 15, 2017. Richard Brian Las Vegas Review-Journal.com @Vegas88s

By David Ferrara
August 15, 2017 -

f

in the following post:
https://www.reviewjournal.com/post/1153025)

Updated August 15, 2017 - 8:48 pm

Defense attorneys sat silently Tuesday, rather than give closing arguments for the four men facing a retrial in the Bundy Ranch standoff.

Hamstrung throughout the trial by a judge's decision to limit the witnesses they could call, the questions they could ask and the testimony their clients could give, the lawyers made the final decision, a statement of sorts, after discussing the option with the defendants — Eric Parker, Scott Drexler, Steven Stewart and Ricky Lovelien — during a lunch break.

"It was a strategic decision," said lawyer Jess Marchese, who represents Parker. "We thought we gained more by not giving a closing argument than the government giving a rebuttal."

Assistant U.S. Attorney Nadia Ahmed spent more than two hours in the late morning and early afternoon laying out the case against each of the four men, charged with driving from other states to Bunkerville in April 2014 to support rancher Cliven Bundy, who prosecutors allege conspired to thwart the federal government's roundup of roughly 1,000 cows from public land.

Earlier this year, another jury declared that they were deadlocked (https://www.reviewjournal.com/news/bundy-blm/judge-declares-mistrial-in-bundy-ranch-standoff-case/) on all counts against them.

On Tuesday, the prosecutor pointed to social media posts in which the men discussed the activities in the rural southeastern Nevada town, about 80 miles northeast of Las Vegas. She played video of Bundy speaking to a crowd outside his ranch, encouraging his followers to "do what you need to do" to retrieve his cattle from the Bureau of Land Management.

At one point, Ahmed flashed a Facebook post from Lovelien written in all capital letters: "All oathkeepers and militia in proximity need to move into defcon 1 mode."

The prosecutor repeatedly showed photos of Stewart and Parker, prone on Interstate 15 with long guns pointed toward federal agents.

"We pushed forward and they had to back off," Stewart wrote on Facebook.

Parker was captured on video being asked whether the standoff could have turned violent. "Absolutely," he replied.

Ahmed said the defendants' "words, their attire, their positions and their decisions" proved their guilt. "The intention of these co-defendants is clear. They intended to threaten officers. Officers feared for their safety."

A day earlier, attorney Todd Leventhal called his client, Drexler, to testify and say that he did not intend to threaten anyone in Bunkerville. But Drexler admitted to pointing his gun at federal agents.

"We were going to get drowned out anyway," Leventhal said of the decision not to offer a closing argument. "And there wasn't much more we could add."

U.S. District Judge Gloria Navarro barred the defense from referencing constitutional rights to freely assemble and to bear arms. She also prohibited mention of alleged misconduct or excessive force by law enforcement.

Stewart's lawyer, Rich Tanasi, agreed with Leventhal.

"It was the best decision available to us at the time," he said.

The lack of a final statement from the defense left acting U.S. Attorney Steven Myhre without a rebuttal, a common feature of jury trials. Prosecutors have the right to argue last because they are charged with the burden of proof.

Shawn Perez, who represents Lovelien, added defense closing statements could have backfired.

"We were going to get hammered on rebuttal," he said. "We would have been slammed one way or another."

As the six men and six women on the jury began to deliberate, about 30 supporters of the defendants gathered in a circle on the seventh floor, just down the hallway from the entrance to Navarro's courtroom.

The group held hands, knelt and prayed for "divine protection" for the "political prisoners" who have been locked up through both trials.

Contact David F

# EXHIBIT B

# KLAYMAN LAW GROUP

2020 Pennsylvania Ave NW, #800, Washington, DC, 20006 – (310) 595-0800 – leklayman@gmail.com

VIA FEDERAL EXPRESS

**EXPEDITED PROCESSING AND
TREATMENT REQUESTED**

August 23, 2017

Hon. Robin C. Ashton
Chief
Office of Professional Responsibility
950 Pennsylvania Ave NW #3266
Washington, DC, 20530

Hon. Michael E. Horowitz
Inspector General
U.S. Department of Justice
950 Pennsylvania Ave, NW, #4706
Washington, DC, 20530

**RE: SUPPLEMENT TO COMPLAINT AGAINST ATTORNEY GENERAL JEFF
SESSIONS AND STAFF AND ACTING U.S. ATTORNEY FOR THE DISTRICT OF
NEVADA STEVEN MYHRE AND STAFF AND REQUEST FOR EXPEDITED
INVESTIGATION INTO GROSS PROSECUTORIAL MISCONDUCT OF
PROSECUTING ATTORNEYS FURTHERED BY THE HONORABLE GLORIA
NAVARRO IN THE CRIMINAL TRIAL OF CLIVEN BUNDY AND HIS CO-
DEFENDANTS**

Mr. Larry Klayman ("Mr. Klayman") submits the following supplement to the Complaint

and Request for Investigation referenced above and submitted on August 21, 2017. This

supplement is necessary to update the Office of Professional Responsibility ("OPR") and the

Inspector General ("IG") on the prosecution of Bundy's co-defendants and to further

demonstrate why it is incumbent upon the OPR and IG to act immediately.

On August 22, 2017, the federal jury in the retrial of Bundy's co-defendants found **none**

of them guilty on **any charges**. Exhibit A. The federal jury returned not guilty verdicts for all

charges against two of the four co-defendants - Richard Lovelien and Steven Stewart - and also

acquitted the remaining two co-defendants - Eric Parker and O. Scott Drexler - on the most serious charges of conspiracy and extortion. <u>Exhibit A</u>. The jury deadlocked on Parker and Drexler's weapons charges, which are entirely separate and apart from any charges against Bundy.

The federal jury's verdict is even more incredible given the gross prosecutorial misconduct by the prosecuting Department of Justice attorneys that was furthered, if not "rubber stamped" by the Hon. Gloria Navarro ("Judge Navarro"), as set forth in the original Complaint and Request for Investigation. As just a few egregious examples, notwithstanding their unconstitutional opposition to the undersigned counsel's *pro hac vice* application, violating Bundy' Sixth Amendment right to counsel of choice, Prosecuting attorneys advocated for and were allowed to get away with (1) intentionally withholding a report detailing how the BLM supervisory agent in charge of the raid on the Bundy ranch, Dan P. Love ("SSA Love"), repeatedly abused his position of authority to illegally extort and gain benefits and criminally obstruct justice by threatening those who might speak out and testify against him; (2) improperly attempting to try Bundy *in absentia* at the ongoing trial of Bundy's co-defendants by falsely painting Bundy as the criminal mastermind behind the Standoff in order to inevitably tar Bundy's reputation and taint the jury that is eventually empaneled in Bundy's trial; and (3) intentionally and glaringly omitting Sgt. Tom Jenkins ("Jenkins") from its original witness list, yet still calling Jenkins as a witness, with defense counsel allowed only one day for prepare for cross examination. Furthermore, Judge Navarro, "rubber stamping" this continuing prosecutorial misconduct, severely crippled the defense with a series of highly prejudicial rulings at the request of the prosecuting attorneys, by: (1) "rubber stamping" the prosecution's argument forbidding defendants from arguing that they were exercising their constitutional rights to

peaceably assemble and bear arms; (2) "rubber stamping" the prosecution's argument forbidding defendants from highlighting the actions of BLM agents in the days leading up to the incident or mention federal gaffes such as the ill-advised "First Amendment" zone created for protesters; (3) interfering with, at the prosecuting attorney's behest, the defendants' right to use preemptive challenges on the inclusion of certain jurors, and (4) granting the prosecuting attorney's baseless objections and cutting off Defendant Eric Parker's testimony and ordering him off the witness stand for allegedly violating a court order on allowed testimony, despite the fact that he never violated any court order. The prosecutorial misconduct ratified by Judge Navarro was so obvious that defense counsel did not even present closing arguments, as they would have been futile and merely presented another opportunity for the prosecuting attorneys and Judge Navarro to engage in misconduct. Even more, the day before the federal jury entered its verdict, the jury foreman sent a note to Judge Navarro that a certain juror was refusing to vote because she was or had been married to a U.S. Marshall and had previously had a gun pointed at her, causing great trauma The foreman intimated that the juror had a conflict of interest and should be removed for cause, as she was holding up the deliberations. Thus, given the final verdict, it is evident that the conflicted juror was going to vote to convict, and her conflict resulted in the partial mistrial as to Parker and Drexler. However, despite this apparent conflict, the prosecution still did not move, in the interest of justice, to have the juror removed and replaced with an alternate, which they clearly would have done had the tables been turned. Predictably, Judge Navarro also did not remove the juror and substitute in an alternate juror, who could have voted with the other jurors to acquit on all counts. However, **despite all of this**, the federal jury **still** found none of Bundy's co-defendants guilty on any charges.[1]

---

[1] The undersigned has asked a number of judges if they would have removed the juror and

The federal jury's verdict clearly shows just how weak the prosecutions' case is against Bundy and his co-defendants. Indeed, despite being given every conceivable advantage – legal or not – they were still unable to return a single conviction during the retrial. The fact that all four co-defendants were unequivocally acquitted on conspiracy charges is of particular relevance to Bundy, as the prosecuting attorneys have falsely attempted to portray Bundy as the "mastermind" behind a conspiracy against the government. Indeed, if none of the alleged participants in the conspiracy are convicted, the only possible conclusion is that there is simply no evidence of a conspiracy. The federal jury's verdict shows that the prosecution of Bundy and his co-defendants is nothing more than a retaliatory political prosecution vindictively commenced under the prior administration with no sound basis in law or fact that must be reviewed by the Attorney General Hon. Jeff Sessions ("Mr. Session") immediately.

Given the federal jury's verdict, now more than ever, it is crucial that Mr. Sessions be compelled to conduct a full, neutral, and fair review of the prosecutions in this matter given that just today in Court, the prosecuting attorneys vehemently stated that they would try Parker and Drexler for a third time, in complete violation of their constitutional and other legal rights. Not only is this a grave injustice to Parker and Drexler, Bundy's trial will therefore be pushed back <u>again</u> and he will be deprived of his Speedy Trial rights even further. The prosecuting attorneys have absolutely no regard for the fact that Bundy has already been incarcerated for a year and a half and will continue to be deprived of his due process rights, as "rubber stamped' by Judge Navarro.

Despite the fact that the prosecuting attorneys had a "rubber stamp" on the bench in the form of Judge Navarro to ratify and collude in their gross misconduct, they were still unable to

---

substituted an alternative juror, and the response was always yes.

win a single conviction in the retrial of Bundy's co-defendants. It is therefore terrifying to even think of then lengths that the prosecuting attorneys and Judge Navarro will go to now to obtain the convictions against Bundy and his co-defendants that they so desperately seek, despite the fact that there is no sound basis in law or fact for them to continue this prosecution. Thus, it is absolutely imperative that Mr. Sessions and his office be compelled to conduct the requested neutral and fair investigation into the matter. As set forth in the Complaint, Mr. Sessions took an oath of office to administer to and mete out justice within the bounds of the ethics and the law as a member of the Department of Justice. Despite the fact that Mr. Sessions is on the defensive by being unfairly branded as a racist and improperly investigated in the Russia probe, he still unequivocally has the duty to fulfill his oath of office, and he must be compelled to do so in the interest of fundamental justice and fairness that the Department of Justice is sworn to protect.

Dated: August 23, 2017

Respectfully submitted,

Larry Klayman, Esq.
Klayman Law Group, P.A.
2020 Pennsylvania Avenue,
N.W.  Suite 800
Washington, D.C. 20006
(561) 558-5336
Email: *leklayman@gmail.com*

Cc with enclosures:

Hon. Jeff Sessions
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Ave, NW
Washington, DC, 20530

Hon. Steven W. Myhre
Acting U.S. Attorney for the District of Nevada
Nadia Ahmed
Assistant U.S. Attorney
Erin Creegan
Assistant U.S. Attorney
Nicholas Dickinson
Assistant U.S. Attorney
U.S. Attorney's Office for the District Nevada
501 Las Vegas Blvd. South #1100
Las Vegas, NV, 89101

Channing D. Phillips
Assistant U.S. Attorney for District of Columbia
Melanie D. Hendry
Assistant U.S. Attorney
U.S. Attorney's Office for the District of Columbia
555 Fourth Street, N.W.
Washington D.C. 20530

EXHIBIT A

# Bundy Ranch standoff trial ends with zero guilty verdicts

**Robert Anglen**, The Republic | azcentral.com   Published 4:42 p.m. MT Aug. 22, 2017 | **Updated 9:00 p.m. MT Aug. 22, 2017**



*(Photo: Lucas M. Thomas/The Spectrum)*

A federal jury in Las Vegas did not return any guilty verdicts Tuesday against four men accused of taking up arms against federal agents during the Bundy Ranch standoff in 2014.

Jurors dealt government prosecutors a stinging defeat in the case when, after four days of deliberations, they returned not-guilty verdicts on the most serious charges and deadlocked on a handful of others.

Richard Lovelien of Oklahoma and Steven Stewart of Idaho were acquitted on all counts and walked out of court Tuesday night free after spending more than a year in prison.

"Both Ricky and I were teary-eyed," Las Vegas defense lawyer Shawn Perez said of the verdict, "I was shaking ... I have gotten not-guilty verdicts before, but this was really special to me."

Two other defendants, Eric Parker and O. Scott Drexler, both of Idaho, were acquitted on the most serious charges of conspiracy and extortion, but jurors failed to reach unanimous verdicts on weapons and assault charges.

Both men could be allowed to go free after a detention hearing scheduled Wednesday morning. The court ordered both defendants to be released to a halfway house until Wednesday's hearing.

"(Parker) is getting released as we speak," Las Vegas defense lawyer Jess Marchese said Tuesday night. "He's ecstatic."

After the jury's decision, U.S. District Court Judge Gloria Navarro called for the hearing without any motions from the defense, Marchese said. "We didn't bring it up," he said.

Federal prosecutors had little to say about the verdicts.

"While we are disappointed with the verdicts, we thank the jurors for their service," Trisha Young, spokeswoman for the U.S. Attorney's Office in Las Vegas, said in a statement Tuesday. "At this time, the government has not announced its decision regarding the retrial of Eric Parker and O. Scott Drexler."

Congrats to the Bundys. They stood up to the thieves of the @BLMNational (https://twitter.com/BLMNational)@BLMOregon (https://twitter.com/BLMOregon) and were victorious.

#Bundytrial (https://twitter.com/hashtag/Bundytrial?src=hash)#bundyranch (https://twitter.com/hashtag/bundyranch?src=hash)https://t.co/lBo15a36Eg (https://t.co/lBo15a36Eg)
— MagaWarrior (@trumpinternet) August 23, 2017 (https://twitter.com/trumpinternet/status/900159342153834496)

https://t.co/LPlIH6alAY (https://t.co/LPlIH6alAY) "Deep State Utterly Broken: No guilty verdicts reached in Cliven Bundy Bunkerville ranch standoff! American People…
— ChristianPatriot (@SavetheUSNation) August 23, 2017 (https://twitter.com/SavetheUSNation/status/900163413476859904)

## Government loses 2nd case

This marks the second time a jury failed to convict the defendants on charges related to the standoff, which pitted armed ranchers and militia members against Bureau of Land Management agents in a dusty wash below Interstate 15 about 70 miles north of Las Vegas.

Social media exploded with posts on Twitter and Facebook from Bundy supporters, many of whom have maintained a sidewalk rally since the first trial of these defendants opened in February.

Jurors in the second trial notified Navarro on Tuesday they had reached an impasse on several counts. The defendants were called into court at 2 p.m. when the verdicts were announced.

The men were being retried on conspiracy, extortion, assault and obstruction charges for helping Nevada rancher Cliven Bundy fend off a government roundup of his cattle in what became known as the Battle of Bunkerville.

A jury in April deadlocked on charges against the four men. (/story/news/local/arizona-investigations/2017/04/24/cliven-bundy-trial-verdict-ranch-standoff/100605480/) It convicted two other defendants on multiple counts. But it could not agree on conspiracy charges — a key component of the government's case — against any of the six.

The government launched its second prosecution last month. The case climaxed Aug. 11 when Navarro abruptly ended court (/story/news/local/arizona-investigations/2017/08/10/bundy-retrial-drama-judge-scolds-defendant-orders-him-off-stand/558082001/) by ordering Parker off the stand and striking his testimony from the record as jurors watched.

The defendant was attempting to tell jurors what he saw during the standoff over a barrage of objections from prosecutors. Navarro ruled Parker violated court orders by discussing prohibited topics. Parker returned to the defense table and started crying while Navarro dismissed the jurors.

Marchese said jurors told him Tuesday the incident was a factor in their verdicts.

"That weighed heavily in their decision," Marchese said. "They wanted to hear him speak. It was very bothersome to them. They felt like they weren't getting the whole story."

Marchese said jurors were sympathetic to the defendants and their inability to mount a cogent defense in light of restrictions that prevented them from talking about why they participated in the standoff and what they were thinking while they were there.

"It wasn't one thing," Marchese said about what led to their verdicts. "They (jurors) said it didn't make sense."

The case went to the jury Tuesday after lawyers for all four defendants waived closing arguments as part of a protest about court proceedings (/story/news/local/arizona-investigations/2017/08/15/jurors-bundy-ranch-standoff-trial-begin-deliberations/570943001/) and restrictive legal rulings.

"The jurors knew our hands were tied," Perez said. "By the time the government laid it all out for them, they had already made up their minds ... They knew there was no reason for us to go farther."

Perez said the government's string of witnesses, largely composed of local, state and federal law-enforcement officers, became both repetitive and contradictory, according to jurors.

"They were bored to death," Perez said.

## Judge's restrictions on the defense

Navarro's rulings, aimed at trying to avoid jury nullification, severely limited defense arguments. Jury nullification occurs when a jury returns a verdict based on its shared belief rather than on the evidence in a case.

Navarro barred defendants from discussing why they traveled thousands of miles to join protesters at the Bundy Ranch. She did not allow them to testify about perceived abuses by federal authorities during the cattle roundup that might have motivated them to participate.

Navarro also restricted defendants from raising constitutional arguments, or mounting any defense based on their First Amendment rights to free speech and their Second Amendment rights to bear arms. In her rulings, Navarro said those were not applicable arguments in the case.

Federal officials did not face the same restrictions. To show defendants were part of a conspiracy, they referenced events that happened months, or years, after the standoff.

Federal prosecutors, led by Acting Nevada U.S. Attorney Steven Myhre, argued in court the case wasn't about the First or Second Amendments; that the Constitution doesn't give people the right to threaten federal officers.

They said the Bundys' dispute with the BLM was adjudicated and the court issued a lawful order to round up the cattle. When ranchers and the militia conspired to force the release of the cattle, they broke the law, prosecutors argued.

## Battle over federal land use

The Bundy Ranch standoff is one of the most high-profile land-use cases in modern Western history, pitting cattle ranchers, anti-government protesters and militia members against the Bureau of Land Management.

For decades, the BLM repeatedly ordered Bundy to remove his cattle from federal lands and in 2014 obtained a court order to seize his cattle as payment for more than $1 million in unpaid grazing fees.

Hundreds of supporters from every state in the union, including members of several militia groups, converged on his ranch about 70 miles north of Las Vegas.

The standoff was hailed as a victory by militia members. Cliven Bundy's sons, Ammon and Ryan Bundy, cited their success at Bundy Ranch in their run-up to the siege of an Oregon wildlife refuge in 2016, also in protest of BLM policies. An Oregon federal jury acquitted Ammon, Ryan and five others in October.

No arrests were made in the Bundy Ranch case until after the Oregon siege ended.

Last year, the government charged 19 people for their roles in the Nevada standoff. Two men took plea deals. Trials for the remaining defendants were broken into three tiers based on their alleged levels of culpability in the standoff.

Although defendants in the first trial and the retrial were considered the least culpable, all 17 defendants face the same charges. Those convicted could spend the rest of their lives in prison.

The second trial will include Cliven Bundy and his sons, Ammon and Ryan Bundy, who are considered ringleaders.

## Weapons charges outstanding

All four defendants in the retrial admitted bringing guns to the standoff. But pictures of Parker and Drexler aiming their weapons went viral.

An image of Parker has come to epitomize the 2014 protest. He is pictured lying prone on an overpass and sighting a long rifle at BLM agents in the wash below. The image galvanized the public and brought international awareness to the feud over public lands and the potential consequences of such a dispute.

Drexler took the stand and delivered the only defense testimony that jurors were allowed to consider.

He testified that even though he brought weapons to the standoff, he had no intention of threatening or assaulting law-enforcement officers.

Marchese said if the government decides to retry Parker and Drexler on the outstanding charges, it will likely be after all the standoff trials are concluded. For now, Parker plans on returning to Idaho and to go back to work as an electrician.

Marchese said despite the unresolved charges, he and his client are satisfied with the outcome.

"Any not guiltys are always good, right?" he said.



**READ MORE:**

Phoenix man gets 68 years in Bundy Ranch standoff (/story/news/local/arizona-investigations/2017/07/26/bundy-ranch-standoff-burleson-gets-68-year/513779001/)

As jury weighs Bundy Ranch standoff, Carol Bundy awaits her husband's fate (/story/news/local/arizona-investigations/2017/04/18/jury-weighs-bundy-ranch-standoff-carol-bundy-awaits-her-husbands-fate/100572564/)

What made Ammon Bundy go from AZ businessman to leader of the Oregon standoff?  (/story/news/local/arizona/2016/01/09/what-made-ammon-bundy-go-arizona-lead-oregon-standoff-federal-government/78420744/)

Read or Share this story: http://azc.cc/2xqXpEC

# EXHIBIT C

BRET O. WHIPPLE, ESQ
Nevada Bar Number 6168
**JUSTICE LAW CENTER**
1100 S. Tenth Street
Las Vegas, Nevada  89104
(702) 731-0000

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

THE UNITED STATES OF AMERICA,

        Plaintiff,

Vs.

CLIVEN D. BUNDY,

        Defendant.

CASE NO.: 2:16-cr-00046-GMN-PAL

**DEFENDANT CLIVEN D. BUNDY'S
EMERGENCY MOTION TO DISMISS
FOR DISCOVERY MISCONDUCT**

(REQUEST FOR AN EXPEDITED
HEARING – EVIDENTIARY HEARING
REQUESTED)

        COMES NOW, CLIVEN D. BUNDY, ESQ., by and through BRET O .WHIPPLE, ESQ., and hereby enters the following Motion to Dismiss for Discovery Misconduct. This motion is based upon the memorandum of points and authorities included herein, as well as other pleadings on file with this Court, and any evidentiary hearing conducted as it relates to the subject matter of the present motion.

        DATED THIS 6th day of November, 2017.

        **JUSTICE LAW CENTER**
        /s/ Bret O. Whipple, Esq.
        Bret O. Whipple, Esq.
        Bar No 6168

**JUSTICE LAW CENTER**
Tel (702) 731-0000 Fax (702) 974-4008

1

JUSTICE LAW CENTER
Tel (702) 731-0000 Fax (702) 974-4008

## MEMORANDUM OF POINTS AND AUTHORITIES

A specter is haunting this case – the specter of repeated and ongoing discovery misconduct by the United States. All of the power of the United States, exercised through its law enforcement agencies and through the United States Attorney's Office has generated a fog that obfuscates the truth surrounding the events of March, 2014 and April, 2014. This situation exists as a direct result of the prosecution's ongoing failure to abide by the rules of discovery and disclose discoverable evidence. Those obfuscatory discovery practices have continually thwarted defense efforts to acquire and review helpful or exculpatory evidence and use that evidence to prepare for trial. The government's bad faith misconduct is ongoing, and the defense has often been left wondering what *other evidence* remains undisclosed by the United States simply because such evidence would make the United States look bad or would reveal government misconduct against citizens lawfully protesting in the United States.

The defendants, including Cliven Bundy, cannot receive a fair trial under these circumstances. The public cannot rest assured that justice is going to be done in a criminal trial when everyone involved is left wondering what exculpatory evidence, unknown to the defense, remains hidden. The only appropriate remedy under the circumstances is dismissal of the indictment, with prejudice, as to all defendants.

## I.   BACKGROUND INFORMATION.

### A.   Discovery Allegations in Sealed Motion ECF No. 2727.

The defense, and this Court, now knows that law enforcement or bureaucratic agents, including the government eye-witness (SAC Dan Love) who commanded the operation against the Bundys, has a long history of, to put it diplomatically, manipulative practices, including the

2

misuse of his official position. *See* ECF No. 2727. We know now that that same officer has previously pressured, or otherwise acted inappropriately, in his direction of other law enforcement officers, including several government witnesses who have testified in this case. *Id.* This information was not fully disclosed to the defense, and indeed, there is evidence that such material was affirmatively hidden from the court and the defense. *Id.* These matters are currently subject of a sealed Motion to Dismiss [ECF No. 2727] which defendant Bundy has joined [ECF No. 2737].

This same agent who has, in other instances, engaged in misconduct towards his subordinate employees and the public, had nearly complete access to all law enforcement personnel, including BLM witnesses, at the time they formulated their reports and memoranda in April, 2014. We know now that this officer intended to build evidence for a criminal case against the Bundys at the time he had direct access to his subordinates who are witnesses in this case, including subordinates he has corruptly pressured in other instances. None of this information was affirmatively disclosed by the United States. The defense discovered it late through collateral happenstance, and even when it has been disclosed in response to defense motions and proceedings in this case, the most pertinent portions have often been minimized or withheld by the United States' Attorney's Office, purportedly because those portions were irrelevant. *See* ECF No. 2727, Motion to Dismiss.

**B.    Ryan Bundy's Specific Demands Regarding Surveillance Evidence.**

The defendants have long suspected *other forms* of government misconduct which they could not immediately prove. From the time the events occurred in April of 2014, there have been reports of mysterious occurrences, government snipers aiming for the defendants,

3

surveillance of their residence and personal property through covert government operations, and numerous other incidents allegedly witnessed by the defendants or other pro-civil-liberty witnesses in April, 2014.

Specifically, defendant Ryan Bundy moved to discover evidence relating to surveillance equipment being used against the Bundy home and the American People in March and April, 2014. *See* ECF No. 2299. The prosecution was evasive in its response, where it claimed that Bundy failed to meet and confer regarding discovery, and that is claims were part of a "fantastical fishing expedition." ECF No. 2340. While the government did not explicitly deny the existence of the requested surveillance evidence, the implication of its response was that Ryan Bundy's theories were too crazy to be given serious consideration by the court.

### C.   Cliven Bundy's Attempts to Obtain Evidence from United States.

The prosecution in this case has an affirmative duty to disclose evidence to the defense through discovery. Because the prosecution has failed to disclose favorable evidence later discovered serendipitously by the defense, Cliven has been forced to seek to discover evidence through collateral legal maneuvering.

Specifically, Bundy has sought evidence through Freedom of Information Act ("FOIA") requests. Because the United States failed to properly respond to those FOIA requests, a civil suit was filed by Freedom Watch on Mr. Bundy's behalf. *See* Exhibit A, Civil Complaint Case No. 1:16-cv-02320-CKK. This FOIA request also sought discoverable material which would have included surveillance video live feed, which must have also been streamed back to FBI headquarter computers, of the Bundy home during March and April of 2014. *Id.* The FBI estimated it would take almost forty-one (41) years to deliver the requested documentation to

JUSTICE LAW CENTER
Tel (702) 731-0000 Fax (702) 974-4008

4

1    Bundy, and to date, no material has been delivered. *See* Exhibit B, FBI's Status Report and

2    Proposed Schedule.

3              **D.    Testimony Reveals that the Surveillance Evidence Exists.**

4         The defendants had previously filed a motion for relief regarding the government's

5    destruction of evidence, specifically, the government's shredding of documents in the aftermath

6    of the events of April, 2014. *See* ECF No. 1878, Motion to Dismiss. During the testimony of

7    witness Mary Hinson, it was revealed that a "live video feed" depicting the Bundy home, and

8    ingress and egress from the home, was being piped in to the BLM "Command Center" during

9    the events in question. Furthermore, it was revealed that SAC Dan Love, among others, had

10    access to this live video feed.[1]

11

12

13        The existence of this video surveillance has never been disclosed to the defense. No

14    copy of the video has been produced pursuant to the government's affirmative duty to disclose

15    relevant and material evidence to the defense. As mentioned earlier, when allegations that such

16    video exists was made by Ryan Bundy, the government called it a "fantastical fishing

17    expedition." The defense first learned of the actual existence of such facts and evidence on

18    November 3, 2017, *after* trial had already begun. On November 3, 2017, counsel for Cliven

19    Bundy e-mailed the prosecution demanding the disclosure of the surveillance evidence that had,

20    thus far, been hidden from the defense. *See* Exhibit C, Letter to Prosecution.

21

22

23

24    _____

25    [1] Counsel for Cliven Bundy has requested the transcript from this hearing on an expedited basis,
      however, the transcript has not been produced as of the time of this filing, and therefore, the
26    exact testimony of the witness cannot be cited at this time. The Court is aware of the nature of
      the witness's testimony, and this motion can be supplemented once the transcript is produced.
27

28                                        5

JUSTICE LAW CENTER

Tel (702) 731-0000 Fax (702) 974-4008

## II.    LEGAL STANDARDS.

### A.    Brady, Giglio, Jencks, and Discovery Procedure.

The prosecution has "an affirmative duty to disclose information favorable to a defendant." *Kyles v. Whitley*, 514 U.S. 419, 432 (1995). If the government has no inculpatory information of the alleged offenses, the absence of such evidence ipso facto constitutes exculpatory information, such as showing video of the alleged crime scene that lacks evidence of any criminal conduct. This duty extends to "impeachment" evidence, *Id.* at 433, and requires an "individual prosecutor . . . to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Id.* at 437. The Ninth Circuit has ruled that the prosecution has the specific duty to "to produce any favorable evidence in the personnel records of an officer." *United States v. Cadet*, 727 F.2d 1453, 1467 (9th Cir. 1984). If there is any doubt about disclosure requirements, the prosecution can "may submit the information to the trial court for an *in camera* inspection." *Id.* at 1467-68. A prosecutor "anxious about tacking too close to the wind will disclose a favorable piece of evidence." *Kyles* at 439.

To establish a *Brady* violation, three elements - favorability, suppression, and materiality - must be shown. That is, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *United States v. Olsen, 704* F.3d 1172, 1181 (9th Cir. 2013) (alteration in original) (citations and quotation marks omitted). Suppression may be either intentional or inadvertent, and even "[a]n innocent failure to disclose favorable evidence constitutes suppression . . . ." Id. at 1182 (citations omitted). A *Giglio* violation occurs where the prosecution suppresses

evidence that impeaches a witness's credibility. *Giglio,* 405 U.S. at 154.  Materiality, the third element of a *Brady/Giglio* violation, can be the most elusive.

Discovery in federal criminal cases is generally governed by Fed. R. Crim. P. 16. Rule 16 is broader than *Brady,* "requiring disclosure of all documents 'material to preparing the defense.'" *United States v. Muniz-Jaquez,* 718 F.3d 1180, 1183 (9th Cir. 2013) (quoting Fed. R. Crim. P. 16(a)(1)(E)(i)). Rule 16(a)(1)(E)provides for the production of discovery, upon a defendant's request. It directs: "[T]he government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant."

"Evidence is 'material' under Rule 16 if it is helpful to the development of a possible defense." *United States v. Budziak,* 697 F.3d 1105, 1111-12 (9th Cir. 2012) (citing *United States v. Olano,* 62 F.3d 1180, 1203 (9th Cir. 1995)), *cert. denied,* 133 S. Ct. 1621, 185 L. Ed. 2d 605 (2013). The government is required to provide discovery in its possession or if the "prosecutor has knowledge of and access to the documents sought by the defendant." *United States v. Santiago,* 46 F.3d 885, 893 (9th Cir. 1995). A "prosecutor will be deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant." *United States v. Bryan,* 868 F.2d 1032, 1036 (9th Cir. 1989).

JUSTICE LAW CENTER
Tel (702) 731-0000 Fax (702) 974-4008

7

In the event that a Court does find *Brady, Giglio,* or *Jencks* violations, dismissal is within its power to grant as a remedy. "[First, a] district court may dismiss an indictment on the ground of outrageous government conduct if the conduct amounts to a due process violation. [Second, i]f the conduct does not rise to the level of a due process violation, the court may nonetheless dismiss under its supervisory powers." *United States v. Chapman*, 524 F.3d 1073, 1084 (9th Cir. 2008) (quoting *United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991)). However, a district court's supervisory powers are limited to three areas pertinent: "(1) to implement a remedy for a violation of recognized rights; (2) to preserve judicial integrity by ensuring that a criminal conviction rests on appropriate considerations validly before the jury; and (3) to deter future illegal conduct." *United States v. W.R. Grace,* 526 F.3d 499, 511 n.9 (9th Cir. 2008) (citations omitted).

Likewise, in the event that the district court finds that a party committed discovery violations, Rule 16(d)(2)authorizes sanctions which include ordering that party to permit the discovery or inspection; granting a continuance; prohibiting that party from introducing the undisclosed evidence; or entering "any other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2)(A)-(D). Underlying the directives enunciated by *Brady, Giglio, Jencks*, and Rule 16 is the overarching principle that the prosecuting attorney has a duty to be more than a mere advocate and must, above all, seek to do justice.

The Supreme Court has emphasized "the special role played by the American prosecutor in the search for truth in criminal trials." *Strickler v. Greene*, 527 U.S. 263, 281, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999). "A prosecutor has the responsibility of a minister of justice and not simply that of an advocate. This responsibility carries with it specific obligations to see

8

that the defendant is accorded procedural justice. . . ." ABA Model Rules of Professional Conduct Rule 3.8 cmt. (2002); <u>accord</u> ABA Standards for Criminal Justice 3-1.2(b) (3d. 1993) ("The prosecutor is both an administrator of justice and an advocate. The prosecutor must exercise sound discretion in the performance of his or her functions."); <u>id.</u> at 3-1.2(c) ("The duty of the prosecutor is to seek justice, not merely to convict"); *see also Hayes v. Brown*, 399 F.3d 972 (9th Cir. 2005) ("The prosecuting attorney['s] . . . obligation is to govern impartially[,] . . . to do justice[,] . . . [and] . . . to assure that the defendant has a fair and impartial trial") (quoting *Commonwealth of The Northern Mariana Islands v. Mendiola*, 976 F.2d 475, 486 (9th Cir. 1992) (citations omitted), *overruled on other grounds  by George v. Camacho,* 119 F.3d 1393 (9th Cir. 1997) (en banc)).

A prosecutor's failure to fulfill discovery obligations, whether due to mere oversight or to ill intent, defiles our system of justice and calls into question whether a defendant has been afforded a fair and impartial trial. Some courts decree strong sanctions for these failures. *See, e.g., United States v. Olsen*, 737 F.3d 625, 633 (9th Cir. 2013) (Kozinski, C.J., dissenting).

## B.  Outrageous Government Conduct.

A district court should dismiss an indictment on the ground of outrageous government conduct if the conduct amounts to a due process violation. If the conduct does not rise to the level of a due process violation, the court may nonetheless dismiss under its supervisory powers. *United States v. Chapman,* 524 F.3d 1073, 1084 (9th Cir. 2008).

In order to show outrageous government conduct, defendants must show conduct that violates due process in such a way that it is "so grossly shocking and so outrageous as to violate the universal sense of justice." *United States v. Restrepo*, 930 F.2d 705, 712 (9th Cir.

1991) (quoting *United States v. O'Connor,* 737 F.2d 814, 817 (9th Cir. 1984)) (internal quotation marks omitted). The defense is therefore "limited to extreme cases in which the government's conduct violates fundamental fairness." *[United States v.] Gurolla,* 333 F.3d [944,] 950 [(9th Cir. 2011)]. *United States v. Stinson,* 647 F.3d 1196, 1209 (9th Cir. 2011). In addition, "[a] court may dismiss an indictment under its supervisory powers only when the defendant suffers substantial prejudice, and where no lesser remedial action is available." *Chapman,* 524 F.3d at 1087 (citations and internal quotation marks omitted).

## III.   ARGUMENT.

To resolve the present motion, this Court must determine: **(A)** whether the government committed discovery violations, engaged in misconduct, and/or acted in bad faith by failing to disclose the existence of, or provide in discovery, evidence relating to the surveillance of the Bundy home during the events underlying the indictment; and **(B)** if so, what the proper remedy for is for the defendants in light of those violations and/or bad faith actions and misconduct on the part of the United States.

### A.   Discovery Violations, Misconduct, and Bad Faith.

As mentioned previously, ECF No. 2727 is a pending motion to dismiss which conclusively demonstrates the existence of other discovery violations. That motion has been joined by Cliven Bundy and remains pending.

The present circumstance is a separate distinct incident which, individually and combined with the subject matter of ECF No. 2727, demonstrates the government's discovery violations, misconduct, and bad faith. Collectively, the circumstances show "outrageous

JUSTICE LAW CENTER
Tel (702) 731-0000 Fax (702) 974-4008

government conduct" exists in this case which has destroyed any chance of providing the defendants with due process and a fair trial.

### 1.    The Live Stream Video Exists.

Live stream video surveillance conducted by the government exists because it was testified to, under oath, by a witness who has seen the video (Mary Hinson on November 3, 2017). Furthermore, apparently, Ryan Bundy or the other defendants in this case discovered what possibly electronic surveillance devices were during April, 2014, as referenced in ECF No. 2299.

### 2.    The Video evidence is and has been in the prosecution's possession.

Regardless of what government agency has the video, be it the BLM, FBI, or some other entity, the video of the live stream is clearly in the possession of the government (and the prosecution) for the purposes of discovery, whether it be in its actual or constructive possession. Even if the prosecution were to claim it lacked actual possession of the video, at the very least, the prosecution has been on notice of the possible existence of such video since ECF No. 2299 was filed by Ryan Bundy. Furthermore, it would be impossible to believe that the prosecution --- who has extensively interviewed the eye-witnesses to this case --- was unaware of a prominently-positioned video display in the incident command center underlying one of the most heavily litigated indictments in American history. Many government witnesses, insofar as we know they were in the incident command post, must have been aware of the video stream. It would be implausible to suggest this matter never came up in discussions between the prosecution and its own witnesses.

### 3.    The evidence is material, helpful, and exculpatory.

The evidence is clearly material. The United States alleges that a large-scale conspiracy was orchestrated by Cliven Bundy in March and April of 2014 for the purpose of obstructing, impeding, threatening, and assaulting federal officers.

Specifically, the government alleges that Bundy recruited and incited individuals to "travel to Bundy Ranch" for unlawful purposes in furtherance of an unlawful conspiracy. *See* ECF No. 27 at 13. The government alleges that Bundy (and others) used the internet to facilitate interstate travel for the aims of the conspiracy. *Id.* Bundy was allegedly the "ultimate authority" over the scope, manner, and means of the conspiracy operation. *Id* at 15. Bundy was allegedly involved in planning, making public statements, and using internet devices from Bundy Ranch in the lead up to the events of April 12, 2014. *Id* at 16-21.

Bundy is charged with fifteen (15) counts. As this Court can see, and as the United States is aware, Cliven Bundy was not physically present during most of the events underlying the specific counts of the indictment. Specifically:

**Count Four – Assault**: alleges that on April 9, allegations that the defendants assaulted and intimidated federal officers engaged in their official duties by interfering with a BLM convoy during impoundment operations. The evidence will show that Cliven Bundy was not present during the alleged incident. As a result, Cliven is charged was (1) part of a conspiracy and (2) under 18 U.S.C. 2 aiding and abetting.

**Count Five – Assault**: alleges that on April 12, 2014, federal officers were assaulted by the defendants at the impoundment site. The evidence will show that Cliven Bundy was not

JUSTICE LAW CENTER
Tel (702) 731-0000 Fax (702) 974-4008

present during the alleged incident. As a result, Cliven is charged was (1) part of a conspiracy and (2) under 18 U.S.C. 2 aiding and abetting.

**Count Seven – Threats:** alleges that on April 11, 2014, defendant Santilli confronted SAC Love at the Impoundment Site and made unlawful threats on behalf of Cliven Bundy. The evidence will show that Cliven Bundy was not present during the alleged incident. As a result, Cliven is charged was (1) part of a conspiracy and (2) under 18 U.S.C. 2 aiding and abetting.

**Count Eight – Threats:** alleges that on April 12, 2014, defendants allegedly confronted SAC Love at the Impoundment Site and made unlawful threats on behalf of Cliven Bundy. The evidence will show that Cliven Bundy was not present during the alleged incident. As a result, Cliven is charged was (1) part of a conspiracy and (2) under 18 U.S.C. 2 aiding and abetting.

**Counts Ten, Eleven, and Twelve – Obstruction:** alleges that on April 6, 2014 R. Bundy and D. Bundy attempted to impede and obstruct a BLM convoy. Next, Count Eleven alleges that on April 9, 2014 the defendants obstructed a BLM convoy. Next, Count Twelve, alleges that on April 12, 2014 the defendants impeded the impoundment of cattle at the Impoundment Site. The evidence will show that Cliven Bundy was not present during any of the alleged incidents. As a result, Cliven is charged was (1) part of a conspiracy and (2) under 18 U.S.C. 2 aiding and abetting.

As this Court can see, Cliven's alleged liability does not arise out of his physical conduct or physical presence where the specific incidents occurred. Instead, the indictment seeks to prove Cliven's guilt by showing that he was the leader of a conspiracy, orchestrated in person and through the internet, out of his home at Bundy Ranch and upon the stage where he occasionally made political speeches, and otherwise aided and abetted the "direct actors". This

JUSTICE LAW CENTER
Tel (702) 731-0000 Fax (702) 974-4008

necessarily indicates that the alleged "crime scene" used by Cliven Bundy is his "headquarters", i.e., his home upon Bundy Ranch. The government alleges this is where he met with, organized, and instructed other members of the conspiracy, as well as the location Bundy used phone or internet to coordinate with other conspirators.

As a result of these circumstances, much "material evidence" must necessarily exist in a video surveillance of Bundy's home. At minimum this would include: **(1)** video evidence regarding the number of individuals, and the identity of individuals, entering and exiting Bundy ranch; **(2)** where Bundy was during the events of April, 2014; **(3)** who, besides Bundy and the co-defendants, had access to internet and communication devices at Bundy ranch, which is material to the question of who sent certain particular communications which are the subject of this case; and **(4)** the presence of politicians, or media members, at Bundy ranch, which is relevant to portions of the defense's theory of the case (i.e. that Bundy, rather than pursuing a criminal conspiracy, attempted to pressure the BLM to cease its operations through lawful appeals to the public through politicians and the media).

Furthermore, the existence and content of the video surveillance is relevant **(1)** to explain the defendant's beliefs regarding government misconduct, **(2)** to explain their fears of government aggression, **(3)** to explain the non-criminal reason so-called militia members came to Bundy's property (i.e. the reasonable fear of government who was spying on the Bundy's and could turn to aggressive violence at any moment); and **(4)** possible motives of the government, its agents, and its witnesses during trial, to exaggerate evidence for the purposes of incarcerating Bundy and the other defendants, to cover-up government misconduct,

including but not limited to, to suppress the Bundys' knowledge of government spying and surveillance of U.S. citizens.

Furthermore, the video is likely material in a multitude of additional ways not currently known to the defense *precisely because* the evidence has been suppressed by the United States, as the defense has been excluded from viewing the video, or indeed, even knowing about its very existence until trial had already begun. The video is literally a video of the crime scene, while Cliven Bundy was present, during which he was allegedly committing his crime. Without access to the video, and the ability to closely parse the video for favorable defense evidence, there is no way for Bundy to explain its full materiality to the court.

   **4.      The prosecution acted in bad faith in failing to disclose the existence of the evidence and by failing to provide the evidence in discovery.**

Not only has the government failed to meet its affirmative discovery obligations, it has actively obscured the matter by suggesting the surveillance video was part of a "fantastical fishing expedition" previously pursued by defendant Ryan Bundy. Although the government did not explicitly state that the Bundy home was not the target of extensive electronic surveillance, the suggestion in the government's ECF No. 2340 was that the existence of such technological surveillance by the government was a fantasy of the pro per defendant Ryan Bundy. The fact that the government made this characterization *while knowing* that the electronic surveillance technology was used by the government in a manner incredibly similar to that described by Ryan Bundy is evidence of bad faith and the suppression of discoverable evidence by the government.

JUSTICE LAW CENTER
Tel (702) 731-0000 Fax (702) 974-4008

**5.**     <u>**Proper Remedy.**</u>

No remedy, other than dismissal with prejudice, can protect the constitutional rights of the defendants to be free from this type of discovery misconduct and outrageous government conduct. Trial has already begun. The defendants have been incarcerated for almost two entire years without receiving trial. Even when trials have been held, the United States has been nearly uniformly unable to convince any juror that any of the defendants engaged in any wrong-doing. Even the two convictions obtained, out of many numerical chances when considering successive trials on dozens of counts, were not convictions for conspiracy. A continuance, causing the defendants to lose an additional year of their life while these matters of misconduct are investigated by the defense, is not a remedy which would protect fairness, due process, or the Constitution. Given the apparent bad faith of the government, and given the discovery of this matter at the start of trial, no remedy will protect the defendants' rights other than dismissal.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

IV.   **Conclusion.**

In any criminal proceeding, the parties, the court, and the public, must be able to believe that the proceedings will be fair, just, and aimed at the determination of truth.

Where faith in a fair proceeding is diminished to the point that no side can believe the representations of the other, and where the suspicion of hidden evidence infects the entirety of the case, the case simply cannot go on.

Unfortunately, this case has reached the point where faith in an open and fair proceeding, aimed a truth, is no longer plausible.  The government's repeated failure to abide by its affirmative duty to disclose evidence has undermined the appearance of justice so fundamentally that no result reached in this case can protect the constitutional rights of the defendants, and the virtue of this court, other than dismissal.

DATED THIS 6th day of November, 2017

> **JUSTICE LAW CENTER**
> /s/ Bret O. Whipple, Esq.
> Bret O. Whipple, Esq.
> Bar No 6168

**JUSTICE LAW CENTER**
Tel (702) 731-0000 Fax (702) 974-4008

1

## <u>CERTIFICATION OF SERVICE</u>

2

I hereby certify that on the 6th day of November, 2017 a true and correct copy of the

3

4

foregoing MOTION TO DISMISS was delivered via E-filing to:

5

6
DANIEL BOGDEN
 United States Attorney

7

8
STEVEN MYHRE
First Assistant United States Attorney

9

10
NICHOLAS DICKINSON
Assistant United States Attorney

11

12
NADIA AHMED
Assistant United States Attorney

13

14
ERIN M. CREEGAN
Assistant
United States Attorney

15

16
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, NV 89101

17

18
                                                      ___/S/ Tatum Wehr___
19
                                                      An Employee of Justice Law Center

20

21

22

23

24

25

26

27

28
                                          18

# EXHIBIT A

# EXHIBIT A

Case 1:17-cv-02429   Document 1   Filed 11/09/17   Page 125 of 154
Case 2:16-cr-00046-GMN-PAL   Document 2828   Filed 11/06/17   Page 20 of 47
Case 1:16-cv-02320-CKK   Document 1   Filed 11/22/16   Page 1 of 15

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FREEDOM WATCH,
2020 Pennsylvania Ave. NW, Suite 345
Washington, DC, 20006

        Plaintiff,

v.

BUREAU OF LAND MANAGEMENT
1849 C Street NW, Room 2134LM
Washington, DC, 20240

        and

U.S. DEPARTMENT OF JUSTICE
1100 L Street NW, Room 8020
Washington, DC, 20530

        Defendants.

## COMPLAINT

Plaintiff FREEDOM WATCH, INC. ("Plaintiff") brings this action against Defendants Bureau of Land Management ("BLM") and the Department of Justice ("DOJ") to compel compliance with the Freedom of Information Act, 5 U.S.C.§ 552 ("FOIA"). As grounds therefore, Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1.     The Court has jurisdiction over this action pursuant to 5. U.S.C. § 552(a)(4)(B) and 28 U.S.C 1331.

2.     Venue is proper in this district pursuant to 28. U.S.C. 1391(e)

## PARTIES

1

Case 1:17-cv-02429   Document 1   Filed 11/09/17   Page 126 of 154
Case 2:16-cr-00046-GMN-PAL   Document 2828   Filed 11/06/17   Page 21 of 47
Case 1:16-cv-02320-CKK   Document 1   Filed 11/22/16   Page 2 of 15

3.     Plaintiff Freedom Watch, Inc. is a 501(c)(3), non-profit, public interest foundation organized under the laws of the District of Columbia and having its principal place of business at 2020 Pennsylvania Ave., NW Suite 345, Washington, DC, 20006. Plaintiff seeks to promote openness within the federal government and their actions. Plaintiff regularly requests records under FOIA to shed light on the operations of the federal government and to educate the public about these operations. Plaintiff then analyzes the agency records and disseminates the results of its analysis to the public.

4.     Defendants are agencies of the United States Government. Defendants have possession, custody, and control of records to which Plaintiff seeks access.

## STATEMENT OF FACTS

5.     On October 7, 2016, Plaintiff sent FOIA requests to Defendant BLM and Defendant DOJ by certified mail and facsimile, seeking the production of agency records relating to:

(1)     Any and all documents that refer or relate in any way to Cliven Bundy;

(2)     Any and all documents that refer or relate in any way to the case of *United States v. Cliven Bundy*, in the U.S. District Court for the District of Nevada, which may or may not also be identified in particular records by Civil Action No. or Case No. 2:12-cv-0804;

(3)     Any and all documents that refer or relate in any way to any criminal prosecution of Cliven Bundy, including discussions, arguments or proposals about whether Cliven Bundy ought to be prosecuted at any time after January 2010;

(4)     Any and all documents that refer or relate in any way to plans, efforts, strategies, and/or implementation of criminal prosecution of Cliven Bundy at any time after January 2010;

(5)     Any and all documents that refer or relate in any way to the case of *United States v. Cliven Bundy*, in the U.S. District

Court for the District of Nevada, which may or may not also be identified in particular records by Criminal Action No. or Case No. 2:16-CR-00046-1;

(6)     Any and all documents that refer or relate in any way to criminal prosecution of Ammon Bundy and others in the U.S. District Court for the District of Oregon during 2016;

(7)     Any and all documents that refer or relate in any way to an incident known as the "Bundy Standoff," in Clark County, Nevada, from January 2014 through May 2014, but primarily in March and April of 2014;

(8)     Any and all documents that refer or relate in any way to an incident in which Cliven Bundy and supporters faced off against personnel of the Bureau of Land Management at or near Bundy's ranch located near Bunkerville, Nevada in Clark County, Nevada, from January 2014 through May 2014, but primarily in March and April of 2014;

(9)     Any and all documents that refer or relate in any way to an incident in the Malheur National Wildlife Refuge in Oregon in and around December 2015 and/or January 2016, which may be described in documents as protests, occupation, demonstrations, a takeover of government buildings, and/or opposition to the treatment by the Bureau of Land Management or the U.S. Government in general of ranchers;

(10)    Any and all documents that refer or relate in any way to protests in Oregon in 2015 or 2016 concerning Dwight Hammond and/or Steven Hammond. For identification purposes, this request refers to that Dwight Hammond and Steven Hammond who are father and son cattle ranchers, and who are accused of setting fire to public land while they claim that they were conducting a controlled burn of their own land next door;

(11)    Any and all documents, created in or after January 2010 that refer or relate in any way to the Cliven Bundy Ranch in Clark County, Nevada;

(12)    Any and all documents that refer or relate in any way to the group of citizens from throughout the United States who protested against the government in March and/or April 2014 at or near Bunkerville, Nevada in Clark County, Nevada;

Case 1:17-cv-02429   Document 1   Filed 11/09/17   Page 128 of 154
Case 2:16-cr-00046-GMN-PAL   Document 2828   Filed 11/06/17   Page 23 of 47
Case 1:16-cv-02320-CKK   Document 1   Filed 11/22/16   Page 4 of 15

(13)     Any and all documents that refer or relate in any way to stand-off(s), clash(es), demonstrations and/or protests opposing agents from the Bureau of Land Management in March or April of 2015, at or near Bunkerville, Nevada in Clark County, Nevada;

(14)     Any and all documents that refer or relate in any way to Senator Harry Mason Reid in the possession, custody or control of BLM, excluding newspaper or other news reports;

(15)     Any and all documents that refer or relate in any way to Senator Harry Mason Reid and all real estate purchase deals that he is involved with;

(16)     Any and all documents that refer or relate in any way to plans, proposals, strategies, or requests from, by, or of Senator Harry Reid for the use of land administered by the Bureau of Land Management in Clark County, Nevada;

(17)     Any and all communications between Senator Harry Reid and your agency which refer or relate in any way to Cliven Bundy;

(18)     Any and all documents that refer or relate in any way to Rory Reid and all real estate sale and or purchase deals that he is involved with;

(19)     Any and all documents that refer or relate in any way to plans, proposals, strategies, or requests from, by, or of Rory Reid for the use of land administered by the Bureau of Land Management in Clark County, Nevada

(20)     Any and all communications between Rory Reid and your agency which refer or relate in any way to Cliven Bundy;

(21)     All documents created on or after January 1, 2012, which report, discuss, describe, explain, refer to, or relate in any way to any plan or proposal for the BLM or agents for the BLM to take physical possession or custody of Cliven Bundy's cattle within Clark County in the State of Nevada; and

(22)     All documents created on or after October 1, 2013, which report, discuss, describe, explain, refer to, or relate in any way to any plan or proposal to employ or deploy any U.S. Government employees carrying guns to remove Cliven Bundy's cattle within Clark County in the State of Nevada. ("Plaintiff's FOIA Request")

Case 1:17-cv-02429   Document 1   Filed 11/09/17   Page 129 of 154
Case 2:16-cr-00046-GMN-PAL   Document 2828   Filed 11/06/17   Page 24 of 47
Case 1:16-cv-02320-CKK   Document 1   Filed 11/22/16   Page 5 of 15

6.    A true and correct copy of Plaintiff's FOIA Request and Proof of Service are attached hereto as **Exhibit A.**

7.    Defendants BLM and DOJ were required to determine whether to comply with Plaintiff's FOIA Request within 20 days, excepting Saturdays, Sundays, and legal public holidays, pursuant to 5 U.S.C.§ 552(a)(6)(A). Pursuant to this same provision, Defendants BLM and DOJ also were required to notify Plaintiff immediately of this determination, the reasons therefore, and the right to appeal any adverse determination to the head of the agency. Excluding weekends, and October 10, 2016 in observance of Columbus Day, Defendants BLM and DOJ were required to make its determination and provide Plaintiff with requisite notifications regarding Plaintiff's First FOIA Request by November 7, 2016

8.    As of the date of this Complaint, the Defendants BLM and DOJ have failed to make bona fide, good faith, much less any, determinations about whether they will comply with either of Plaintiff's requests. Nor have Defendants BLM and DOJ produced any records responsive to either request, indicated when any responsive records will be produced, or demonstrated that specific responsive records are exempt from production. The attached FOIA requests and Plaintiff's response to Defendants' failure to produce records, failure to say when any such records will be produced, and failure to grant expedited treatment and feed waivers demonstrates that any administrative appeal would be futile and thus the complaint is being filed upon notification to the agency. *See Singh v. Ashcroft*, 362 F.3d 1164, 1169 (9th Cir. 2004) (A plaintiff need not "exhaust administrative remedies that would be futile" to exhaust.). *See also Sokha Sun v. Ashcroft*, 370 F.3d 932, 943 (9th Cir. 2004) ("where the agency's position on the

Case 1:17-cv-02429   Document 1   Filed 11/09/17   Page 130 of 154
Case 2:16-cr-00046-GMN-PAL   Document 2828   Filed 11/06/17   Page 25 of 47
Case 1:16-cv-02320-CKK   Document 1   Filed 11/22/16   Page 6 of 15

question at issue appears already set, and it is very likely what the result of recourse to administrative remedies would be, such recourse would be futile and is not required.").

## CAUSE OF ACTION
### (Violation of FOIA, 5 U.S.C. § 552)

9.      Plaintiff realleges paragraphs 1 through 8 as if fully stated herein.

10.     Defendants are unlawfully withholding records requested by Plaintiff's FOIA Request pursuant to 5 U.S.C. § 552 as set forth in Exhibit A, which is incorporated herein by reference.

11.     Plaintiff is being irreparably harmed by reason of Defendants' unlawful withholding of requested records, and Plaintiff will continue to be irreparably harmed unless Defendants are compelled to conform its conduct to the requirements of the law.

12.     Plaintiff respectfully requests a FOIA fee waiver pursuant to 5 U.S.C. § 552, as Plaintiff is a non-profit, public interest organization that seeks to promote openness within the federal government and their actions. Plaintiff regularly requests records under FOIA to shed light on the operations of the federal government and to educate the public about these operations. Plaintiff then analyzes the agency records and disseminates the results of its analysis to the public at large.

WHEREFORE, Plaintiff respectfully request that the Court: (1) order Defendants to conduct a search for any and all responsive records to Plaintiff's FOIA request and demonstrate that it employed search methods reasonably likely to lead to the discovery of records responsive to Plaintiff's FOIA request; (2) order Defendants to produce, by a certain date, any and all non-exempt records responsive to Plaintiff's FOIA request and a *Vaughn* index of any responsive records withheld under claim of exception.; (3) enjoin Defendants from continuing to withhold any and all non-exempt records responsive to Plaintiff's FOIA request; (4) grant Plaintiff a fee

Case 1:17-cv-02429   Document 1   Filed 11/09/17   Page 131 of 154
Case 2:16-cr-00046-GMN-PAL   Document 2828   Filed 11/06/17   Page 26 of 47
Case 1:16-cv-02320-CKK   Document 1   Filed 11/22/16   Page 7 of 15

waiver for produced records and an award of attorneys' fees and other litigation costs reasonably

incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and (5) grant Plaintiff such other

relief as the Court deems just and proper.

Dated: November 22, 2016

Respectfully submitted,

*/s/ Larry Klayman*
Larry Klayman, Esq.
Freedom Watch, Inc.
D.C. Bar No. 334581
2020 Pennsylvania Ave, NW
Suite 345
Washington, DC, 20006
Tel: (310) 595-0800
Email: leklayman@gmail.com

# EXHIBIT A

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Michelle Piland
FOIA Officer
Bureau of Land Management
1340 Financial Boulevard
Reno, Nevada 89502

9590 9403 0703 5196 5137 99

2. Article Number (Transfer from service label)

7015 1520 0002 1936 3450

PS Form 3811, April 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ____
□ Agent
□ Addressee

B. Received by (Printed Name)          C. Date of Delivery

D. Is delivery address different from item 1?   □ Yes
   If YES, enter delivery address below:        □ No

3. Service Type
□ Adult Signature
□ Adult Signature Restricted Delivery
□ Certified Mail®
□ Certified Mail Restricted Delivery
□ Collect on Delivery
□ Collect on Delivery Restricted Delivery
□ Insured Mail
□ Insured Mail Restricted Delivery (over $500)

□ Priority Mail Express®
□ Registered Mail™
□ Registered Mail Restricted Delivery
□ Return Receipt for Merchandise
□ Signature Confirmation™
□ Signature Confirmation Restricted Delivery

Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

FOIA/Civil Div / Angie Cecil
US Department of Justice
1100 L Street NW 8080
Washington, DC 20530

9590 9403 0334 6155 7821 90

2. Article Number (Transfer from service label)

7015 1520 0002 1936 3436

PS Form 3811, April 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ____
□ Agent
□ Addressee

B. Received by (Printed Name)          C. Date of Delivery
____ 10.4.16

D. Is delivery address different from item 1?   □ Yes
   If YES, enter delivery address below:        □ No

3. Service Type
□ Adult Signature
□ Adult Signature Restricted Delivery
□ Certified Mail®
□ Certified Mail Restricted Delivery
□ Collect on Delivery
□ Collect on Delivery Restricted Delivery
□ Insured Mail
□ Insured Mail Restricted Delivery (over $500)

□ Priority Mail Express®
□ Registered Mail™
□ Registered Mail Restricted Delivery
□ Return Receipt for Merchandise
□ Signature Confirmation™
□ Signature Confirmation Restricted Delivery

Domestic Return Receipt

Case 1:17-cv-02429   Document 1   Filed 11/09/17   Page 134 of 154
Case 2:16-cr-00046-GMN-PAL   Document 2828   Filed 11/06/17   Page 29 of 47
Case 1:16-cv-02320-CKK   Document 1   Filed 11/22/16   Page 10 of 15

11/14/2016

 Gmail

Dina James <daj142182@gmail.com>

---

## Fwd: Successful transmission to 12022450027. Re: UNKNOWN
1 message

---

**Jonathon Moseley** <contact@jonmoseley.com>                     Mon, Nov 14, 2016 at 1:35 PM
To: daj142182@gmail.com



Jon Moseley
Cell phone: (703) 656-1230
Fax (703) 783-0449

This message may contain confidential, proprietary or legally privileged information and is intended only for the use of the
addressee named above. No confidentiality or privilege is waived or lost by any mis-transmission. If you are not the
intended recipient of this message you are hereby notified that you must not use, disseminate, or copy it in any form or
take any action in reliance on it. If you have received this message in error please delete it and any copies of it and notify
Jonathon Moseley by reply. The reliability of this method of communication cannot be guaranteed. It can be intercepted,
corrupted, delayed, may arrive incomplete, contain viruses or be affected by other interference. We have taken
reasonable steps to reduce risks against viruses but cannot accept liability for any damage sustained as a result of this
transmission.

-----Original Message-----
**From:** send@mail.efax.com [mailto:send@mail.efax.com]
**Sent:** Tuesday, October 11, 2016 04:08 PM
**To:** contact@jonmoseley.com
**Subject:** Successful transmission to 12022450027. Re: UNKNOWN

The 4 page fax you sent through eFax to 12022450027 was successfully transmitted at 2016-10-11 21:08:20 (GMT)

**eFax®** *Faxing Simplified*

---

Dear Jonathon,                                                                  Re: UNKNOWN

The fax you sent through eFax to 12022450027 was successfully transmitted.

**Fax Details**

| | |
|---|---|
| **Date:** | 2016-10-11 21:08:20 (GMT) |
| **Number of Pages:** | 4 |
| **Length of Transmission:** | 339 seconds |

If you have any questions about your service please call (800) 958-2983 or visit our Online Help
Center.

Thank you for choosing eFax.

Sincerely,

11/14/2016                    eFax - Successful transmission to 12024500270 / 8 / UNKNOWN
The eFax Team

**P.S.** Too busy to answer all your business calls? eVoice answers, manages and routes your
phone calls 24/7. Try a Free 30-Day Trial Today!



© 2016 j2 Cloud Services, Inc and affiliates. All rights reserved.
eFax is a registered trademark of j2 Cloud Services, Inc. and affiliates.
6922 Hollywood Blvd., Los Angeles, CA 90028

This account is subject to the terms listed in the eFax Customer Agreement.

Case 1:17-cv-02429   Document 1   Filed 11/09/17   Page 136 of 154
Case 2:16-cr-00046-GMN-PAL   Document 2828   Filed 11/06/17   Page 31 of 47
Case 1:16-cv-02320-CKK   Document 1   Filed 11/22/16   Page 12 of 15



Dina James <daj142182@gmail.com>

## Fwd: Successful transmission to 12025147866. Re: UNKNOWN
1 message

**Jonathon Moseley** <contact@jonmoseley.com>                              Mon, Nov 14, 2016 at 1:35 PM
To: daj142182@gmail.com

Jon Moseley
Cell phone: (703) 656-1230
Fax (703) 783-0449

*Angie Ceil*
*DOJ*
*FOIA*

This message may contain confidential, proprietary or legally privileged information and is intended only for the use of the
addressee named above. No confidentiality or privilege is waived or lost by any mis-transmission. If you are not the
intended recipient of this message you are hereby notified that you must not use, disseminate, or copy it in any form or
take any action in reliance on it. If you have received this message in error please delete it and any copies of it and notify
Jonathon Moseley by reply. The reliability of this method of communication cannot be guaranteed. It can be intercepted,
corrupted, delayed, may arrive incomplete, contain viruses or be affected by other interference. We have taken
reasonable steps to reduce risks against viruses but cannot accept liability for any damage sustained as a result of this
transmission.

-----Original Message-----
**From:** send@mail.efax.com [mailto:send@mail.efax.com]
**Sent:** Tuesday, October 11, 2016 04:07 PM
**To:** contact@jonmoseley.com
**Subject:** Successful transmission to 12025147866. Re: UNKNOWN

The 4 page fax you sent through eFax to number 12025147866 was successfully transmitted at 2016-10-11 21:07:28 (GMT)

## eFax® *Faxing Simplified*

Dear Jonathon,                                                             Re: UNKNOWN

The fax you sent through eFax to 12025147866 was successfully transmitted.

### Fax Details

Date:                         2016-10-11 21:07:28 (GMT)
Number of Pages:              4
Length of Transmission:       279 seconds
Receiving Machine Fax ID:     202 514 7866

If you have any questions about your service please call (800) 958-2983 or visit our Online Help
Center.

Thank you for choosing eFax.

11/14/2016 

Sincerely,

The eFax Team

**P.S.** Too busy to answer all your business calls? eVoice answers, manages and routes your phone calls 24/7. Try a Free 30-Day Trial Today!

© 2016 j2 Cloud Services, Inc and affiliates. All rights reserved.
eFax is a registered trademark of j2 Cloud Services, Inc. and affiliates.
6922 Hollywood Blvd., Los Angeles, CA 90028

This account is subject to the terms listed in the eFax Customer Agreement.

Case 1:17-cv-02429   Document 1   Filed 11/09/17   Page 138 of 154
Case 2:16-cr-00046-GMN-PAL   Document 2828   Filed 11/06/17   Page 33 of 47
Case 1:16-cv-02320-CKK   Document 1   Filed 11/22/16   Page 14 of 15

11/14/2016                     Gmail - Fwd: Successful transmission to 17758616688. Re: UNKNOWN

 Gmail

Dina James <daj142182@gmail.com>

---

## Fwd: Successful transmission to 17758616688. Re: UNKNOWN
1 message

**Jonathon Moseley** <contact@jonmoseley.com>                     Mon, Nov 14, 2016 at 1:33 PM
To: daj142182@gmail.com



Jon Moseley
Cell phone: (703) 656-1230
Fax (703) 783-0449

This message may contain confidential, proprietary or legally privileged information and is intended only for the use of the
addressee named above. No confidentiality or privilege is waived or lost by any mis-transmission. If you are not the
intended recipient of this message you are hereby notified that you must not use, disseminate, or copy it in any form or
take any action in reliance on it. If you have received this message in error please delete it and any copies of it and notify
Jonathon Moseley by reply. The reliability of this method of communication cannot be guaranteed. It can be intercepted,
corrupted, delayed, may arrive incomplete, contain viruses or be affected by other interference. We have taken
reasonable steps to reduce risks against viruses but cannot accept liability for any damage sustained as a result of this
transmission.

-----Original Message-----
**From:** send@mail.efax.com [mailto:send@mail.efax.com]
**Sent:** Tuesday, October 11, 2016 04:08 PM
**To:** contact@jonmoseley.com
**Subject:** Successful transmission to 17758616688. Re: UNKNOWN

The fax you sent through eFax to 17758616688 was successfully transmitted at 2016-10-11 21:08:18 (GMT)

### eFax® Faxing Simplified

Dear Jonathon,                                                 Re: UNKNOWN

The fax you sent through eFax to 17758616688 was successfully transmitted.

**Fax Details**

| | |
|---|---|
| Date: | 2016-10-11 21:08:18 (GMT) |
| Number of Pages: | 4 |
| Length of Transmission: | 336 seconds |
| Receiving Machine Fax ID: | 17758616688 |

If you have any questions about your service please call (800) 958-2983 or visit our Online Help
Center.

Thank you for choosing eFax.

11/14/2016

Sincerely,

The eFax Team

**P.S.** Too busy to answer all your business calls? eVoice answers, manages and routes your phone calls 24/7. Try a Free 30-Day Trial Today!



© 2016 j2 Cloud Services, Inc and affiliates. All rights reserved.
eFax is a registered trademark of j2 Cloud Services, Inc. and affiliates.
6922 Hollywood Blvd., Los Angeles, CA 90028

This account is subject to the terms listed in the eFax Customer Agreement.

# CIVIL COVER SHEET

JS-44 (Rev. 7/16 DC)

| | |
|---|---|
| **I. (a) PLAINTIFFS**<br>Freedom Watch, Inc. | **DEFENDANTS**<br>Bureau of Land Management, U.S. Department of Justice |
| **(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** _____<br>(EXCEPT IN U.S. PLAINTIFF CASES) | **COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** _____<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| **(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**<br>Larry Klayman, Esq.<br>2020 Pennsylvania Ave, NW, #345<br>Washington, DC, 20006<br>310-595-0800 | **ATTORNEYS (IF KNOWN)** |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

● 2 U.S. Government Defendant

○ 3 Federal Question (U.S. Government Not a Party)

○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place an X in one category, A-N, that best represents your Cause of Action and one in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**Other Statutes**
☐ 891 Agricultural Acts
☐ 893 Environmental Matters
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*If Antitrust, then A governs)*

---

○ **E. General Civil (Other)**          OR          ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 27 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Conditions
☐ 560 Civil Detainee – Conditions of Confinement

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant)
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 690 Other

**Other Statutes**
☐ 375 False Claims Act
☐ 376 Qui Tam (31 USC 3729(a))
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 462 Naturalization Application
☐ 465 Other Immigration Actions

☐ 470 Racketeer Influenced & Corrupt Organization
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 850 Securities/Commodities/ Exchange
☐ 896 Arbitration
☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

Case 1:17-cv-02429   Document 1   Filed 11/09/17   Page 141 of 154
Case 2:16-cr-00046-GMN-PAL   Document 2828   Filed 11/06/17   Page 36 of 47
Case 1:16-cv-02320-CKK   Document 1-1   Filed 11/22/16   Page 2 of 2

| ◉ G.  *Habeas Corpus/*<br>*2255* | ◉ H.  *Employment*<br>*Discrimination* | ◉ I.  *FOIA/Privacy Act* | ◉ J.  *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus – General<br>☐ 510 Motion/Vacate Sentence<br>☐ 463 Habeas Corpus – Alien<br>    Detainee | ☐ 442 Civil Rights – Employment<br>    (criteria: race, gender/sex,<br>    national origin,<br>    discrimination, disability, age,<br>    religion, retaliation)<br><br>*(If pro se, select this deck)** | ☒ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>    (if Privacy Act)<br><br><br><br>*(If pro se, select this deck)** | ☐ 152 Recovery of Defaulted<br>    Student Loan<br>    (excluding veterans) |

| ◉ K.  *Labor/ERISA*<br>*(non-employment)* | ◉ L.  *Other Civil Rights*<br>*(non-employment)* | ◉ M.  *Contract* | ◉ N.  *Three-Judge*<br>*Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 740 Labor Railway Act<br>☐ 751 Family and Medical<br>    Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>    Act)<br>☐ 443 Housing/Accommodations<br>☐ 440 Other Civil Rights<br>☐ 445 Americans w/Disabilities –<br>    Employment<br>☐ 446 Americans w/Disabilities –<br>    Other<br>☐ 448 Education | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment<br>    & Enforcement of<br>    Judgment<br>☐ 153 Recovery of Overpayment<br>    of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights – Voting<br>    (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original    ◯ 2 Removed    ◯ 3 Remanded    ◯ 4 Reinstated    ◯ 5 Transferred    ◯ 6 Multi-district    ◯ 7 Appeal to    ◯ 8 Multi-district
    Proceeding       from State       from Appellate     or Reopened     from another       Litigation        District Judge      Litigation –
                   Court              Court                         district (specify)                          from Mag.          Direct File
                                                                           Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

5 U.S.C.§ 552 (FOIA)

| **VII. REQUESTED IN**<br>**COMPLAINT** | CHECK IF THIS IS A CLASS<br>ACTION UNDER F.R.C.P. 23 ☐ | **DEMAND** $<br>**JURY DEMAND:** | Check **YES** only if demanded in complaint<br>YES ☐    NO ☐ |
|---|---|---|---|
| **VIII. RELATED CASE(S)**<br>**IF ANY** | (See instruction) | YES ☐    NO ☒ | If yes, please complete related case form |

DATE: _____11/22/2016_____     SIGNATURE OF ATTORNEY OF RECORD _____ /s/ Larry Klayman _____

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
**Authority for Civil Cover Sheet**

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

I.      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed *only* if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the *primary* cause of action found in your complaint. You may select only *one* category. You *must* also select *one* corresponding nature of suit found under the category of the case.

VI.    CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

FOIA Summons
1/13

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Freedom Watch, Inc.
_____
*Plaintiff*

v.

Bureau of Land Management
_____
*Defendant*

)
)
)
)
)
)
)

Civil Action No. 1:16-cv-2320

## SUMMONS IN A CIVIL ACTION

To:     *(Defendant's name and address)* Bureau of Land Management
                               1849 C Street NW, Room 2134LM
                               Washington, DC, 20240

A lawsuit has been filed against you.

Within 30 days after service of this summons on you (not counting the day you received it) you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:     Larry Klayman, Esq.
                               2020 Pennsylvania Ave, NW, #345
                               Washington, DC, 20006

If you fail to respond, judgment by default may be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

*ANGELA D. CAESAR, CLERK OF COURT*

Date: _____          _____
                                        *Signature of Clerk or Deputy Clerk*

Case 1:17-cv-02429   Document 1   Filed 11/09/17   Page 143 of 154
Case 2:16-cr-00046-GMN-PAL   Document 2828   Filed 11/06/17   Page 38 of 47
Case 1:16-cv-02320-CKK   Document 1-2   Filed 11/22/16   Page 2 of 2

FOIA Summons (12/11) (Page 2)

Civil Action No. 1:16-cv-2320

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* ................................................................

was received by me on *(date)* .............................................. .

☐  I personally served the summons on the individual at *(place)* ................................................

................................................................ on *(date)* .............................. ; or

☐  I left the summons at the individual's residence or usual place of abode with *(name)* ..................

................................................................ , a person of suitable age and discretion who resides there,

on *(date)* .............................. , and mailed a copy to the individual's last known address; or

☐  I served the summons on *(name of individual)* ................................................ , who is

designated by law to accept service of process on behalf of *(name of organization)* ......................

................................................................ on *(date)* .............................. ; or

☐  I returned the summons unexecuted because ................................................ ; or

☐  Other *(specify)*:


.


My fees are $ .......................... for travel and $ .......................... for services, for a total of $          0          .


I declare under penalty of perjury that this information is true.


Date: ..............................          ..............................................
                                                          *Server's signature*

                                        ..............................................
                                                          *Printed name and title*

                                        ..............................................
                                                          *Server's address*

Additional information regarding attempted service, etc:

FOIA Summons
1/13

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Freedom Watch, Inc.
_____
*Plaintiff*

v.

Bureau of Land Management
_____
*Defendant*

)
)
)
)
)
)
)

Civil Action No. 1:16-cv-2320

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Bureau of Land Management
1849 C Street NW, Room 2134LM
Washington, DC, 20240

A lawsuit has been filed against you.

Within 30 days after service of this summons on you (not counting the day you received it) you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: Larry Klayman, Esq.
2020 Pennsylvania Ave, NW, #345
Washington, DC, 20006

If you fail to respond, judgment by default may be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*ANGELA D. CAESAR, CLERK OF COURT*

Date: _____        _____
                                *Signature of Clerk or Deputy Clerk*

FOIA Summons (12/11) (Page 2)

Civil Action No. 1:16-cv-2320

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0_____ .

I declare under penalty of perjury that this information is true.


Date: _____

         _____
                            *Server's signature*

         _____
                            *Printed name and title*

         _____
                            *Server's address*

Additional information regarding attempted service, etc:

# EXHIBIT B

# EXHIBIT B

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| FREEDOM WATCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 16-2320 (CKK) |
| | ) | |
| BUREAU OF LAND MANAGEMENT | ) | |
| and U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## FBI'S STATUS REPORT AND PROPOSED SCHEDULE

Pursuant to the Court's April 12, 2017 Order, the Federal Bureau of Investigation ("FBI"), by and through its undersigned counsel, respectfully submits this status report and proposed schedule for its processing of the at least 250,000 pages of documents responsive to Plaintiff's FOIA request seeking 22 broad categories of records concerning, *inter alia*, Cliven Bundy; the criminal prosecutions of Cliven Bundy, Ammon Bundy, and "others"; Senator Harry Reid; and Rory Reid, Senator Reid's son, from a time period dating at least as far back as 2010.

FBI began by processing public source documents in files likely to contain such information and, to date, has made two releases totaling approximately 1,000 pages. Specifically, FBI released approximately 512 pages on March 31, 2017, and approximately 500 pages on May 1, 2017. FBI anticipates making a third release of approximately 500 pages on May 31, 2017. FBI is nearing completion of the processing of these readily identifiable public source materials and estimates that it will complete its processing of these documents on or before June 30, 2017.

Although the hundreds of thousands of pages potentially responsive to the request that still need to be processed may include additional non-exempt public source documents, FBI believes

Case 1:17-cv-02429   Document 1   Filed 11/09/17   Page 148 of 154
Case 2:16-cr-00046-GMN-PAL   Document 2828   Filed 11/06/17   Page 43 of 47
Case 1:16-cv-02320-CKK   Document 30   Filed 05/31/17   Page 2 of 3

it would be inefficient to attempt to segregate those materials from the remainder of the documents because such materials are comingled with other records, and attempting such a segregation would unnecessarily extend what is already going to be a very lengthy process. Therefore, FBI proposes that it process all of the remaining documents at the rate of 500 pages per month and release to Plaintiff responsive, non-exempt records and segregable portions of records that FBI identifies in that process. [1]   With each of the periodic releases FBI also proposes to notify Plaintiff of the number of processed pages it has withheld in whole or in part and the basis for any withholdings. This Court has previously approved similar processing schedules on numerous occasions. *See, e.g., Cruz v. Exec. Office for U.S. Attorneys*, 15-cv-1977 (RMC) (D.D.C.); *Farahi v. Federal Bureau of Investigation*, 15-cv-2122 (RBW) (D.D.C.); *Leopold v. Dep't of Justice*, 14-cv-327 (APM) (D.D.C.). [2]

Considering the significant volume of documents to be processed, FBI informs undersigned counsel that it will take at least 500 months to complete its entire production of responsive documents under FBI's standard document-by-document, page-by-page processing

---

[1] As FBI has previously noted, it estimates that the responsive documents contain a substantial amount of documents compiled for law enforcement purposes that are exempt from production pursuant to Exemption 7(A). FBI further notes that due to the ongoing criminal prosecutions of Cliven Bundy and 17 co-defendants in the United States District Court for the District of Nevada (*see United States v. Bundy, et. al.*, 16-cr-00046 (D. Nev.)), it is possible that certain files may be temporarily inaccessible or FBI may otherwise be unable to process documents pursuant to this proposed schedule. In the event that occurs, FBI will make an appropriate motion for a stay.

[2] FBI is aware that this Court has granted in some instances, and denied in others, FBI's request that it be permitted to seek summary judgment based on the applicability of Exemption 7(A) without waiving any allegation or claim that the records are exempt from release for other reasons as well. *See, e.g., Leopold, et. al v. Dep't of Justice, et. al*, 16-cv-1827 (KBJ) (D.D.C.) (April 7, 2017 Minute Order granting FBI's request); *Farahi v. Federal Bureau of Investigation*, 15-cv-2122 (RBW) (D.D.C.) (Jan. 23, 2017 Order denying FBI's request). If the Court were to permit FBI to proceed in that manner here, FBI has advised undersigned counsel that it estimates that the time needed to process the material on a document-by-document basis would be cut approximately in half.

2

technique proposed above.  In light of this lengthy period, FBI stands ready, willing, and able to consider and apply any reasonable limitations on the scope of Plaintiff's significantly broad request.  Additionally, due to the large volume of documents and the length of time required to process them under its standard approach, FBI is currently exploring alternative methods of streamlining this extensive process in a manner that permits it to more quickly complete its processing while still meeting its obligations under the FOIA.  Although FBI has not yet identified such a method, FBI respectfully requests that it be permitted to further update the Court concerning those efforts on or before June 30, 2017.

Dated:  May 31, 2017

Respectfully submitted,

CHANNING D. PHILLIPS, D.C. Bar No. 415793
United States Attorney

DANIEL F. VAN HORN, D.C. Bar No. 924092
Chief, Civil Division

*/s/ Melanie D. Hendry*
Melanie D. Hendry
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-2510
melanie.hendry2@usdoj.gov

*Counsel for Defendants*

OF COUNSEL:

Jonathan Fleshner, Esq.
Assistant General Counsel
Federal Bureau of Investigation
935 Pennsylvania Avenue NW
Washington, D.C. 20535
(202) 324-4964
jonathan.fleshner@ic.fbi.gov

3

# EXHIBIT C

# EXHIBIT C



**JUSTICE LAW CENTER**

1100 S. 10th Street, Las Vegas, Nevada 89104
T: (702) 731-0000   F: (702) 974-4008
bretwhipple@gmail.com

November 3, 2017

To:   Steven W. Myhre
      U.S. Attorney's Office
      501 Las Vegas Blvd South Suite 1100
      Las Vegas, NV 89101
      702-388-6296 (Fax)
      Steven.Myhre@usdoj.gov

Re:   <u>Discovery Request Relating to Video Surveillance</u>

On November 3, 2017, during the court's evidentiary hearing on the destruction of evidence, the defense learned for the first time that law enforcement had conducted extensive video surveillance of the Bundy home, and other relevant locations, during the events of April, 2014. Specifically, witness Mary Hinson conveyed personal knowledge of such video "live streams" being recorded and utilized by the government during the events of April, 2014.

Defendant Ryan Bundy had previously specifically requested this type of material (ECF No. 2526). The government did not disclose discovery in response. The government implied Bundy's description of the material sought was "fantastic[al]."

Your office has also had an affirmative duty to disclose and provide evidence favorable to the defense. Video surveillance of the crime scene in this case (the Bundy property, where the conspiracy was allegedly housed and coordinated) is clearly evidence "favorable" to the defense as it would allow the defense to, among other things, rebut evidence of a conspiracy, show the jury where individuals were on specific dates as it relates to their alleged involvement in the conspiracy, and reveal which individuals were present and/or had access to Bundy's property when the alleged conspiracy allegedly occurred (including access to electronic devices allegedly used by Bundy and/or his family in the course of the conspiracy).

Additionally, as your office is aware, the primary law enforcement officer involved in the events underlying this case (Dan Love) has engaged in numerous instances of misconduct, many involving other government actors or witnesses involved in the Bundy case. Mr. Love's apparent access to outrageous and invasive government surveillance of private property, and what he did with that information, is also relevant to matters of government misconduct.

Accordingly, it is our position that your office has had a duty to affirmatively provide the following discovery. To the extent you have not already done so, this letter represents a particularized demand to turn over such discovery immediately:

1. The name and address of any law enforcement officer, or any other person, who was involved in creating, monitoring, saving, or reviewing video surveillance of Cliven Bundy's property, his ranch, access roads to and from his property, or any other surveillance video from May through June, 2014, which portrays any defendant in this case or any unindicted co-conspirator.

2. Copies of any video surveillance of Cliven Bundy's property, his ranch, access roads to and from his property, or any other surveillance video from May through June, 2014, which portrays any defendant in this case or any unindicted co-conspirator.

3. Law enforcement reports or memorandums relating to the video surveillance of Cliven Bundy's property, his ranch, access roads to and from his property, or any other surveillance video from May through June, 2014, which portrays any defendant in this case or any unindicted co-conspirator.

4. Any other previously undisclosed video surveillance as it pertains to the conspiracy charged against Cliven Bundy, any co-defendant, or any unindicted co-conspirator.

SINCERELY,

BRET O. WHIPPLE, ESQ.

# EXHIBIT D

# (Filed Separately Under Seal)